COPY

Michael Millen
Attorney at Law (#151731)
119 Calle Marguerita Ste. 100
Los Gatos, CA 95032
Telephone: (408) 871-0777
Fax: (408) 516-9861
mikemillen@aol.com

E-FILING

ORIGINAL
FILED
DEC 19 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

Catherine Short, Esq.
Life Legal Defense Foundation
PO Box 1313
Ojai, CA 93024
(805) 640-1940

ADR

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WALTER B. HOYE, II,

Plaintiff,

v.

CITY OF OAKLAND,

Defendant.

No. C 07 06411 CRB

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

## INTRODUCTION

On or about December 18, 2007, the City of Oakland (herein the "City") enacted City of Oakland Municipal Code Chapter 8.50 (consisting of §§8.50.010 et seq.) (herein the "Ordinance"). That Ordinance imposes various restrictions on First Amendment activity near abortion clinics. One of the restrictions relates to an eight foot "bubble zone" which the Ordinance places around persons or vehicles seeking entry into clinic property. Unless the person or vehicle occupant consents to receiving counseling, speech with a pro-life viewpoint is prohibited within the bubble while speech with a pro-abortion viewpoint is allowed. On a practical level, this means that a pro-abortion speaker may walk right up to a patient and say "Abortion is morally right – please go in the clinic", whereas a pro-life speaker may not walk right up to a patient and offer a piece of literature entitled "WHY YOU SHOULD CHOOSE ADOPTION OVER ABORTION." This type of selectivity is viewpoint-based and is presumptively unconstitutional. .

## FACTS

On or about December 18, 2007, the City enacted City of Oakland Municipal Code Chapter 8.50 (consisting of §§8.50.010 et seq.) A copy of that ordinance is attached to Request for Judicial Notice, Exhibit A. Although the Chapter is entitled "Access to Reproductive Health Care Facilities", it singles out "termination of pregnancy" and not delivery of babies as being the sort of service which covered facilities provide. The Ordinance, in light of the definitions in §2(a) and §2(b), applies to facilities which are more commonly known as abortion clinic.

Under §3(b) of the Ordinance, it is unlawful to approach within eight feet of a person or vehicle seeking entrance onto an abortion clinic's property for the purpose of "counseling" unless the person or vehicle occupant has given consent. However, under §2(f) of the Ordinance, only certain kinds of persuasive speech are defined as "counseling", to wit:

> 2(f). "Counseling" means engaging in conversation with, displaying signs to, and/or distributing literature to individuals seeking access to, passage from, or services within the reproductive health care facility, in an effort to harass, intimidate, or **persuade that individual not to access such reproductive health services**.

(emphasis added). In other words, speech which persuades a person to have an abortion or use any other service offered at the clinic is not defined as "counseling", but speech which seeks to

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

dissuade someone from using clinic services is defined as "counseling". Violating the Ordinance is a misdemeanor under §4(a).

On a practical level, this means that persons whose speech is "pro-life" in viewpoint cannot speak to or hand-out literature to a person walking into the clinic (due to the eight foot bubble), but a "pro-abortion" or "pro-choice" advocate is free to speak to and hand out literature to people without their consent.

Plaintiff Walter B. Hoye, II is a person who enjoys exercising his First Amendment rights on sidewalks and public thoroughfares in front of abortion clinics. He testifies that he would like the right and ability to approach persons seeking entry into clinics to speak with them and/or to hand them some literature, but he is afraid to do so now because doing so will be a misdemeanor. He further notes that, on a practical basis, he will not be able to speak to his intended audience because pro-choice volunteers tend to surround and block persons to whom he wishes to speak, making it difficult to get their consent to approach within 8 feet to talk and hand out literature.

**ARGUMENT**

To be granted a preliminary injunction in the Ninth Circuit, the moving party must show either:

1) A likelihood of success on the merits and the possibility of irreparable harm; or

2) The lawsuit raises serious questions going to the merits and the balance of hardships tips sharply in the movant's favor. *Gilder v. PGA Tour, Inc.*, 936 F. 2d 417, 422 (9th Cir. 1991).

The claims of the plaintiff herein amply satisfies either standard.

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS.

**A. Chapter 8.50 is an unconstitutional restriction on speech in a public forum.**

Public sidewalks are traditional public fora, which for "'time out of mind' . . . have been used for public assembly and debate." *Frisby v. Schultz*, 487 U.S. 474, 480 (1988). The identification of public sidewalks with public fora is not merely the "accidental invocation of a 'cliche.'" *Id*. Rather, the Supreme Court has explicitly held that all sidewalks are public fora: "No particularized inquiry into the precise nature of a specific street is necessary; all public streets are held in the public trust and are properly considered traditional public fora." *Id*. at 481.

Governmental bodies may regulate the time, place and manner of speech in traditional public fora, but only if such regulations "are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). A content-based exclusion may only be enforced if it serves a compelling government interest and is narrowly drawn to achieve that end. *Id*.

1. Chapter 8.50 is not viewpoint neutral.

By its terms, the Ordinance only restricts counseling which seeks to "persuade [an] individual not to access such reproductive health services". Counseling which encourages and promotes "accessing" reproductive health services is allowed without restriction. Thus, speech is allowed or disallowed based simply upon the viewpoint expressed.

2. Chapter 8.50 is Unconstitutional

Viewpoint discrimination such as that found in the Ordinance is generally an unconstitutional attempt by government to wrongly influence public debate and is normally forbidden. As the Supreme Court noted in *R.A.V. v. St. Paul*, 505 U.S. 377, 430-31 (1992):

> More particularly to the matter of content-based regulations, we have implicitly distinguished between restrictions on expression based on subject matter and restrictions based on viewpoint, indicating that the latter are particularly pernicious. "If there is a bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea simply because society finds the idea itself

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

> offensive or disagreeable." *Texas v. Johnson*, 491 U.S., at 414 . "Viewpoint discrimination is censorship in its purest form," *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 62 (1983) (Brennan, J., dissenting), and requires particular scrutiny, in part because such regulation often indicates a legislative effort to skew public debate on an issue, see, e.g., *Schacht v. United States*, 398 U.S. 58, 63 (1970). "Especially where . . . the legislature's suppression of speech suggests an attempt to give one side of a debatable public question an advantage in expressing its views to the people, the First Amendment is plainly offended." *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 785 -786 (1978).

The City will be unable to assert a compelling state interest to justify the viewpoint-based restriction in its ordinance and thus Chapter 8.50 is unconstitutional and should be enjoined.

Because Plaintiff has demonstrated probable success on the merits of its claim that the Ordinance is viewpoint based, the court should enjoin enforcement of the ordinance.

### 3. The Court Should Enter an T.R.O and Enjoin Enforcement of Chapter 8.50

The Ordinance strikes at the heart of First Amendment freedoms, and "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). As the Ninth Circuit noted in *Jacobsen v. United States Postal Serv.*, 812 F.2d 1151, 1154 (9th Cir. 1987), "Where the precious First Amendment right of freedom of the press is at issue, the prevention of access to a public forum is, each day, an irreparable injury: the ephemeral opportunity to present one's paper to an interested audience is lost and the next day's opportunity is different." This holding should apply with equal force to speaking to persons on the public sidewalk and leafletting, which also present only an "ephemeral" opportunity to present a message to a particular audience at a particular time. The fact that the ordinance at issue merely restricts, rather than eliminates, access to the audience is a distinction which the Ninth Circuit has declared "artificial." *Baldwin v. Redwood City*, 540 F.2d 1360, 1370, n. 28 (1976).

## II. THE COURT SHOULD WAIVE BOND

If the court enters a preliminary injunction, the court is asked to waive bond under F.R.Civ.P. Rule 65(c) as this Circuit has signaled its approval of nominal bond or waiver of bond requirements where a sole plaintiff seeks to enforce rights in matters of public interest. See, e.g., *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (approving $1,000 bond and noting

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

with approval a 2nd circuit decision which waived bond). Plaintiffs are seeking to enforce core First Amendment rights which most certainly are matter of public interest and which inure to the benefit of the entire public.

In addition, the City of Oakland will incur no additional expenses if it stops enforcing the Ordinance. By definition, when a City ceases to enforce a criminal ordinance it saves the cost of the police and prosecutorial resources involved. Given that there is no economic risk to the City by being enjoined, the Court is asked to waive bond as allowed by *Barahona-Gomez. See also Behymer-Smith v. Coral Acad. of Sci.*, 427 F. Supp. 2d 969, 974 (2006) (district court orders nominal $100 bond in First Amendment case because evidence shows that defendant will suffer little, if any damage, by issuance of injunction).

## CONCLUSION

The court should enter the temporary restraining order and preliminary injunction as requested.

Dated: December 19, 2007

MICHAEL MILLEN, ESQ.
ATTORNEY FOR PLAINTIFF

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777