Michael Millen
Attorney at Law  (#151731)
119 Calle Marguerita  Ste. 100
Los Gatos, CA  95032
Telephone:  (408) 871-0777
Fax:  (408) 516-9861
mikemillen@aol.com

Catherine Short, Esq.
Life Legal Defense Foundation
PO Box 1313
Ojai, CA 93024
(805) 640-1940

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER B. HOYE, II, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF OAKLAND, <br><br> Defendant. | NO.:  C07-06411 CRB <br><br> **DECLARATION OF WALTER B. HOYE, II IN SUPPORT OF PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION** |

I, Walter B. Hoye, II, hereby declare:

1.  I am the plaintiff  in this action and am seeking to have Oakland Municipal Code Chapter 8.50 (the "Ordinance") rendered unenforceable.

2.  Due to my moral, religious, and political beliefs, I have regularly engaged in pro-life, anti-abortion speech activities within the City.  These speech activities include hand-to-hand leafleting, education about abortion, and holding signs with a pro-life, anti-abortion message (herein "free speech activities").  All of these free speech activities occur on public sidewalks or other public fora, where I can convey my message to the public.

3.  As part of my free speech activity, I go once a week to Family Planning Specialists abortion clinic in Oakland (the "Clinic") and stand or walk on the sidewalk

1  which runs in front of the Clinic building. I hold my sign which states "God loves you &
2  your baby / Let us help you".
3      4. When I go to the Clinic to do my free speech activity, I rarely find myself alone.
4  Instead, I am joined by a number of persons who wear orange vests upon which is inscribed
5  the following writing:

> ESCORT
> Family Planning Specialists
> Medical Clinic

9  I call these persons "Escorts". Some of the Escorts carry a blank piece of white
10 posterboard on a stick, free of visible writing.
11     5. When a third-party walks a path which suggests he or she may be seeking
12 entrance to the clinic or dropping off such a person from their car, one or two of the sign-
13 carrying Escorts typically positions their blank posterboard between me and the third-party
14 and thereby blocks the third-party's view of my sign. In addition, the Escorts standing in
15 front of me make it impossible, as a practical matter, for me to engage in conversation or
16 offer a piece of literature.
17     6. In March 2008 an Oakland police officer approached me while I was at the clinic
18 engaging in my free speech activity. The police officer explained that under the Ordinance,
19 I had a duty to always stay 8 feet away from patients entering the clinic, even if I were
20 stationary at the time the patient came within 8 feet. The concept was that there was a
21 bubble around a patient which would force me to move and back-off even if I were simply
22 standing still at the edge of the sidewalk.
23     7. On May 13, 2008, I was engaged in my customary activity on the public sidewalk
24 in front of Family Planning Specialists abortion clinic in Oakland holding my sign. I had
25 been at the clinic approximately two hours, and during that time had seen approximately
26 two women who might have been patients enter the clinic. One escort normally would
27 stand next to me and hold her blank poster in front of my sign, thereby obscuring my
28

1  message. On the small number of occasions when a woman who appeared to be a patient
2  would enter the clinic, I would typically be "double-teamed" and two escorts would
3  position their signs and bodies so as to barricade me and my sign and prevent me from
4  offering literature to the woman..

5      8. Shortly after 10:00 AM, three or four police cars arrived. The officers first
6  approached the escorts who were standing around the doorway of the clinic. One officer
7  asked the other officers to detain me. The officers did so. They asked me whether I was
8  aware of the eight-foot bubble law. I said that I was. The officer then pulled out some
9  papers and began reading from them. (I had seen the escorts holding and reading from
10 similar-looking papers earlier in the day.) He told me that I could not approach or be within
11 eight feet of the escorts, clinic personnel, or clients.

12     9. The officers then instructed me on how to be arrested. They told me to turn
13 around, put my hands behind my head, which I did. They patted me down and handcuffed
14 me and told me to stand by the police car. All this took place in front of the escorts, who
15 were smiling at and photographing the police actions toward me.

16     10. As I stood by the police car, I observed the police interviewing escorts and clinic
17 personnel. A police officer informed me that, to comply with the new law, I had to remain
18 100 feet from the clinic doors if I was going to approach anyone, talk to anyone, or hold a
19 sign or pass out literature that would discourage anyone from getting an abortion. I asked if
20 I could be within 100 feet wearing a T-shirt that said, "Got Jesus?" and the officer said no. I
21 could only wear clothing that did not display a message.

22     11. I was then asked to sit in the police car. The back seat of the police car was very
23 uncomfortable. Because of the limited legroom and the handcuffs, I was forced to perch on
24 the seat at an angle for approximately 45 minutes. During that time, an officer again told
25 me that I could not hold signs or pass out literature within 100 feet of the clinic. He
26 suggested that I measure the 100 feet some time when the clinic was closed. He also
27 suggested that I wear a tape recorder, so that if someone approached me, I could say, "I am

1 100 feet away; please stay eight feet away from me," and this would prove I was trying to comply with the law.

2. After taking down my address, the police asked me to come out of the car. Once I was out of the car, they asked whether I was right or left-handed. When I said I was right-handed, they uncuffed that hand in order to allow to me to sign a promise to appear. Only after I had signed did they remove the other cuff. The officer again reminded me that I needed to stay 100 feet away from the clinic in order to protest without violating the law. I was then released, although the police kept my signs and literature, which the officers said would be evidence in the case against me.

13. Although the officers talked at length with the escorts and clinic personnel, they never asked me anything about my activities. I was in custody for about one and a half hours.

14. It is not feasible for me to perform my free speech activity 100 feet away from the clinic. Quite often women going into the clinic are dropped off right in front the clinic, and in such circumstances a 100' distance makes my sign very difficult to read and makes handing out literature or discussion impossible. Also, because one or more escorts typically stand right next to me, any mandate that I stay 8 feet away from escorts would be impossible to fulfill because they continually follow me.

16. Because of this experience, my intention is not to return to the clinic until I am assured this will not happen again. I do not want to be arrested for merely being within 100 feet of the clinic with a sign or literature. Also, other persons who were at the clinic for the same reason as I, to offer a pro-life alternative to women, witnessed what happened to me and are now intimidated from returning to the clinic.

//
//

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Dated: May 21, 2008

*/s/ Walter A. Hoye II*
_____
WALTER B. HOYE, II

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

DECLARATION OF WALTER HOYE IN SUPPORT OF APPLICATION FOR TRO AND PREL. INJ.

C07-06411 CRB

Page 5