Michael Millen
Attorney at Law  (#151731)
119 Calle Marguerita  Ste. 100
Los Gatos, CA  95032
Telephone:  (408) 871-0777
Fax:  (408) 516-9861
mikemillen@aol.com

Catherine Short, Esq.
Life Legal Defense Foundation
PO Box 1313
Ojai, CA 93024
(805) 640-1940

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER B. HOYE, II,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF OAKLAND,<br><br>　　　　Defendant. | NO.:  C07-06411 CRB<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TRO / PRELIMINARY INJUNCTION** |

## INTRODUCTION

On May 28, 2008, the City of Oakland (herein the "City") filed its Training Bulletin in this matter. This document confirms plaintiff's worst fear: Oakland police intend to arrest plaintiff merely for walking towards a nearby clinic Escort while carrying a sign. This has the practical effect of completely shutting down plaintiff's activities anywhere within 100 feet of the abortion clinic.

## ARGUMENT

As per the court's directive, on May 28, 2008, the City filed its Training Bulletin. *See* Docket Item #26. The masthead of the Bulletin claims that "Department Training Bulletins . . . shall constitute official policy."

### I. THE BULLETIN CONFIRMS THAT WALKING TOWARDS ESCORTS WHO ARE WITHIN 8 FEET WILL RESULT IN ARREST

In the "Examples of Prohibited Behavior" section, the Bulletin explicitly prohibits the "[n]on-consensual approach within eight (8) feet of an *escort* of an individual/patient . . . by displaying a sign". Bulletin, p. 3, second bullet point (emphasis added).

In another of its examples, the Bulletin again criminalizes approaching Escorts while carrying a sign. "Harassment" is defined as the "[n]on-consensual and intentional approach within eight (8) feet of another person" to display a sign. Bulletin, p. 2. The Bulletin goes on to prohibit "harassing . . . behavior toward a patient, employee, or volunteer". Bulletin, p. 3, fifth bullet point. Therefore, it is unlawful "harassing" behavior for plaintiff to merely walk with his sign in the direction of an Escort who is closer than 8 feet.

Given that the Escorts routinely position themselves between Mr. Hoye and anyone going into the clinic (Hoye Decl. ¶5), the Escorts thus form an impermeable barrier which Mr. Hoye may never pass through in order to get within communication range of persons entering the clinic.

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA  95032
(408) 871-0777

**SUPPLEMENTAL BRIEF IN SUPPORT OF APPLICATION FOR TRO / PRELIM. INJ.**   C07-06411 CRB   Page 1

1   Although plaintiff will be mounting a facial challenge to the Ordinance in the near
2   future, plaintiff would note in passing that the Bulletin appears to be a reasonable reading
3   of the text of the amended Ordinance.[1]

4   All of this perfectly dovetails with the statement made by the Oakland police that
5   Mr. Hoye "could not approach or be within eight feet of the escorts".  Hoye Decl. ¶8.

6   Accordingly, and for the reasons set forth in the original memorandum, this is an
7   unlawful expansion of the principles set forth in *Hill v. Colorado*, 530 U.S. 703 (2000) and
8   should be enjoined.

### II. THE BULLETIN UNLAWFULLY EXPANDS THE BUBBLE TO PERSONS SEEKING TO EXIT THE CLINIC EVEN THOUGH THE ORDINANCE DOES NOT

12  The Ordinance prohibits the non-consensual approach within 8 feet of any person
13  seeking to *enter* a facility.  Request for Judicial Notice, Ex. A, ¶3(b) and 3(c) (emphasis
14  added).  Without any lawful justification the Bulletin expands this language to include
15  "approach[ing] within eight (8) feet of any person seeking to enter *or exit* a reproductive
16  health care facility".  Bulletin, p. 2, first bullet point (emphasis added).  What the Council
17  did not criminalize, the police have by including "exiting persons" in the ambit of the
18  Ordinance.

19  Under the Charter of the City of Oakland, it is the City Council of Oakland that is
20  "vested with all powers of legislation in municipal affairs".  *See* Second Request for Judicial
21  Notice, Ex. A, p. 4, ¶207.  The City Administrator's power (and by extension the
22  subservient Police Department's power) is merely "[t]o execute and enforce all laws and

---

[1] The definition of "Harassing" under ¶2(c) of the Ordinance includes approaching within 8 feet and displaying a sign to a non-consenting "person".  Request for Judicial Notice, Ex. A, ¶2(c).  Under ¶3(a) of the Ordinance, it is unlawful to "harass . . . . any person because that person . . . is . . . providing . . . reproductive health services", and under ¶2(g), Escorts fall within this definition because they "assist in conducting patients of such facility safely into the facility."  The net result is that walking in the direction of Escorts closer than 8 feet while holding a sign is a crime.

ordinances and policies *of the Council*".  *See* Second Request for Judicial Notice, Ex. A, p. 11, ¶504(a) (emphasis added).

The conflict between the narrower legislation and the broader police Bulletin represents a serious threat to due process in that the police, without Council authorization, have indicated it is their official intention to arrest someone like plaintiff for displaying a sign within 8 feet of someone who is merely *exiting* the building even though the Council has not deemed such conduct unlawful.  This is reminiscent of the other expansions which the police have verbally indicated they intend to apply to the Ordinance.  *See* Hoye Decl. ¶¶6, 8, and 10.  It thus appears that the Ordinance is constantly morphing to fit the whim of whatever government enforcement officer happens to be on duty.  This is the essence of unconstitutional, ad hoc lawmaking.

### III. THE BULLETIN DOES NOT CLEARLY STATE THAT REMAINING STATIONARY IS ALWAYS ALLOWED BEHAVIOR.

Police officers in March (before the Bulletin was issued) and May (after the Bulletin was issued) have consistently warned plaintiff to never be within eight feet of a patient or escort and to back off to avoid this possibility.  See Millen Decl., Ex. B; Hoye Decl. ¶8.

Unfortunately, the Bulletin fails to give any guidance to officers that a stationary speaker does not violate the ordinance merely because a patient passes within a few feet.  The Bulletin's failure to disavow this deeply entrenched notion strongly suggests that the police will continue to demand that plaintiff "back off" whenever a patient approaches.

As pointed out in the moving papers, the Supreme Court in *Hill* took pains to distinguish leafletters who "approach" from leafletters who remain "stationary".  *Hill v. Colorado*, 530 U.S. 703, 728 (2000).  Unless this court issues an injunction preventing enforcement of the Ordinance, this subtle but constitutionally significant distinction will likely remain lost on Oakland's law enforcement personnel and result in yet another arrest of plaintiff.

### IV. THE COURT SHOULD ENJOIN ENFORCEMENT OF THE ORDINANCE PENDING A HEARING ON THE MERITS OF THE PRELIMINARY INJUNCTION.

At some point in time, plaintiff's entitlement to a definitive ruling outweighs the City's desire for informal opportunities to get multiple bites at the apple. The uncontroverted facts now stand as follows:

(a) Plaintiff has been arrested for allegedly violating the Ordinance;

(b) The police have on multiple occasions given widely varying interpretations of how they plan to enforce the ordinance; and

(c) The official Police Department Bulletin criminalizes conduct which is not mentioned in the ordinance and further criminalizes sign-holders from approaching within 8 feet of Escorts.

All combined, it is now impossible for plaintiff to communicate his message to his intended audience, and this fails the "narrowly tailored" prong of the *Hill* test along with basic constitutional vagueness principles.

The time for informal resolution has now passed, and Mr. Hoye would request a clear ruling from this court protecting him from the Police Department's ever changing, unlawful enforcement of the Ordinance. Each Tuesday that passes without such a ruling results in the complete loss of his ability to speak to his audience.

### CONCLUSION

The court should enter the TRO and schedule a preliminary injunction hearing as requested.

Dated: May 29, 2008

_____
MICHAEL MILLEN, ESQ.
ATTORNEY FOR PLAINTIFF