THE CHARTER OF THE CITY OF OAKLAND

---

# THE CHARTER OF THE CITY OF OAKLAND -- In Effect January 28, 1969

ARTICLE I POWERS AND FORM OF GOVERNMENT

ARTICLE II THE COUNCIL

ARTICLE III THE MAYOR

ARTICLE IV CITY OFFICERS

ARTICLE V THE CITY MANAGER

ARTICLE VI ADMINISTRATIVE ORGANIZATION

ARTICLE VII PORT OF OAKLAND

ARTICLE VIII FISCAL ADMINISTRATION

ARTICLE IX PERSONNEL ADMINISTRATION

ARTICLE X FRANCHISES, LICENSES, PERMITS, LEASES AND SALES

ARTICLE XI ELECTIONS

ARTICLE XII GENERAL PROVISIONS

## ARTICLE I POWERS AND FORM OF GOVERNMENT

Section 100. Name. The municipal corporation now existing and known as the City of Oakland shall remain and continue a body politic and corporate in name and fact by the name of the City of Oakland, and by such name shall have perpetual succession.

Section 101. Boundaries. The boundaries of the City of Oakland, as they exist on the effective date of this Charter, shall continue until changed in the manner authorized by law.

Section 102. Rights in Succession. The City of Oakland, hereinafter termed the City, shall have, exercise, and enjoy all the rights, immunities, powers, benefits, privileges and franchises now possessed, enjoyed, owned or held by it.

Section 103. Continuance of Laws. All lawful ordinances, resolutions, rules and regulations or portions thereof now in force and not in conflict or inconsistent herewith are continued in force until they have been duly repealed or amended.

Section 104. Continuance of Officers and Employees. All officers and employees of the City now serving shall continue in their offices or employments until removed or replaced in the manner prescribed by the authority of this Charter.

Section 105. Transfer of Records and Property. The transfer of any function from one department to another by this Charter or by any lawful ordinance or administrative authority also authorizes the corresponding transfer of all records, property, and equipment necessary to such function.

Section 106. General Powers. The City shall have the right and power to make and enforce all laws and regulations

Ex. A

in respect to municipal affairs, subject only to the restrictions and limitations provided in this Charter; provided, that nothing herein shall be construed to prevent or restrict the City from exercising or consenting to, and the City is hereby authorized to exercise, any and all the rights, powers and privileges heretofore or hereafter granted or prescribed by the general laws of the State including those specifically applicable to general law cities; provided, also, that where the general laws of the State provide a procedure for the carrying out and the enforcement of any rights or powers belonging to the City, said procedure shall control and be followed unless a different procedure shall have been provided in the Charter or by ordinance.

It is the intention of the people in adopting this section to take advantage of the provisions of Section 6 of Article XI of the Constitution of the State of California giving cities Home Rule as to municipal affairs.

Section 107. Form of Government. The government provided by this Charter shall be known as the Mayor-Council form of government. (Amended by: Stats. November 2000.)

## ARTICLE II THE COUNCIL

Section 200. Composition of the Council. The Council shall consist of eight Councilmembers, nominated and elected as hereinafter provided. The Mayor shall not be a member of the Council, but he shall have a vote on the Council if the councilmembers are evenly divided. (Amended by: Stats. November 1998.)

Section 201. Qualifications. No person shall be eligible for or continue to hold the office of Councilmember, either by election or appointment, unless he is a citizen of the United States, a qualified elector, a resident for at least thirty days of the City or of a territory lawfully annexed or consolidated, and a resident of the district from which he may be a candidate for at least thirty days immediately next preceding his nomination or appointment. (Amended by: Stats. November 1988.)

Section 202. Public Ethics Commission; Council Salaries. (a) There is hereby established a Public Ethics Commission which shall be responsible for responding to issues with regard to compliance by the City of Oakland, its elected officials, officers, employees, boards and commissions with regard to compliance with City regulations and policies intended to assure fairness, openness, honesty and integrity in City government including, Oakland's Campaign Finance Reform Ordinance, conflict of interest code, code of ethics and any ordinance intended to supplement the Brown Act, and to make recommendations to the City Council on matters relating thereto, and it shall set City Councilmember compensation, as set forth herein.

(b) The members of the Public Ethics Commission shall consist of seven (7) members who shall be Oakland residents.

(1) Initial appointments. The first seven members of the Commission shall be appointed as follows: Three (3) members who represent local civic organizations with a demonstrated history of involvement in local governance issues shall be nominated for appointment by the Mayor and confirmed by the City Council; and four (4) members shall be appointed following a public recruitment and application following a public recruitment and application process, by the unanimous vote of the three (3) representatives appointed by the City Council. The four (4) members so appointed shall reflect the interest of the greater Oakland neighborhood and business communities.

(2) Subsequent Mayoral appointments. A vacancy in any of the three (3) positions nominated for appointment by the Mayor and confirmed by the City Council shall be filled in the same manner and upon consideration of the same criteria as for the initial Mayoral appointments.

(3) Subsequent Non-Mayoral appointments. A vacancy in any of the four (4) positions initially selected by the unanimous vote of the three (3) Mayoral appointments shall be filled, following a public recruitment and application process, by a candidate who receives the affirmative vote of at least four (4) members of the Commission. Any member so appointed shall reflect the interests of the greater Oakland neighborhood and business communities.

(4) Staggered Terms. Both categories of member shall be appointed to staggered terms.

(5) Functions, duties, powers, jurisdiction and terms. The City shall by ordinance prescribe the function, duties, powers, jurisdiction and the terms of members of the Commission, in accordance with this Article.

(C) Beginning with Fiscal Year 2003-2004, the Public Ethics Commission shall annually adjust the salary for the office of Councilmember by the increase in the consumer price index over the preceding year. The Commission may adjust salaries beyond the increase in the consumer price index up to a total of five percent. Any portion of an increase in compensation for the office of Councilmember that would result in an overall increase for that year in excess of five percent must be approved by the voters. (Amended by: Stats. November 1996, June 1998 and November 1998 and March 2004.)

Section 203. Nomination and Election of Councilmembers. Seven Councilmembers shall be nominated from districts and one shall be nominated at large. The Councilmember-at-large shall be nominated and elected by the qualified electors of the City at large. The District Councilmembers shall be nominated and elected by the qualified electors of their respective districts. The districts shall be as they exist upon the taking effect of this section, until revised by ordinance. In the year 1993, and every ten years thereafter, and whenever any substantial territory is annexed to or consolidated with the City, the Council shall form new districts not exceeding seven. Districts shall be composed of contiguous territory, as equal as possible in population, and as geographically compact as practicable. No change in the boundary of a district shall operate to exclude an incumbent from office before the expiration of the term for which he was elected or appointed. (Amended by: Stats. October 1980, June 1990 and March 2004.)

Section 204. Term Office, Council. The Councilmembers shall be elected to a term of four years beginning at 11:00 a.m. on the Monday following January 1 following their election. The Councilmembers elected or appointed to office to serve terms beginning in 1985 shall serve in office until 11:00 a.m. on the Monday following January 1 in 1991. The Councilmembers elected or appointed to office to serve terms beginning in 1987 shall serve in office until 11:00 a.m. on the Monday following January 1, 1993. In 1990 Municipal Elections will be held to select City officers for four year terms for the following offices: Councilmember, District #2; Councilmember, District #4, and, Councilmember, District #6. In 1992 Municipal Elections will be held to select City Councilmembers for four year terms for the following offices: Councilmember, District #1; Councilmember, District #3; Councilmember, District #5; Councilmember, District #7; and Councilmember-At-Large. (Amended by: Stats. November 1988.)

Section 205. Vacancy, Filling of. All vacancies occurring in the office of Councilmember shall be filled by special election within 120 days of a vacancy. An extension of up to 60 days may be allowed for the express purpose of consolidating the special election with the next Municipal Election or Statewide Election. If the special election is to take place before the first use of ranked choice voting in a Municipal Election, the Council shall have the authority to provide for a ranked choice voting election by ordinance. Otherwise, the candidate who receives the highest number of votes at the special election shall be declared the winner and thereafter sworn into office as soon as legally possible. Special elections for the office of Councilmember that take place during or after the first use of ranked choice voting in a Municipal Election shall be conducted using the same ranked choice voting procedures used to elect Councilmembers in General Municipal Elections. Whenever the period of vacancy in a Councilmember's term of office equals or exceeds 120 days the vacancy may be temporarily filled by appointment through the majority vote of the remaining Councilmembers, provided the appointee is not a candidate for the office which created the vacancy and provided the appointment does not exceed 128 days or go beyond the date the new incumbent is sworn in, whichever is shortest. Alternative legal voting procedures shall be used to the greatest extent feasible to increase voter participation in special elections including but not limited to mail ballot voting, electronic voting and extended voting period. Notwithstanding any other provision of this section 205 or this Charter, an election shall not be required to fill a vacancy in the office of Councilmember that occurs when the \/ice Mayor fills a mayoral vacancy pursuant to Sections 303 and 304 of this Charter, and the Vice Mayor shall be entitled to return to his/her seat. (Amended by: Stats. November 1998, November 2000, March 2002 and February 2002.)

Section 206. Vacancy, What Constitutes. An office of Councilmember shall be declared vacant by the Council when the person elected or appointed thereto fails to qualify within ten days after his term is to begin, dies, resigns, ceases to be a resident of the City or of the district from which he was nominated, absents himself continuously from the City for a period of more than thirty days without permission from the Council, absents himself from any ten consecutive regular meetings except on account of his illness or when absent from City by permission of the

Council, is convicted of a felony, is judicially determined to be an incompetent, is permanently disabled as to be unable to perform the duties of his office, forfeits his office under any provision of this Charter, or is removed from office by judicial procedure. A finding of disability shall require the affirmative vote of at least six members of the Council after considering competent medical evidence bearing on the physical or mental capability of the Councilmember. (Amended by: Stats. November 1988 and November 2000.)

Section 207. Powers of the Council. The Council shall be the governing body of the City. It shall exercise the corporate powers of the City and, subject to the expressed limitations of this Charter, it shall be vested with all powers of legislation in municipal affairs adequate to provide a complete system of local government consistent with the Constitution of the State of California. It shall have no administrative powers. The Council shall fix the compensation of all City employees, officers and officials except as otherwise provided by this Charter. (Amended by: Stats. November 1988 and November 2000.)

Section 208. Meetings of the Council. At 11:00 a.m. on the first Monday following January 1 following each General Municipal Election, the Council shall meet at the established Council meeting place, at which time and place the newly elected members of the Council shall assume the duties of their office; and at such meeting, and at its first meeting in January of each year, the Council shall elect a Vice-Mayor from among its members to serve for a one-year term. Thereafter, the Council shall meet regularly at the time and place fixed by resolution. Special meetings may be held at the regular place of meeting and shall be called, and notice thereof given, by the City Clerk upon the written request of the Mayor, the City Administrator or three members of the Council and such notice shall state the special subject to be considered at the special meeting; and no other subject shall be there considered. Regular or special meetings may be held at places other than the regular meeting place only in an emergency in which the regular meeting place is untenable, or for some purpose of public convenience, upon the posting of a public notice at the regular meeting place that the Council is meeting elsewhere to be designated on the notice. (Amended by: Stats. June 1988 and March 2004.)

Section 209. Quorum. Five members of the Council shall constitute a quorum for the transaction of business, but a lesser number may adjourn.

Section 210. Council Action. The Council shall provide by resolution for the order of business and the rules of procedure for the conduct of Council meetings. The Council shall act by ordinance or resolution or motion. The "ayes" and "noes" shall be taken on the passage of all ordinances and resolutions and entered upon the journal of the Council's proceedings. Each proposed ordinance or resolution shall be introduced in written or printed form. The affirmative vote of five members of the Council shall be required to adopt any ordinance or resolution, except as otherwise provided by this Charter or by general law.

Section 211. Enactment of Ordinances. In addition to such other action of the Council as is required by statute or by this Charter to be by ordinance, every act of the Council establishing a penalty or granting a franchise shall be by ordinance. The enacting clause of all ordinances shall be: "The Council of the City of Oakland does ordain as follows:"

Section 212. Adoption and Amendment of Ordinances. Except for emergency ordinances, no ordinance shall be adopted by the Council on the day of its introduction, nor within five days thereafter, nor except at a regular or adjourned regular or special meeting. If an ordinance is altered after its introduction (except for the correction of typographical or clerical errors), it shall not be adopted except at a regular or adjourned regular or special meeting held not less than five days after the date of such alteration. Any section or subsection of an ordinance may be amended solely by the reenactment of such section or subsection at length as amended.

Section 213. Emergency Ordinances. Any ordinance declared by the Council to be necessary for preserving the public peace, health, or safety in an emergency, and containing a statement of the reasons constituting such necessity, may be introduced and adopted at the same meeting if passed by the affirmative vote of at least six members. Appropriations to meet an urgent need for public expenditure, to protect the public health, safety, or

Case 3:07-cv-06411-CRB   Document 28-2   Filed 05/29/2008   Page 5 of 32

welfare may be made as an emergency ordinance.

Section 214. Publication. Before final adoption of an ordinance, its title, a digest thereof, a notice showing the vote on its introduction and the date, time, and place of hearing on its final adoption, and notice that three full copies thereof are available for use and examination by the public in the Office of the City Clerk, shall be published once in the official newspaper of the City at least three days before said hearing date. Notice of the adoption of an emergency ordinance, the vote thereon, its title, and a digest thereof shall be similarly published once within three days after its adoption. The notices and digests shall be prepared by the City Attorney.

Section 215. Codification. The duly adopted and effective ordinances of the City may be compiled and arranged as comprehensive codes, which may be adopted by reference by the passage of an ordinance for such purpose.

Section 216. Effective Date of Ordinance. An ordinance receiving upon final adoption the affirmative vote of at least six members of the Council shall be effective immediately, unless a later date is specified therein. All other ordinances, unless a different date is required by this Charter, shall be effective upon the seventh day after final adoption; provided, that within three days after said date of final adoption, the Mayor may file in the Office of the City Clerk written notice to the Council that he has suspended the taking effect of the ordinance, stating in said notice the reason or reasons for his action, which notice the City Clerk shall forthwith deliver to the members of the Council. Such notification shall automatically cause the reconsideration of the ordinance by the Council at its regular meeting next following the sixth day after the aforesaid final adoption of the ordinance. If, upon reconsideration, the ordinance is approved by the affirmative vote of at least five members of the Council, it shall take effect immediately; and if not so approved, it shall be ineffective. (Amended by: Stats. November 1998 and March 2004.)

Section 217. Penalty for Violation of Ordinances. The Council may make the violation of its ordinances a misdemeanor, which may be prosecuted in the name of the People of the State of California or may be redressed by civil action, and may prescribe punishment for such violations by a fine not to exceed $1,000 or by imprisonment not to exceed one year, or by both such fine and imprisonment.

Section 218. Non-Interference in Administrative Affairs. Except for the purpose of inquiry, the Council and its members shall deal with the administrative service for which the City Administrator, Mayor and other appointed or elected officers are responsible, solely through the City Administrator, Mayor or such other officers. Neither the Council nor any Council member shall give orders to any subordinate of the City under the jurisdiction of the City Administrator or such other officers, either publicly or privately; nor shall they attempt to coerce or influence the City Administrator or such other officers, in respect to any contract, purchase of any supplies or any other administrative action; nor in any manner direct or request the appointment of any person to or his removal from office by the City Administrator or any of his subordinates or such other officers, nor in any manner take part in the appointment or removal of officers or employees in the administrative service of the City. Violation of the provisions of this section by a member of the Council shall be a misdemeanor, conviction of which shall immediately forfeit the office of the convicted member. (Amended by: Stats. November 1988, November 2000 and March 2004.)

Section 219. Ordinance: When Required. In addition to other actions required by law or by specific provision of this Charter to be done by ordinance, those actions of the Council shall be by ordinance which:
(1) Adopt or amend an administrative code or establish, alter or abolish any City department, office or agency as authorized in Article VI of this Charter.
(2) Provide for a fine or other penalty or establish a rule or regulation for violation of which a fine or other penalty is imposed.
(3) Levy taxes except as otherwise provided in this Charter with respect to the property tax levied by adoption of the budget.
(4) Regulate the rates charged for its services by a public utility.
(5) Authorize the borrowing of money except as otherwise provided in Section 812 of this Charter.

(6) Convey or lease, or authorize the conveyance or lease for longer than one year, of any real property of the City, or any interest therein, or the acquisition of real property, the purchase price of which is more than Five Thousand Dollars ($5,000.00).

(7) Amend or repeal any ordinance previously adopted.

Provided, acts other than those referred to hereinabove under this section, or other than may be specifically otherwise provided for in other sections of this Charter, may be done either by ordinance or by resolution.

## ARTICLE III THE MAYOR

Section 300. The Mayor. The Mayor shall be nominated and elected from the City at large and shall receive an annual salary payable in equal monthly installments, and without any additional compensation or fees provided for in Section 202 of this Charter. The salary shall be set by the Council, which shall be not less than 70% nor more than 90% of the average salaries of City Managers'/Chief Executive Officers of California cities within the three immediate higher and the three immediate lower cities in population to Oakland, The Mayor's salary shall be reviewed by the City Council in odd-numbered years and may be adjusted by the Council as provided for herein. (Amended by: Stats. November 1988 and March 2004.)

Section 301. Qualifications. No person shall be eligible for or continue to hold the Office of Mayor, either by election or appointment, unless he is a citizen of the United States, a qualified elector and resident for at least thirty days of the City or a territory lawfully annexed or consolidated. (Amended by: Stats. November 1988.)

Section 302. Term of Office, the Mayor. The Mayor shall be elected to a term of four years beginning at 11:00 a.m. on the first Monday of January following his election. The Mayor elected to Office to serve a term beginning in 1985 shall serve in Office until 11:00 a.m. on the Monday following January 1 in 1991. In 1990 municipal elections will be held to select City Officers for four year terms, including the Office of Mayor. No person shall be elected to the office of Mayor for more than two consecutive terms, and no person who has held the office of Mayor, or acted as Mayor, for more than two years of a term for which some other person was elected Mayor may be elected to more than one more consecutive term as Mayor. (Amended by: Stats. November 1988, November 1998 and March 2004.)

Section 303. Vacancy, Filling of. Upon the declaration of vacancy in the office of the Mayor, the office of the Mayor shall be filled by the Vice-Mayor of the Council. Except as otherwise provided in this Section, when the Vice-Mayor of the Council assumes the office of Mayor upon declaration of a vacancy, she/he shall serve for the unexpired term if such term is less than one year; otherwise she/he shall serve until the vacancy is filled as provided herein. Whenever the period of vacancy in a Mayor's term of office is less than one year and the Vice Mayor notifies the Council in writing that she/he does not wish to serve as Mayor for the unexpired term, the vacancy shall be filled by appointment through a majority vote of the remaining Councilmembers; provided the appointee shall be ineligible to be a candidate for the next full term of the Office of Mayor. If at the time of a vacancy declaration the unexpired term is one year or more, the vacancy occurring in the office of Mayor shall be filled by special election within 120 days of such vacancy. An extension of up to 60 days may be allowed for the express purpose of consolidating the special election with the next Municipal Election or Statewide Election. If the special election is to take place before the first use of ranked choice voting in a Municipal Election, the Council shall have the authority to provide for a ranked choice voting election by ordinance. Otherwise, the following procedures shall be used: if no candidate receives the majority of the votes cast in the special election, then a run-off election shall be held for the two candidates who received the highest number of votes no later than 60 days after the date of the special election; provided that all persons receiving a number of votes equal to the highest number of votes received by any candidate shall also be candidates at such run-off election. The candidate receiving the highest number of votes cast for all candidates for the office at the run-off election shall be declared elected. Special elections for the office of Mayor that take place during or after the first use of ranked choice voting in a Municipal Election shall be conducted using the same ranked choice voting procedures used to elect the Mayor in General Municipal Election.

The candidate elected to fill the vacancy shall hold office for the balance of the unexpired term. Alternative legal voting procedures shall be used to the greatest extent feasible to increase voter participation in special elections including but not limited to mail ballot voting, electronic voting, and extended voting period. (Amended by: Stats. November 1988, March 2002 and February 2007.)

Section 304. Vacancy: What Constitutes. The office of Mayor shall be declared vacant by the Council when the person elected or appointed thereto fails to qualify within ten days after his term is to begin, dies, resigns, ceases to be a resident of the City or absents himself/herself continuously from the City for a period of more than thirty days without permission from the Council, is convicted of a felony, is judicially determined to be an incompetent, is permanently so disabled as to be unable to perform the duties of his office, forfeits his office under any provision of this Charter, or is removed from office by judicial procedure. A finding of disability shall require the affirmative vote of at least six members of the Council after considering competent medical evidence bearing on the physical or mental capability of the Mayor. (Amended by: Stats. November 1988 and March 2004.)

Section 305. Functions, Powers and Duties. The Mayor shall be the chief elective officer of the City, responsible for providing leadership and taking issues to the people and marshalling public interest in and support for municipal activity. The Mayor shall have the following powers, duties, and responsibilities:
(a) The Mayor shall be responsible for the submission of an annual budget to the Council which shall be prepared by the City Administrator under the direction of the Mayor and Council. The Mayor shall, at the time of the submission of the budget, submit a general statement of the conditions of the affairs of the City, the goals of the administration, and recommendations of such measures as he may deem expedient and proper to accomplish such goals.
(b) Recommend to the Council such measures and legislation as he deems necessary and to make such other recommendations to the Council concerning the affairs of the City as he finds desirable.
(c) Encourage programs for the physical, economic, social and cultural development of the City.
(d) Actively promote economic development to broaden and strengthen the commercial and employment base of the City.
(e) Appoint the City Administrator, subject to confirmation by the City Council, remove the City Administrator and give direction to the City Administrator. The Mayor shall advise the Council before removing the City Administrator.
(f) Serve as ceremonial head of the City.
(g) Represent the City in inter-governmental relations as directed by the Council.
(h) Provide community leadership.
The Mayor shall, at the first meeting of the City Council in October, appear before the Council to deliver a general address on the State of the City, and recommend the adoption of such measures as he/she may deem expedient and proper. The Mayor and such staff as he/she may designate shall also conduct four additional public meetings during the year to solicit and respond to comments, concerns, or questions from the public. These meetings shall be noticed to the public not less than two weeks in advance, and shall be scheduled approximately three months apart. The Mayor shall devote his full time and attention to the duties of the Office of the Mayor and shall not engage in outside employment while in office. However, nothing shall prevent the Mayor from the receipt of income earned from business(s) or investment(s) in which he is not actively engaged and which are not in conflict with the performance of his duties and responsibilities. (Amended by: Stats. November 1988, November 1998 and March 2004.)

Section 306. Duties of Vice-Mayor. In the absence or temporary disability of the Mayor, the Vice-Mayor shall perform the duties of the office. (Amended by: Stats. November 1988.)

## ARTICLE IV CITY OFFICERS

Section 400. Designation as Officer. In addition to the Councilmembers and the Mayor, the officers of the City shall be the City Administrator, the City Attorney, the City Clerk, the City Auditor, and such department heads,

members of boards or commissions and executive officers of such boards and commissions as may be so designated by ordinance. The City Administrator may be hired by contract, for a term not to exceed four years, but no such contract shall prevent the Mayor from removing the City Administrator from office at any time. (Amended by: Stats. November 1988, November 1998 and March 2004.)

Section 401(1). City Attorney. The City Attorney shall be nominated and elected in the same manner and at the same election as the Councilmember-at-large. The salary of the elected City Attorney shall be set by the Council, which shall be not less than 70% nor more than 90% of the average salaries of City Attorneys of California cities within the three immediate higher and the three immediate lower cities in population to Oakland, and may not be reduced during the City Attorney's term of office, except as part of a general reduction of salaries of all officers and employees in the same amount or proportion. (Amended by: Stats. November 1988, November 1998, March 2002 and March 2004.)

Section 401(2). Qualifications, the City Attorney. No person shall be eligible for or continue to hold the Office of City Attorney, either by election or appointment, unless he or she is a citizen of the United States, a qualified elector and resident for at least 30 days of the City or a territory lawfully annexed or consolidated, licensed to practice law in all courts of the State of California and so licensed for at least ten years preceding his or her election. (Amend by: Stats. November 1988, November 1998 and March 2002.)

Section 401(3). Term of Office, the City Attorney. The City Attorney shall be elected to a term of four years beginning at 11:00 a.m. on the Monday following January 1 following his or her election. (Amended by: Stats. November 1988, November 1998 and March 2002.)

Section 401(4). Vacancy, Filling of. Upon the declaration of vacancy in the Office of the City Attorney, the Office of the City Attorney shall be filled by appointment by the majority vote of the members of the Council; provided, that if the Council shall fail to fill a vacancy by appointment within sixty days after such office shall become vacant, the City Council shall cause an election to be held to fill such vacancy pursuant to the manner and method as provided for in Article II, Section 205 of the Charter. An appointee or the person elected to the Office of City Attorney for the balance of an unexpired term shall hold office until the next general election for the Office of the City Attorney. (Amended by: Stats. November 1988, November 1998 and March 2002.)

Section 40l(5). Vacancy, What Constitutes. The Office of City Attorney shall be declared vacant by the Council when the person elected or appointed thereto fails to qualify within ten days after his or her term is to begin, dies, resigns, ceases to be a resident of the City or absents himself or herself continuously from the City for a period of more than thirty days without permission from the Council, absents himself or herself from any ten consecutive regular meetings except on account of own illness or when absent from the City by permission of the Council, is convicted of a felony, is judicially determined to be an incompetent, is permanently so disabled as to be unable to perform the duties of his or her office, forfeits his or her office under any provision of this Charter, or is removed from office by judicial procedure. A finding of disability shall require the affirmative vote of at least six members of the Council after considering competent medical evidence bearing on the physical or mental capability of the City Attorney. (Amended by: Stats. November 1988, November 1998 and March 2002.)

Section 401(6). Powers of the City Attorney. The City Attorney shall serve as counsel to the Mayor, City Council, and each and every department of the City, except departments specifically enumerated by this Charter as an independent department of the City, in their official capacities pursuant to state law and the Charter, and as counsel, shall assert and maintain the attorney-client privilege pursuant to state law. He or she shall advise all officers, boards, commissions, and other agencies of the City on legal matters referred to him or her and shall render written legal opinions when the same are requested in writing by the Mayor or a member of the Council or the City Administrator or any other officer, board or commission of the City. He or she shall draft such ordinances, resolutions, contracts and other legal documents as directed by the Council or requested by the Mayor or City Administrator or any official board or commission of the City. He or she shall act as Counsel in behalf of the City or any of its officers, boards, commissions, or other agencies in litigation involving any of them in their official

capacity. He or she may, whenever a cause of action exists in favor of the City, commence legal proceedings, subject to ratification by the City Council, when such action is within the knowledge of the City Attorney, or, he or she shall commence legal proceedings when directed by the City Council. He or she shall pass on the form and legality of all contracts of the City before the same are executed. He or she shall not settle or dismiss any litigation brought for the City nor settle any litigation brought against the City which may be under his control unless upon his written recommendation he or she is authorized to do so by the Council. He or she shall administer the office of City Attorney, and shall have the power to appoint, discipline and remove all officers and employees of his or her office subject to the provisions of Article IX of the Charter. The Council may empower the City Attorney, at his or her request and without regard to the provisions of Article IX, to employ special legal counsel, and he or she shall have the power to appoint appraisers, engineers and other technical and expert services necessary for the handling of any pending or proposed litigation, proceeding or other legal matter. Upon the City Attorneys recommendation and the approval of the Council, when he or she has a conflict of interest in litigation involving another office of the City in his official capacity, such other officer may retain special legal counsel at City expense. (Amended by: Stats. November 1988, November 1998, March 2002 and March 2004.)

Section 402. City Clerk. The City Clerk shall be appointed or discharged by the City Administrator subject to confirmation by the Council. He shall be the Clerk of the Council and keep an accurate public record of all ordinances, resolutions and motions, shall have custody of the official seal and all official records committed to his care, make affidavits and administer oaths without charge in matters affecting the business of the City, conduct elections, and perform the other duties of a City Clerk under general law where not inconsistent with this Charter or the ordinances of the City. (Amended by: Stats. November 1988 and March 2004)

Section 403. City Auditor. The City Auditor shall be nominated and elected in the same manner, for the same term, and at the same election, as the Mayor. To be eligible to the office a person must be a qualified elector of the State of California, and shall be a resident of the City at the time of filing nomination papers and for thirty (30) days immediately preceding the date of filing, and shall be certified by the California State Board of Accountancy as a Certified Public Accountant or by the Institute of Internal Auditors as a Certified Internal Auditor. The salary of the office shall be set by the Council, which shall be not less than 70% nor more than 90% of the average salaries of City Auditors of California cities within the three immediate higher and the three immediate lower cities in population to Oakland, and may not be reduced during the City Auditor's term of office, except as a part of a general reduction of salaries for all officers and employees in the same amount or proportion. The City Auditor shall have the power and it shall be his or her duty to audit the books, accounts, money and securities of all departments and agencies of the City and such other matters as the Council may request; to report to the Council periodically the results of such audits and to advise and make recommendations to the City Administrator regarding accounting forms design, fiscal and statistical reports and the methods or procedures for maintaining the accounts and accounting system throughout all departments, offices and agencies of the City. The City Auditor shall report to the Council instances of noncompliance with accepted accounting principles where recommendations for compliance have not been implemented by the City Administrator after reasonable time and opportunity. The City Auditor shall conduct surveys, reviews, and audits as the Auditor deems to be in the best public interest or as required by the Council or Mayor. For these purposes the public interest shall include, but not be limited to:
(1) Reviewing and appraising the soundness, adequacy and application of accounting, functional, and operating controls and reliability and timeliness of accounting and other data generated within the organization.
(2) Evaluating the city's internal controls to ensure that the City's assets and resources are reasonably safeguarded from fraud, waste, and mismanagement.
(3) Ascertaining compliance with Council's resolutions and policies and the Mayor's Administrative Instructions and Directives, as well as applicable State and Federal laws and regulations.
(4) Providing assistance to City Departments to enhance the effectiveness, efficiency and economy of their operations.
(5) Preparing an impartial financial analysis of all ballot measures, pursuant to the provisions of the Municipal Code.
(6) Preparing impartial financial analyses of proposed major expenditures prior to the approval of such expenditures. These analyses will be for informational purposes only and will include, but not be limited to,

proposals, contracts, ventures, programs and construction projects. The proposed major expenditures selected for these financial analyses will be based on requests from Mayor/Council and/or deemed to be prudently advisable in the objective and professional judgment of the City Auditor.

(7) Responding to requests for audit and reviews.

(8) Submitting, at a public meeting of the full City Council, a quarterly report to the Council and public on the extent of implementation of recommendations for corrective actions made in the City Auditor's report.

(9) The City Auditor shall conduct performance audits of each department as specified in the City budget.

The City Auditor shall be represented in all legal matters by the City Attorney except as provided otherwise in Section 401. (Amended by: Stats. November 1979, November 1996 and March 2004)

Section 404. Board of Education. (a) The Board of Education shall consist of ten District School Directors. Seven District School Directors shall be nominated and elected by the qualified electors of their respective districts for a term of four years. The elected District School Directors shall be elected at the times and in the manner in this Charter provided for members of the Council and shall be required to have the same qualifications. The elected School Directors' Districts shall have the same boundaries as the seven Council Districts. Three School District Directors shall be appointed by the Mayor for two-year terms commencing on May 1, 2000. The appointed Directors shall be residents of the City of Oakland and shall have the same powers and duties as elected Directors. Effective May 1, 2004 (1) the office of appointed Director shall be abolished, (2) the Board of Education shall consist of seven District School Directors. elected in accordance with the provisions of this section 404, and (3) the provisions of this section pertaining to Mayoral appointment of Directors shall be null and void.

The provisions of the Education Code of the State of California shall apply as to matters not provided for in this Charter.

(b) Notwithstanding any other provisions of this section, the respective terms of office of the elected Directors of the Board of Education shall be as follows:

(1) Directors elected or appointed to serve terms beginning in 1985 shall serve in office until 11:00 a.m. on the Monday following January 1, in 1991.

(2) Directors elected or appointed to serve terms beginning in 1987 shall serve in office until 11:00 a.m. on the Monday following January 1, in 1993.

(3) At the 1990 General Municipal Election, District School Director seats in Districts 2, 4, and 6 shall be filled for 4-year terms.

(4) At the 1992 General Municipal Election, District School Director seats in Districts 1, 3, 5, and 7 shall be filled for 4-year terms thereafter.

Notwithstanding any other provisions of the Education or Elections Code or any other law:

(1) The three appointed Directors' qualifications shall be determined by the Mayor and may include, but shall not be limited to the following: (i) a Director who is an educator; (ii) a Director who is skilled in financial matters; and (iii) a Director who is a student or a recent graduate of the Oakland Unified School District; and

(2) Appointed Directors shall serve at the pleasure of the Mayor.

(Amended by: Stats. June 1988, November 1988 and March 2000)

(c) No District School Director of the Board of Education may interfere with the performance by the Superintendent of the District of those duties vested in or delegated to the Superintendent of the District by statute or by act of the Board of Education. Such interference specifically includes any attempt by a District School Director to order, coerce or influence, publicly or privately, any subordinate, official or employee of the District as to any matter within the authority of the Superintendent under statute or as conferred by the Board of Education through its policies, procedures, resolutions, or minutes of meetings. Such interference will constitute official misconduct. (Added by: Stats. June 1990.)

(d) Violations of California Education Code section 7053 and 35230 and California Government Code section 1090 and 1126(a) will constitute official misconduct. (Added by: Stats. June 1990.)

(e) Any District School Director who engages in official misconduct as defined in subsections (c) and (d) above may be removed from office, pursuant to Government Code section 3060, by an accusation presented by the Alameda County Grand Jury or as otherwise provided by law. (Added by: Stats. June 1990.)

Section 405. (Repealed by: Stats. November 2000.)

# ARTICLE V THE CITY MANAGER

Section 500. Appointment. The Mayor shall appoint a City Administrator, subject to the confirmation by the City Council, who shall be the chief administrative officer of the City. He shall be a person of demonstrated administrative ability with experience in a responsible, important executive capacity and shall be chosen by the Mayor solely on the basis of his executive and administrative qualifications. No member of the Council shall, during the term for which he is elected or appointed, or for one year thereafter, be chosen as City Administrator. (Amended by: Stats. November 1988, November 1998 and March 2004.)

Section 501. Compensation and Tenure.
The City Administrator shall receive the salary fixed by the Council. He shall be appointed for an indefinite term and shall serve at the pleasure of the Mayor. (Amended by: Stats. November 1988 and March 2004.)

Section 502. Acting City Administrator. The City Administrator shall designate two or more of his assistants or department heads, in the sequence in which they are to serve, as Acting City Administrator to serve as City Administrator in the temporary absence or disability of the City Administrator. (Amended by: Stats. November 1988 and March 2004.)

Section 503. Powers of Appointment and Removal. The City Administrator shall be responsible to the Council for the proper and efficient administration of all affairs of the City under his jurisdiction, and shall, subject to the provisions of Article IX of this Charter and except as otherwise provided in this Charter, have the power to appoint, assign, reassign, discipline and remove all directors or heads of departments and all employees under his jurisdiction. He may delegate to directors or other department heads responsible to him/her the authority to appoint, discipline and remove subordinate employees, subject to the provisions of Article IX of this Charter. (Amended by: Stats. November 1988 and March 2004.)

Section 504. Duties. The City Administrator shall have the power and it shall be his duty:
(a) To execute and enforce all laws and ordinances and policies of the Council and to administer the affairs of the City.
(b) To attend all meetings of the Council, and its committees, unless excused, and such meetings of boards and commissions as he chooses or which he is directed to attend by the Council, and to participate in discussions at such meetings.
(c) To recommend to the Council such measures and ordinances as he may deem necessary or expedient and to make such other recommendations to the Council concerning the affairs of the City as he finds desirable.
(d) To investigate affairs of the City under his supervision, or any franchise or contract for the proper performance of any obligation running to the City within his jurisdiction.
(e) To control and administer the financial affairs of the City. He may appoint a Director of Finance to act under his direction.
(f) To prepare an annual budget under the direction of the Mayor and Council for the Mayor's submission to the Council.
(g) To prepare or cause to be prepared the plans, specifications, and contracts for work which the Council may order.
(h) To supervise the purchasing of materials and supplies and to make recommendations to the Council in connection with the awarding of public contracts and to see that all City contracts under his direction or that of the Council are faithfully performed.
(i) To prepare and submit to the Council such reports as it may require.
(j) To keep the Council at all times fully advised as to the financial condition and needs of the City.
(k) To prescribe such general rules and regulations as he may deem necessary or expedient to the general conduct of the administrative departments under his jurisdiction.
(l) When directed by the Council, to represent the City in its intergovernmental relations and to negotiate contracts for joint governmental actions, subject to Council approval.

(m) To devote his entire time to the duties and interest of the City.

(n) To perform such other duties as may be prescribed by this Charter or by ordinance or resolution. (Amended by: Stats. November 1988 and March 2004.)

## ARTICLE VI ADMINISTRATIVE ORGANIZATION

Section 600. Administrative Organization Authorized. The Council shall by ordinance provide the form of organization through which the functions of the City under the jurisdiction of the City Administrator are to be administered. Any combination of authorized duties, powers and functions which in the judgment of the Council will provide the most efficient and economical service possible, consistent with the public interest and in keeping with accepted principles of municipal administration, may be authorized by such ordinance. All departments or other administrative agencies so created shall be administered by the City Administrator or by a department head or other officer appointed by and responsible to him/her. (Amended by: Stats. November 1988 and March 2004.)

Section 601. Boards and Commissions. The Council may create by ordinance such operational, advisory, appellate or rule-making boards and commissions as may be required for the proper operation of any function or agency of the City and prescribe their function, duties, powers, jurisdiction and the number of board and commission members, their terms, compensation and reimbursement for expenses, if any, subject to the provisions of this Article. Members of boards and commissions shall be appointed by the Mayor subject to confirmation by the affirmative vote of five members of the Council and may be removed for cause, after hearing, by the affirmative vote of at least six members of the Council. Vacancies shall be filled for any unexpired term in the same manner as the original appointments were made; provided, however, that if the Mayor does not submit for confirmation a candidate to fill the vacancy within 90 days of the date the vacancy first occurred, the Council may fill the vacancy. If the Mayor does submit for confirmation a candidate to fill a vacancy within the 90-day time frame and the Council does not confirm the candidate, the 90-day period shall commence anew. For purposes of this Section, a seat filled by a holdover appointment will be considered vacant as of the expiration of the holdover's prior term of office. (Amended by: Stats. November 1988 and March 2004.)

Section 602. Continuation. The departments, agencies, boards and commissions heretofore created by prior Charter, ordinance or administrative order, other than those provided for in Articles IV, V, VII, and IX of this Charter, may be modified or discontinued by ordinance adopted pursuant to this Article and are hereby continued until so modified or discontinued. (Amended by: Stats. November 1988.)

## ARTICLE VII PORT OF OAKLAND

Section 700. Establishment of a Port Department. To promote and more definitely insure the comprehensive and adequate development of the Port of Oakland through continuity of control, management and operation, there is hereby established a department of the City of Oakland known as the "Port Department." (Amended by: Stats. November 1988.)

Section 701. Board of Port Commissioners. The exclusive control and management of the Port Department is hereby vested in the Board of Port Commissioners, which shall be composed of seven (7) members who shall be appointed by the Council, upon nomination by the Mayor.

No person shall be appointed as, or continue to hold office as, a member of the Board who is not at the time of his appointment, and has not been continuously for thirty (30) days immediately preceding his appointment, and who shall not continue to be during his term, a bona fide resident of the City of Oakland.

The members of the Board shall serve without salary or compensation. (Amended by: Stats. November 1988 and Stats. November 2000.)

Section 702. Organization, Terms of Office. The Board of Port Commissioners shall consist of seven (7) members nominated by the Mayor and appointed by the Council for a term of four (4) years. Members in office at the time

Case 3:07-cv-06411-CRB   Document 28-2   Filed 05/29/2008   Page 13 of 32

this section takes effect shall continue in office until their successors are appointed and qualified. For terms commencing July 10, 1969, two (2) members shall be appointed to fill the positions expiring upon that date, and two (2) additional members shall be appointed to bring the membership of said Board to seven (7); provided, that the terms of such two additional members shall be for such original duration, in no event to exceed four years, as will insofar as practicable permit appointment at the end of subsequent terms of office of members, of either one or two members. (Amended by: Stats. November 1988.)

Section 703. Removal. Any member of the Board may be removed from office by the affirmative vote of six (6) members of the Council in the same manner and subject to the same conditions as the Council may remove the members of any of the Boards provided for in this Charter in Article VI. (Amended by: Stats. November 1988.)

Section 704. Ordinances and Resolutions. All action taken by the Board of Port Commissioners shall be by resolution, except as hereinafter set forth in this Article. Any member of the Board may require a record of the vote on any resolution to be made in its minutes. The Board shall keep a minute book wherein shall be recorded the proceedings taken at its meetings and it shall keep a record and index of all of its resolutions and ordinances.
No ordinance or resolution shall be passed or become effective without receiving the affirmative- votes of at least four (4) members of the Board.
To constitute an ordinance a bill must, before final action thereon, be passed to print and published with the ayes and noes at least once in the official newspaper of the City. Between the first and final readings at least five (5) days shall elapse. The enacting clause of all ordinances passed by the Board shall be substantially in these words: Be it ordained by the Board of Port Commissioners of the City of Oakland as follows:
All ordinances shall be signed by the President or Vice-President of the Board and attested by the Secretary.
A certified copy of each ordinance adopted by the Board shall be forthwith filed with the City Clerk, and the City Clerk shall keep a record and index thereof which shall at all times be open to public inspection. (Amended by: Stats. November 1988.)

Section 705. Ordinances Required in Certain Cases. All proceedings for the acquisition of real property by purchase, condemnation, or otherwise, or the granting of any lease longer than one (1) year, the fixing, regulating, and altering schedules of rates, dockage, wharfage, tolls, and charges for all public-owned docks, piers, wharves, slips and other facilities, and for services rendered by the Port Department, and the adoption of all general rules and regulations of the Board, excepting administrative regulations of a temporary nature, shall be taken by ordinance. (Amended by: Stats. November 1988.)

Section 706. Powers and Duties or the Board. The Board of Port Commissioners shall have the complete and exclusive power, and it shall be its duty for and on behalf of the City:
(1) To sue and defend in the name of the City in all actions and proceedings wherein there is involved any matters within the jurisdiction of the Board.
(2) To make provisions for the needs of commerce, shipping, and navigation of the port, to promote, develop, construct, reconstruct, alter, repair, maintain, equip and operate all water front properties including piers, wharves, sea walls, docks, basins, channels, slips, landings, warehouses, floating and other plants or works, dredge, and reclaim land, construct, equip and operate terminal trackage with sidings and turnouts and railroad connections between docks, piers and other port structures, and connect the same with mainline tracks, and to establish, equip and operate all other facilities or aids incident to the development, protection and operation of the port, as may be deemed proper and desirable in its judgment, and it may modify its plans from time to time as the requirements of commerce, shipping and navigation may demand, and as part of such development and operation to provide for tugs, dredges, fireboats, barges, cold storage plants, and all other publicly owned facilities or appliances incident to the operation of the port, of such number and character, and in such places as the Board may deem feasible and proper.
(3) To take charge of, control, and supervise the Port of Oakland, including all the water front properties, and lands adjacent thereto, or under water, structures thereon, and approaches thereto, storage facilities, and other utilities, and all rights and interests belonging thereto, which are now or may hereafter be owned or possessed by the City, including all salt or marsh or tidelands and structures thereon granted to the City in trust by the State of California

for the promotion and accommodation of commerce and navigation.

(4) To have control and jurisdiction of that part of the City hereinafter defined as the "Port Area" and enforce therein general rules and regulations, to the extent that may be necessary or requisite for port purposes and harbor development, and in carrying out the powers elsewhere vested in the Board.

Provided, however, that with the approval of the Council the Board may relinquish to the Council control of portions of the said area, and likewise, upon request of the Board, the Council may, by ordinance, enlarge the Port Area.

(5) To require owners of water terminal properties and facilities within the port to keep the same in proper condition and repair and to maintain them with especial reference to the reduction of fire hazard or nuisances, and it shall have the right to inspect such terminal facilities at reasonable times.

(6) To exercise all the powers pertaining to the waterfront, wharves, dredging machines, or the port and its operation and maintenance, which have been heretofore conferred upon the City and the Council by Section 106 of this Charter.

(7) To regulate the berthing, anchoring, towing, loading, unloading and mooring of vessels within the port.

(8) To handle, store and recondition all commodities; to sell or otherwise dispose of personal property within its possession or ownership, and, generally, to perform all services customary, necessary or expedient in connection with the development and operation of the port.

(9) To issue receipts, negotiable or otherwise, for property or merchandise in its charge or possession.

(10) To fix all rates, dockage, rentals, tolls, wharfage, and charges, for the use and occupation of the public facilities or appliances of the port, and for services rendered by the Port Department, and to provide for the collection thereof.

(11) To use, for loading and unloading cargo; with the right to collect tolls, dockage and other terminal charges thereon, such portions of the streets of the City ending or fronting upon the water areas of the harbor of said City, as may be used for said purposes.

(12) To build piers, wharves, docks, bulkheads, slips or other structures, across and upon such streets, provided only that access be provided to the public at the shoreward end thereof.

(13) To lend its aid to secure the improvement of navigable tidal waters within or adjacent to the port, where, in its opinion, such improvements are economically justifiable, and in the general carrying out of its powers to cooperate with neighboring cities, other ports, the State of California, or the United States Government, and appear before state, federal and other public legislative and administrative authorities.

(14) To manage the business of the Port and promote the maritime and commercial interests by proper advertisement of its advantages, and by the solicitation of business, within or without the port, within other states or in foreign countries, through such employees and agencies as it may deem expedient.

(15) To acquire in the name of the City by purchase, condemnation, gift, lease, or otherwise take over and hold all lands, property, property rights, leases, or easements, and personal property of every kind, necessary or convenient for the development and operation of the port, or for the carrying out of the powers herein granted to the Board. Whenever the Board determines that any lands owned by the City within its jurisdiction have become unnecessary for port purposes or harbor development, it may in its discretion transfer such lands to the control of the Council, free from all restrictions, or it may sell or exchange such lands, by ordinance subject to the referendum provisions of this Charter.

(16) To purchase materials and supplies.

(17) To enter into contracts, agreements, or stipulations (other than leases) germane to the scope of its powers and duties.

(18) To let all work by contract, or order it done by any labor, as the Board may determine.

(19) To have and exercise the right of eminent domain within the "Port Area" on behalf of and in the name of the City for port purposes, harbor development or the carrying out of any of the powers granted to said Board, and to exclusively find and determine by ordinance adopted by a two-thirds vote of all of its members the public interest and necessity thereof.

(20) To appoint a Port Attorney, whose duty it shall be to pass upon the form and legality of all contracts within the jurisdiction of the Board, give legal advice to the Board on official matters, defend and (subject to direction from the Board) prosecute or compromise all actions at law or in equity and special proceedings for or against the City or any officers thereof in his official capacity, pertaining to matters within the jurisdiction of the Board. The Board

Case 3:07-cv-06411-CRB   Document 28-2   Filed 05/29/2008   Page 15 of 32
In Effect Annu... http://municipalcodes.lexisnexis.com/cgi-bin/hlline.pl/codes/oaklan...

shall fix and provide for his compensation.

(21) To employ and appoint an Executive Director, and such other officers, employees and agents as may be necessary in the efficient and economical carrying out of its functions and to prescribe and fix their duties, authority and compensation, and to require such officers, employees and agents to give a bond in such an amount as the Board may require for the faithful discharge of their duties. All offices and places of employment in the permanent service of the Board shall be created by ordinance duly passed.

(22) To provide and equip offices.

(23) To provide in the Port Area, subject to the provisions of Section 727, for other commercial development and for residential housing development; provided that any residential housing development shall be approved by the Board with the consent of the City Council.

(24) To provide for financing of Port facilities through the issuance of bonds or other forms of debt instruments which are secured by a pledge of, or are payable from, all or any part of the revenues of the Port and/or which may be secured in whole or in part by interests, liens or other forms of encumbrance (other than in or on fee title in land) or lease in property. Such debt instruments shall be issued and sold in such manner and upon such terms and conditions, and shall contain such provisions and covenants, as the Board may fix and establish by the provisions of one or more procedural ordinances. Such debt instruments shall not constitute a debt, liability or obligation of the City of Oakland and shall be payable exclusively from revenues and other assets of the Port.

(25) To provide for the issuance and sale, or to cause the issuance and sale, of any form of equity instruments or securities which represent interests in property (other than fee title and land) used or owned by the Port and which participate in incidents of ownership of such property; provided, that such property shall not include property of the Port which was owned or used by the Port prior to the date of the adoption of this Section. For the purpose of facilitating the issuance and sale of such equity instruments, the Port is authorized to create and to participate in legal entities, including but not limited to, trusts, corporations and partnerships, and to pledge and grant security interests, liens or other forms of encumbrance or lease in such property (other than fee title in land) to secure the repayment of such equity instruments. Such equity instruments, or combinations of debt and equity instruments, shall be issued and sold, and such entities created, in such manner and upon such terms and conditions, as the Board may fix and establish by the provisions of one or more procedural ordinances. Such equity instruments shall not constitute a debt, liability or obligation of the City of Oakland and shall be payable exclusively from revenues, other funds and property of the Port pledged thereto.

(26) To expend all funds necessary to the carrying out of the powers and duties herein expressed.

(27) To adopt and enforce such ordinances, orders, regulations and practices as are necessary for the proper administration and discharge of its duties and powers, or for the management and government of the port, and its facilities.

(28) To prescribe fines, forfeitures and penalties for the violation of any provision of this Article, or of any ordinance, but no penalty shall exceed Five Hundred Dollars ($500.00) or six (6) months imprisonment, or both.

(29) To have and exercise on behalf of the City all the rights, powers and duties in respect to the subject matters herein provided for, that are now or which may hereafter be vested in the City, or any of its departments or officers, or which may be provided for by general law.

(30) To do and perform any and all other acts and things which may be necessary and proper to carry out the general powers of the City, or any of the provisions of this Article, and to exercise all powers not in conflict with the Constitution of the State, or with this Charter, germane to the scope of its powers, purposes and duties. (Amended by: Stats. November 1988.)

Section 707. Operation of Facilities. Notwithstanding any other provision of this Charter to the contrary, the Board shall not be required to directly operate all of the properties, facilities and utilities under its control or jurisdiction, and shall have the power to authorize the operation of any of such properties, facilities and utilities by a private person, firm, association or corporation, whether by lease, franchise, license, assignment, permit or otherwise, upon such terms and conditions as the Board shall prescribe, which terms and conditions shall include control over the rates, charges and practices of said private party to the extent permitted by law. (Amended by: Stats. November 1988.)

Section 708. Building Permits. No person or persons shall construct, extend, alter, improve, erect, remodel or repair

Case 3:07-cv-06411-CRB    Document 28-2    Filed 05/29/2008    Page 16 of 32

any pier, slip, basin, wharf, dock or other harbor structure, or any building or structure within the "Port Area" without first applying for and securing from the Board a permit so to do, in accordance with the rules and regulations adopted by it. In approving or denying the right to said permit, the Board shall consider the application therefor, the character, nature and size and location of the proposed improvement, and exercise a reasonable and sound discretion in the premises.

Provided, however, that applications for building permits pertaining to privately owned property within the "Port Area" shall be made to the Executive Director who shall consider and act upon them in the same manner as applications for such permits made to the Board. Any person excepting to any denial, suspension or revocation of a permit applied for or held by him pursuant to the provisions of this section, or any person excepting to the granting of, or to the refusal to suspend or revoke a permit applied for or held under the provisions of this section, may appeal to the Board by filing with the Secretary a written notice of such appeal setting forth the specific grounds thereof. Such notice must be filed within fourteen (14) days after notice of such denial, suspension, revocation or granting, or refusal to suspend, revoke or grant, such permit, constituting the basis of such appeal, but in no event later than thirty (30) days after the date of the denial, suspension, revocation or granting of the permit. The Secretary shall forthwith set said matter for hearing before the Board and cause notice thereof to be given (1) to the appellant, and (2) to the adverse party or parties, or to the attorney, spokesman or representative thereof, not less than five (5) days prior to such hearing. At such hearing the appellant shall show cause, on the grounds specified in the notice of appeal, why the action excepted to should not be approved. The Board may continue such hearing from time to time, and its findings and conclusions on the appeal shall be final and conclusive in the matter. Such permit issued by the Board or the Executive Director shall be in addition to any permit which may be required by law from the Building Inspector of the City. (Amended by: Stats. November 1988.)

Section 709. Leases. The Board shall have the power to make and enter into any lease of any properties belonging to or possessed by the City under its jurisdiction for a term of not to exceed sixty-six (66) years, provided that all leases made shall be subject
to referendum. (Amended by: Stats. November 1988.)

Section 710. Contracts. All contracts shall be made and entered into in accordance with the conditions and procedures established by the Board, but subject to bid limit and race and gender participation programs established by the Council pursuant to the provisions of Sections 807 and 808 of this Charter.
(Amended by: Stats. November 1988, March 1996.)

Section 711. Supervision of Leases, etc. The Board shall take over and control, and shall have the power to grant, all leases, concessions, easements, privileges, spur tracks and other permits, wharfing-out rights, and waterfront or other franchises relating to the harbor or port and located within the "Port Area" and receive the income therefrom, but this shall not include franchises for the construction and maintenance of railroads, power lines, gas mains and other utilities of a general nature which may extend through other portions of the City into the Port Area and which are within the jurisdiction of the Council pursuant to the provisions of Article X of this Charter, and subject to the supervision of the City Administrator.
It shall be the duty of the Board to see that all provisions of such leases, concessions, easements, privileges, permits, rights or franchises within its jurisdiction are faithfully observed, and it may cause to be instituted such actions or proceedings in the name of the City as may be necessary to enforce the provisions thereof, or to revoke, cancel, or annul them when they have become forfeitable in whole or in part, or are illegal, or void or voidable. (Amended Stats. November 1988 and March 2004.)

Section 712. Restrictions of Powers of Council. No franchise shall be granted, no property shall be acquired or sold, no street shall be opened, altered, closed or abandoned, and no sewer, street, or other public improvement shall be located or constructed in the "Port Area," by the City of Oakland, or the Council thereof, without the approval of the Board. (Amended by: Stats. November 1988.)

Section 713. Public Streets. Whenever the Board shall determine that it is necessary to open, close, improve, alter or vacate a public street or part of a public street within the "Port Area," a certified copy of the resolution so

determining such necessity shall be filed by the Board in the Office of the City Clerk, with the request that the City Administrator and the Council initiate and carry to completion the proceedings necessary to effect said proposal. (Amended by: Stats. November 1988 and March 2004.)

Section 714. Personnel System. All permanent places of employment in and under the Board shall be included within the personnel system of the City established pursuant to and subject to the provisions of Article IX of this Charter, except the Executive Director and his two principal assistants, the Secretary of the Board, the Port Attorney and Legal Assistants, chief wharfinger, field and traffic representatives, and all persons employed in the physical or mechanical handling, moving or checking of cargo and freight. The exemption of such personnel from the operation of civil service rules shall not in any way affect such pre-existing civil service rights as such employee may hold. (Amended by: Stats. November 1988.)

Section 715. Annual Budget. The Board shall annually, on or before the fourth Monday of May, or not less than one week prior to the submission of the annual appropriation ordinance by the City Administrator, should the Council advance the date therefor, but not later than the third Monday of July, carefully prepare a budget setting forth the estimated receipts of the Port, and revenue from other sources, for the ensuing year, and the sums of money necessarily required for the administration of the department, and for maintenance, operation, construction and development of the port and its facilities for the ensuing year, and stating the amount necessary to be raised by tax levy for said purposes. Said budget when so prepared, shall be certified by the President and Secretary of the Board, and a certified copy thereof shall, on or before said date, be filed with the Council, one with the City Administrator, and one with the Auditor. (Amended by: Stats. November 1988 and March 2004.)

Section 716. Tax Levy Funds. In the event that said Port budget, as provided for in the foregoing section, shall request or provide for the allocation or appropriation to the Port by the Council of any funds raised or to be raised by tax levy or in any manner to be obtained from general revenues of the City, or shall request the incurring or payment of any financial obligation by the City for the Port's use and benefit, or shall not provide for Board servicing of existing or future general obligation bonds of the City issued for Port purposes, the Council shall have the authority to reject said budget and to require it to be revised to meet with Council approval, subject, however, to the Board's covenants with the holders of all of the then outstanding revenue bonds issued by the Board.
The Treasurer shall keep all Port funds separate from other funds in his possession, and the Board shall have the exclusive management and disbursement of the same. (Amended by: Stats. November 1988.)

Allocation of Funds.

Section 717 (1). All Port facilities, airport facilities and terminal facilities of any kind or character are hereby consolidated and shall be operated as a single project by the Board in the interest of transportation by land, by sea and by air, it being hereby found and determined that transportation facilities of all classes implement and augment each other to such an extent that the same must in the public interest be operated singly and under one central supervision and control. Wherever in this Charter the terms "port", "project", or "facilities" are used, the same shall include all facilities under the jurisdiction of the Board, irrespective of whether the same shall be port or airport facilities or other real or personal property or equipment of the Port and related improvements, structures or facilities. (Amended by: Stats. November 1988.)

Section 717 (2). All moneys once apportioned or appropriated to the Board, including, without limiting the generality of the foregoing, all moneys heretofore apportioned or appropriated to and now under the control of the Board, shall be and remain under the control and order of and shall be expended by the Board for the purpose for which apportioned or appropriated and shall be kept separate and apart from all other moneys of the City or the Board. All surplus moneys which, in the judgement of the Board, are not needed for the purpose for which apportioned or appropriated, shall be allocated to and deposited in the Revenue Fund provided for in Section 717 (3). (Amended by: Stats. November 1988.)

Section 717 (3). All income and revenue from the operation of the port or from the facilities of the port, of

whatever kind or nature, and all net income from leases or any other source of income or revenue, including, without limiting the generality of the foregoing, all such income and revenue now under the control of the Board, shall be and remain under the control and order of and shall be expended by the Board; provided that all such income and revenue shall be allocated to and deposited in a special fund in the City Treasury (which is hereby created) designated "Port Revenue Fund" and shall be kept separate and apart from all other moneys of the City or the Board and shall be used and applied for the following purposes and in the following order of priority, to wit:

First: For the payment, as the same become due and payable, of the principal of and interest on any or all general obligation bonds of the City of Oakland heretofore and hereafter issued for port purposes, but only to the extent required by the Constitution of the State of California or otherwise as determined by resolution of the Board.

Second: For the payment of the principal of and interest on revenue bonds, or other evidences of indebtedness payable solely from revenues as in Section 718 provided, which are due or become due during the fiscal year in which the revenues in said funds, or either thereof, are received or are to be received, together with reserve fund payments, sinking fund payments or similar charges in connection with such revenue bonds due or to become due in such fiscal year, including all payments required to be made pursuant to the terms of any resolution authorizing the issuance of revenue bonds, or required by the terms of the contract created by or upon the issuance of revenue bonds.

Third: For the payment of all costs of maintenance and operation of the facilities from or on account of which such money was received. General costs of administration and overhead of the Board not directly chargeable to each facility under its control shall be apportioned fairly by the Board, upon such reasonable basis as it may determine, to each such facility.

Fourth: For defraying the expenses of any pension or retirement system applicable to the employees of the Board.

Fifth: For necessary additions, betterments, improvements, repairs or enlargements of any facilities, and, to the extent determined by a resolution or resolutions of the Board, for replacements, renewals or reconstruction of any facilities.

Sixth: For establishing and maintaining reserve or other funds to insure the payment on or before maturity of any or all general obligation bonds of the City now outstanding or hereafter issued for any facility under the control of the Board, but only to the extent required by the Constitution of the State of California or otherwise as determined by resolution of the Board.

Seventh: For establishing and maintaining reserve or other funds to insure the payment on or before maturity of any or all revenue bonds of the Board hereafter issued.

Eighth: For establishing and maintaining such other reserve funds pertaining to the facilities of the Board as shall be determined by a resolution or resolutions of the Board.

Ninth: For transfer to the General Fund of the City, to the extent that the Board shall determine that surplus moneys exist in such fund which are not then needed for any of the purposes above stated. (Amended by: Stats. November 1988.)

Financing of Harbor and Airport Operations.

Section 718 (1). General Obligation Bonds of the City. The City of Oakland may from time to time incur general obligation bonded indebtedness in the manner provided by law for the acquisition, construction or completion of any port facilities or improvements of the Port of Oakland, including land, rights of way and air easements. The proceeds from the sale of any general obligation bonds now authorized, or which may hereafter be authorized, for any such purposes, shall be under the control of, and shall be expended by, the Board for the objects and purposes for which such general obligation bonded indebtedness was incurred. Whenever, in the opinion of the Board, it is desirable for the City of Oakland to incur additional general obligation bonded indebtedness for any project within the jurisdiction or control of the Board, the Board shall prepare tentative plans, estimates and bond retirement schedules and submit its recommendations in writing to the City Council, which shall thereupon take such action as it deems advisable to reject or carry out such recommendations. (Amended by: Stats. November 1988.)

Section 718 (2). Methods of Financing Not Exclusive. Nothing in this Section 718 contained shall in any way abridge, control, limit, restrict or revoke the power of the electors of the City of Oakland to vote for and cause to be authorized and issued general obligation bonds of the City of Oakland for the acquisition, construction or

completion of any project herein defined, or any additions thereto or betterments or improvements thereof, irrespective of whether or not revenue bonds for such purpose have been, or may thereafter be issued hereunder, and nothing herein contained shall prevent the financing of any project or any additions, betterments or improvements thereof from any other funds which may be legally available for that purpose. Revenue bonds authorized to be issued hereunder shall not be subject to charter limitations as to the amount of general obligation bonded indebtedness of the City of Oakland nor be taken into consideration in determining the amount of general obligation bonded indebtedness which the City of Oakland is authorized to incur, and the issuance of revenue bonds as in this Article VII provided shall be deemed to constitute a supplemental and additional method of providing funds for the financing of harbor, airport or other real or personal property or equipment of the Port and related improvements, structures or facilities. Such revenue bonds shall be issued in the name of the Board of Port Commissioners of the City of Oakland and shall constitute obligations only of the Board, payable in accordance with their terms from revenues of any project, as in this Article VII authorized. (Amended by: Stats. November 1988.)

Section 718 (3). Rates, Tolls and Charges. Without limiting any power in this Charter conferred upon the Board, the Board has power for any of the purposes of this Section 718 to fix rates, tolls, fees, rentals or charges for the use of the facilities provided by any project, or for any services rendered in connection therewith, and to alter, change or modify the same at its pleasure, subject to any contractual obligation which may be entered into by the Board with respect to the fixing of such rates, tolls, fees, rentals or other charges; and, by a resolution of issue or otherwise, to enter into covenants to increase rates, tolls, fees, rentals or other charges from time to time; provided, however, that any person shall be permitted to use or operate any facilities provided by any project only upon payment of the regularly established charge therefor, except as may be otherwise specifically provided in a resolution of issue. All rates, fees, rentals and other charges shall be paid only in such coin or currency as on the date of payment is legal tender for public and private debts. (Amended by: Stats. November 1988.)

Section 718 (4). Authorization of Revenue Bonds. Each issue of revenue bonds shall be authorized by the Board by a resolution of issue adopted by the affirmative votes of at least five (5) members of the Board at a duly assembled meeting. Each resolution of issue shall prescribe the purpose or purposes for which, and the terms and conditions on which, said revenue bonds are to be issued. (Amended by Stats. November 1988.)

Section 718 (5). Validity of Revenue Bonds Not Affected by Actions of City or Boards Relative to Project.
(a) The validity of the authorization and issuance of any revenue bonds by the Board shall not be dependent on or affected in any way by:
(i) Proceedings taken by the City or the Board for the acquisition, construction or completion of any project or any part thereof;
(ii) Any contracts made in connection with the acquisition, construction, or completion of any project; or
(iii) The failure to complete any project for which bonds are authorized to be issued. (Amended by: Stats. November 1988.)

Section 718 (6). Rights of Bondholders. Except as provided otherwise in any resolution of issue, the holder of any bond issued pursuant to this Section 718 may, by mandamus or other appropriate proceedings, require and compel the performance of any of the duties imposed upon the Board or the City or the Council or any official or employee of the Board or the City or assumed by any thereof in connection with the acquisition, construction, completion, operation, maintenance, repair, reconstruction or insurance of any project, or the collection, deposit, investment, application and disbursement of rates, fees and charges derived from the operation and use of any project and all other revenues, or in connection with the deposit, investment or disbursement of the proceeds received from the sale of the bonds under this Section. The enumeration of such rights and remedies does not, however, exclude the exercise or prosecution of any other rights or remedies available to the holders of bonds issued pursuant to this Section 718. (Amended by: Stats. November 1988.)

Section 718 (7). Section Confers Complete Authority. The provisions of this Section constitute full and complete authority for the issuance of revenue bonds as herein provided by the Board and no other procedure, or proceedings,

Case 3:07-cv-06411-CRB   Document 28-2   Filed 05/29/2008   Page 20 of 32

consents, approvals, orders or permission from the Council or any municipal officer or board of the City of Oakland, shall be required for the acquisition, construction or completion of any project, or the issuance of any revenue bonds under this Section 718 except as specifically provided in this Section 718. The powers and authorities conferred by this Section are in addition to and supplemental to all other powers and authorities conferred upon the Board. (Amended by: Stats. November 1988.)

Section 719. Moneys on Hand. All moneys in the Harbor Maintenance and Improvement Fund at the time of the adoption of this Charter and all other revenues and funds in the possession of the City set aside for port purposes, shall immediately be under the jurisdiction and control of the Board. (Amended by: Stats. November 1988.)

Section 720. Duties of Treasurer. All moneys under the control of the Board shall be immediately paid over to the Treasurer of the City of Oakland, who shall have the care and custody of said funds, and shall keep separate accounts thereof, and pay out the same, as provided in this Charter. (Amended by: Stats. November 1988.)

Section 721. Revolving Fund. The Board shall have authority to set up by ordinance a sufficient contingent or revolving fund from which the Executive Director shall be entitled to draw warrants directly upon the Treasurer for the prompt payment of transient laborers, and the Treasurer shall upon presentation of same, pay such warrants. Statements of such payments shall be filed with the Board at its regular meetings and shall be approved by the Board and endorsed by the President and Secretary thereof, and audited as in the case of ordinary claims. (Amended by: Stats. November 1988.)

Section 722. Additional Powers. The City Council, subject to the approval of the Board, may by ordinance confer upon and delegate to the Board, from time to time, such additional powers and duties which may be vested in it, and which it may deem necessary or convenient to carry out the general purposes of such Board. (Amended by: Stats. November 1988.)

Section 723. Liberal Construction. If any section, clause, word, or provision of this Article shall be held unconstitutional, the other sections, clauses, words, or provisions of this Article shall not be affected thereby. All the provisions of this Article shall be liberally construed. (Amended by: Stats. November 1988.)

Section 724. The provisions of this Article shall supersede and control all other provisions of the Charter in conflict therewith. To all other extent, the powers, duties, and functions heretofore vested in the Council, or any of the officials, boards, or departments of the City, shall be unimpaired. (Amended by: Stats. November 1988.)

Section 725. Port Area. The "Port Area" under the exclusive jurisdiction of the Board of Port Commissioners shall be the same area that existed immediately prior to the adoption of this Section, as it has been defined by Charter and by ordinance, and as it may hereafter be altered by Council ordinance in accordance with and upon the recommendation of the Board, or by amendment of this Charter. (Amended by: Stats. November 1988.)

Section 726. Without denial or disparagement of other powers now held by or that may hereafter be given to the City of Oakland or its legislative bodies under or by the Constitution or the laws of the State of California, the City Council and Board of Port Commissioners are hereby authorized and empowered to grant and convey all or any portion of or interest in the tidelands and submerged lands located in the Middle Harbor area of the City, lying between the Estuary of San Antonio and Seventh Street, and westward of Bay Street extended southerly, to the United States of America for public and governmental (including military or naval) purposes, subject to such terms, conditions, and reservations, if any, as the Council and Board shall deem proper. No ordinance or other measure passed in respect to any such grant shall be subject to the referendum provisions of this Charter. All proceedings heretofore taken to accomplish such a grant are hereby ratified, confirmed and approved, and the completion thereof and making of such grant is hereby authorized. (Amended by: Stats. November 1988.)

Section 727. Land Use and Development. The Board shall develop and use property within the Port Area for any purpose in conformity with the General Plan of the City. Any variation therefrom shall have the concurrence of the

appropriate City board or commission; provided, that the Board may appeal to the Council for final determination of adverse decisions of such board or commission, in accordance with uniform procedures established by the Council. (Amended by: Stats. November 1988.)

Section 728. Living Wage and Labor Standards at Port-Assisted Businesses.
(1) Scope and Definitions. The following definitions shall apply throughout this Section:
(A) "Port" means the Port of Oakland.
(B) "Port-Assisted Business" or "PAB" means (1) any person involved in a Port Aviation or Port Maritime Business receiving in excess of $50,000 worth of financial assistance from the Port, or (2) any Port Contractor involved in a Port Aviation or Port Maritime Business if the person employs more than 20 persons per pay period, unless in the prior 12 pay periods the person has not had more than 20 such employees and will not have more than 20 persons in the next 12 pay periods. A PAB shall be deemed to employ more than 20 persons if it is part of an 'enterprise' as defined under the Fair Labor Standards Act employing more than 20 persons. "Port Contractor" means any person party to a Port Contract as herein defined.
(C) "Port Contract" means:
(1) Any service contract with the Port for work to be performed at the Port under which the Port is expected to pay more than $50,000 over the term of the contract;
(2) Any contract, lease or license from the Port involving payments to the Port expected to exceed $50,000 either (a) over the term of the contract, lease or license, or (b) during the next 5 years if the current term is less than 1 year but may be renewed or extended, either with or without amendment;
(3) Any subcontract, sublease, sublicense, management agreement or other transfer or assignment of any right, title or interest received from the Port pursuant to any of the foregoing contracts, leases or licenses.
A contract, lease or license with the Port or any agreement derived therefrom shall not be deemed a Port Contract unless entered into after enactment of this Section, or amended after enactment of this Section to benefit in any way the party dealing with the Port.
(D) "Employee" means any individual employed by a PAB in Port related employment.
(E) "Person" includes any natural person, corporation, partnership, limited liability company, joint venture, sole proprietorship, association, trust or any other entity.
(F) "Valid collective bargaining agreement" as used herein means a collective bargaining agreement entered into between the person and a labor organization lawfully serving as the exclusive collective bargaining representative for such person's employees.
(G) "Port Aviation or Port Maritime business" means any business that principally provides services related to maritime or aviation business related services or whose business is located in the maritime or aviation division areas as defined by the Port.
(2) Exemptions from Coverage. In addition to the above exemption for workforces of fewer than 20 workers, the following persons shall also be exempt from coverage under this Section:
(A) An Employee who is (1) under twenty-one (21) years of age and (2) employed by a nonprofit entity for after-school or summer employment or for training for a period not longer than ninety (90) days, shall be exempt.
(B) An Employee who spends less than 25 percent of his work time on Port-related employment.
(C) A person who employs not more than 20 employees per pay period.
(3) Payment of Minimum Compensation to Employees. Port-Assisted Businesses shall provide compensation to each Employee of at least the following:
(A) Minimum Compensation. The minimum compensation shall be wages and health benefits totaling at least the rate of the living wage ordinance of the City of Oakland.
(B) Credit for Health Benefits. The PAB shall receive a credit against the minimum wage required by this Section for health benefits in the amount provided by and in accordance with the living wage ordinance of the City of Oakland.
(4) Notifying Employees of their Potential Right to the Federal Earned Income Credit. Each PAB shall inform each Employee who makes less than twelve dollars ($12.00) per hour of his or her possible right to the federal Earned Income Credit ("EIC") under Section 2 of the Internal Revenue Code of 1954, 26 U.S.C. §32, and shall make available the forms required to secure advance EIC payments from the business. These forms shall be provided to the eligible Employees in English (and other languages spoken by a significant number of such Employees) within

thirty (30) days of employment under this Section and as required by the Internal Revenue Code.

(5) Preventing Displacement of Workers. Each PAB, which is to replace a prior PAB shall offer employment to the Service Employees of the prior PAB, if, these Employees worked for the prior PAB for at least 90 calendar days. Such Employees may be not be terminated by the new PAB during the first 90 workdays except for just cause. The new PAB may operate at lower staffing levels than its predecessor but in such event, shall place the prior Employees on a preferential reinstatement list based on seniority. For purposes of this Section, a PAB "replaces" another if it (1) assumes all or part of the lease, contract or subcontract of a prior employer or obtains a new lease, contract, or sublease, and (2) offers employment which Employees of the prior PAB can perform. In the case of a replacement connected to the new PAB relocating from another location, in staffing decisions the new PAB may recognize seniority from its prior locations in addition to the seniority of the prior PAB's workforce. "Service Employees" means all employees except manager, supervisors, professionals, paraprofessionals, confidential and office employees.

(6) Waiver.

(A) A PAB who contends it is unable to pay all or part of the living wage must provide a detailed explanation in writing to the Port Executive Director who may recommend a waver to the Port board. The explanation must set for the reasons for its inability to comply, including a complete cost accounting for the proposed work to be performed with the financial assistance sought, including wages and benefits to be paid all employees, as well as an itemization of the wage and benefits paid to the five highest paid individuals employed by the PAB. The PAB must also demonstrate that the waiver will further the public interests in creating training positions which will enable employees to advance into permanent living wage jobs or better and will not be used to replace or displace existing positions or employees or to lower the wages of current employees.

(B) The Port Board will grant a waiver only upon a finding and determination that the PAB has demonstrated the necessary economic hardship and that waiver will further the public interests in providing training positions which will enable employees to advance into permanent living wage jobs or better. However, no waiver will be granted if the effect of the waiver is to replace or displace existing positions or employees or to lower the wages of current employees.

(C) Such waivers are disfavored, and will be granted only where the balance of competing interests weighs clearly in favor of granting the waiver. If waivers are to be granted, partial waivers are favored over blanket waivers. Moreover, any waiver shall be granted for no more than one year. At the end of the year the PAB may reapply for a new waiver which may be granted subject to the same criteria for granting the initial waiver.

(D) Any party who objects to the grant of a waiver by the Port Board may appeal such decision to the City/Port Liaison Committee, who may reject such waiver.

(7) Retaliation and Discrimination Barred; No Waiver of Rights.

(A) A PAB shall not discharge, reduce the compensation of or otherwise discriminate against any person for making a complaint to the Port, participating in any of its proceedings, using any civil remedies to enforce his or her rights, or otherwise asserting his or her rights under this Section.

(B) Any waiver by an individual of any of the provisions of this Section shall be deemed contrary to public policy and shall be void and unenforceable, except that Employees shall not be barred from entering into a written valid collective bargaining agreement waiving a provision of this Section if such waiver is set forth in clear and unambiguous terms. Any request to an individual by a PAB to waive his or her rights under this Section shall constitute a violation of this Section.

(8) Enforcement.

(A) Each PAB shall maintain for each person in Port-related employment a record of his or her name, pay rate and, if the PAB claims credit for health benefits, the sums paid by the PAB for the Employee's health benefits. The PAB shall submit a copy of such records to the Port at least by March 31st, June 30th, September 30th and December 3lst of each year, unless the PAB has employed less than 20 persons during the preceding quarter in which case the PAB need only submit a copy of such records every December 31st. Failure to provide a copy of such records within five days of the due date will result in a penalty of five hundred dollars ($500.00) per day. Each PAB shall maintain a record of the name, address, job classification, hours worked, and pay and health benefits received of each person employed, and shall preserve them for at least three years.

(B) If a PAB provides health benefits to persons in Port-related employment but does not pay for them on a per-hour basis, then upon the PAB's request, the amount of the hourly credit against its wage obligation shall be

the Port's reasonable estimate of the PAB's average hourly cost to provide health benefits to its Employees in Port-related employment. The PAB shall support its request with such documentation as is reasonably requested by the Port or any interested party, including labor organizations in such industry.

(C) Each PAB shall give written notification to each current Employee, and to each new Employee at time of hire, of his or her rights under this Section. The notification shall be in the form provided by the Port in English, Spanish and other languages spoken by a significant number of the Employees, and shall also be posted prominently in areas at the work site where it will be seen by all Employees.

(D) Each PAB shall permit access to work sites and relevant payroll records for authorized Port representatives for the purpose of monitoring compliance with this Section, investigating employee complaints of noncompliance and evaluating the operation and effects of this Section, including the production for inspection and copying of its payroll records for any or all persons employed by the PAB. Each PAB shall permit a representative of the labor organizations in its industry to have access to its workforce at the Port during non-working time and in non-work areas for the purpose of ensuring compliance with this Section.

(E) Notwithstanding any provision in Article VI of this Charter to the contrary, the City Administrator may develop rules and regulations for the Port's activities in (1) Port review of contract documents to ensure that relevant language and information are included in the Port's RFP's, agreements and other relevant documents, (2) Port monitoring of the operations of the contractors, subcontractors and financial assistance recipients to insure compliance including the review, investigation and resolution of specific concerns or complaints about the employment practices of a PAB relative to this section, and (3) provision by the Port of notice and hearing as to alleged violations of this section.

(9) Private Rights of Action.

(A) Any person claiming a violation of this Section may bring an action against the PAB in the Municipal Court or Superior Court of the State of California, as appropriate, to enforce the provisions of this Section and shall be entitled to all remedies available to remedy any violation of this Section, including but not limited to back pay, reinstatement or injunctive relief. Violations of this Section are declared to irreparably harm the public and covered employees generally.

(B) Any employee proving a violation of this Section shall recover from the PAB treble his or her lost normal daily compensation and fringe benefits, together with interest thereon, and any consequential damages suffered by the employee.

(C) The Court shall award reasonable attorney's fees, witness fees and costs to any plaintiff who prevails in an action to enforce this Section.

(D) No criminal penalties shall attach for any violation of this Section, nor shall this Section give rise to any cause of action for damages against the Port or the City.

(E) No remedy set forth in this Section is intended to be exclusive or a prerequisite for asserting a claim for relief to enforce any rights hereunder in a court of law. This Section shall not be construed to limit an employee's right to bring a common law cause of action for wrongful termination.

(10) Severability. If any provision or application of this Section is declared illegal, invalid or inoperative, in whole or in part, by any court of competent jurisdiction, the remaining provisions and portions thereof and applications not declared illegal, invalid or inoperative shall remain in full force or effect. The courts are hereby authorized to reform the provisions of this Section in order to preserve the maximum permissible effect of each subsection herein. Nothing herein may be construed to impair any contractual obligations of the Port. This Section shall not be applied to the extent it will cause the loss of any federal or state funding of Port activities. (Amended by: Stats. March 2002 and March 2004)

## ARTICLE VIII FISCAL ADMINISTRATION

Section 800. Fiscal Year. The fiscal year for the City shall commence on the first day of July of each year. (Amended by: Stats. November 1988.)

Section 801. Budget. Each department, office and agency of the City shall provide in the form and at the time directed by the Mayor and City Administrator all information required by them to develop a budget conforming to

modern budget practices and procedures as well as specific information which may be prescribed by the Council. Under the direction of the Mayor and Council, the City Administrator shall prepare budget recommendations for the next succeeding fiscal year which the Mayor shall present to the Council, in a form and manner and at a time as the Council may prescribe by resolution. Following public budget hearings, the Council shall adopt by resolution a budget of proposed expenditures and appropriations necessary therefor for the ensuing year, failing which the appropriations for current operations of the last fiscal year shall be deemed effective until the new budget and appropriation measures are adopted. (Amended by: Stats. November 1988 and March 2004.)

Section 802. Levy of Property Tax. Not later than the date set by state law for this purpose, the Council shall by resolution fix the rate of property tax to be levied and levy the tax upon all taxable property in the City. Such rate shall be adequate to meet all obligations of the City for the fiscal year, taking into account estimated revenue from all other sources. Should the Council fail to fix the rate and levy taxes within the time prescribed, the rate for the next preceding fiscal year shall thereupon be automatically effective, and a tax at such rate shall be levied upon all taxable property in the City for the current fiscal year. (Amended by: Stats. November 1988.)

Section 803. Cash Pool Operations. Municipal obligations may be financed by cash pool operations and utilization of a check system (as contrasted with a warrant system). Except for those funds restricted by bond indentures, state or federal law, other sections of this Charter or specific conditions of the legislation creating them, temporary transfers between funds are permitted. (Amended by: Stats. November 1988.)

Section 804. Funds. The Council shall create, reduce or eliminate such Funds as are required for proper accounting and fiscal management, or required as a condition of receiving funds from any other government, or to fulfill any bonded or other contractual obligation of the City. (Amended by: Stats. November 1988.)

Section 805. Accounting System. The City Administrator shall establish and maintain a system of financial procedures, accounts and controls for the City government and each of its departments, offices and agencies which shall conform to generally accepted principles of accounting which shall be adequate to account for all monies on hand and for all income and expenditures in such detail as will provide complete and informative data concerning the financial affairs of the City and in such manner as the Council may prescribe and as will be readily susceptible to audit and review. (Amended by: Stats. November 1988 and March 2004.)

Section 806. Receipts and Expenditures. All monies received by the City shall be deposited in the City Treasury, and no monies shall be disbursed from the treasury without the approval of the City Administrator or of another officer duly authorized by him/her. No expenditure of City funds shall be made except for the purposes and in the manner specified by an appropriation of the Council; nor shall any disbursement be made unless obligations are properly supported by accounting evidence, sufficient money is available in the City Treasury and there is an adequate unencumbered appropriation balance in the proper account classification. The City Administrator or other officer authorized by him/her to make disbursements shall be represented by the City Attorney in all legal matters in connection therewith, except as provided otherwise in Section 401. (Amended by: Stats. November 1988 and March 2004.)

Section 807. Goods and Services. The City Administrator or an officer authorized by him/her shall purchase or contract for equipment, materials, supplies and public works required by the City in the manner prescribed by ordinance, except as otherwise provided herein. (Amended by: Stats. November 1988 and March 2004.)

Section 808. Bids and Awards.
(a) The Council shall establish by ordinance the conditions and procedures for any purchase or contract, including advertising and bidding requirements, and may provide that all bids may be rejected. The ordinance may provide that under specified conditions, which the Council must find and determine exist in each applicable instance, advertising and bidding may be dispensed with.
(b) Every two years, the City shall conduct a race and gender disparity evaluation to determine if the City has been an active or passive participant in actual, identifiable discrimination within its relevant market place. If such

Case 3:07-cv-06411-CRB   Document 28-2   Filed 05/29/2008   Page 25 of 32

disparity evaluation evidences such discrimination, the City Council, in order to remedy the discrimination, shall establish a narrowly tailored race and/or gender business participation program, as substantiated by the disparity evaluation, for the bidding and awarding of purchases and contracts. Any such program shall continue only until the discrimination has been remedied. The City Administrator or an officer authorized by him or her shall require all awardees and bidders to comply with the established program. (Amended by: Stats. November 1988, March 1996 and March 2004.)

Section 809. Annual Audit. The Council shall engage during the first month of each fiscal year an independent certified public accountant who shall examine and report to the Council on the annual financial statement of the City. He shall have free access to the books, records, inventories and reports of all officers and employees who receive, handle, or disburse public funds, and of such other officers, employees, or departments as the Council may direct. He shall submit his audit as soon as practicable after the closing of the books for the fiscal year for which he is engaged. Copies of such audit reports shall be filed with the Council, and shall be available for public inspection and review. (Amended by: Stats. November 1988 and Stats. November 2000.)

Section 810. Deposit and Investment. The City Administrator shall arrange for the deposit in the City Treasury or in designated banks of all funds collected by any department or agency of the City, according to a schedule prescribed by him/her. After taking into account the amounts required to meet the current and pending requirements of the City, the City Administrator may arrange for the term deposit or investment in securities authorized by law of any balances available for such purpose and the yield therefrom shall be credited as revenue to the general fund unless otherwise provided by law or directed by the Council. (Amended by: Stats. November 1988 and March 2004.)

Section 811. Official Bonds. The Council shall determine by ordinance which officers and employees shall be subject to group or individual bonds to insure the faithful performance of official duties, shall fix the amount of such bonds and shall provide payment of the premium of such bonds by the City. (Amended by: Stats. November 1988.)

Section 812. Revenue Bonds. The Council may issue revenue bonds for any lawful purpose in such manner and upon such terms and conditions as it may fix and establish by the provisions of a procedural ordinance; provided, however, that in the procedure for the issuance of any such bonds for the acquisition, construction or establishment of any gas, electric or telephone system, the general laws of the State of California in force at the time such proceedings are taken shall be observed and followed. (Amended by: Stats. November 1988.)

## ARTICLE IX PERSONNEL ADMINISTRATION

Section 900. Personnel Policy.
(a) It is the policy of the City that there shall be a comprehensive personnel system based on merit which considers diversity based upon the relevant labor pool as set forth in section 900(b). Such system shall be continued and maintained for the purpose of providing an equitable and uniform procedure for dealing with personnel matters; to serve the mutual interests of the people, the City as an employer and its employees through accepted modern concepts and practices of public personnel administration; to attract to municipal service the best and most competent person available; to assure that appointments will be based on merit and fitness as ascertained by practical competitive examination and by records of achievement; and to provide the employees security of tenure, with advancement or promotion within the service, where practicable, from among employees having appropriate qualifications, free of discrimination, subject to their adherence to established standards of performance and conduct, all as more particularly hereinafter set forth in this article.
(b) The City shall study its workforce in comparison to the relevant labor pool to determine if there are manifest racial or gender imbalances in traditionally segregated job classifications. If the study demonstrates such manifest imbalances, the City shall adopt a remedial voluntary affirmative action plan which shall be periodically updated and in effect only until the imbalances are eliminated. (Amended by: Stats. November 1988 and March 1996.)

Section 901. Enforcement and Administration. The provisions of this article, and of the ordinances and rules adopted to give effect thereto, shall be enforced by a Civil Service Board. The Board shall be constituted and appointed as provided in Article VI. The Board shall be responsible for the general supervision of the personnel system, without impairment of the responsibility and duty of the City Administrator, department heads and other supervisory personnel to exercise the administrative discretion vested in them by this Charter, or by ordinance. (Amended by: Stats. November 1988 and March 2004.)

Section 902. The Competitive Service. The Council may establish departments, divisions, offices and positions of employment by ordinance, and may change or abolish the same and prescribe their powers, functions and duties. The Council may by resolution provide for temporary employment of services when required. The competitive Civil Service shall include all offices and employments in the City government except:
(a) Offices required by this Charter to be filled by election or to be appointed by the Mayor and City Council.
(b) One secretary and all professional and administrative assistants in the office of the City Administrator the Mayor's secretary and an assistant and such other staff as authorized by Council; one secretary and one assistant to the City Attorney and the Auditor respectively; and the heads of such other departments and an assistant to each as may be provided for by ordinance. The City Administrator, the Mayor, the City Attorney, and the Auditor shall respectively appoint such exempt personnel.
(c) Department heads, one secretary to the executive director, the secretary of the board, commercial representatives and freight and cargo handlers and checkers employed by the Port Department; also such others engaged in the handling of ships and shipping as are found by both the Board of Port Commissioners and the action of the Civil Service Board as provided for pursuant to Article VI to hold positions peculiar to the operations of the Port as a commercial enterprise.
(d) Part-time employees who are regularly employed for less than one-half the established working hours throughout the year; or those who are employed in any seasonal employment for not more than 120 days in any consecutive 12 months.
(e) Individuals or organizations engaged by contract after a finding by the Council or the Board of Port Commissioners, as the jurisdiction may be, that the service is of a professional, scientific or technical nature and is temporary in nature, or after finding by vote of two-thirds of the members of the Council or said Board that the performance of the service by contract, regardless of nature or term, is in the public interest because of economy or better performance; provided, that no such contract for service shall result in the loss of employment or salary by any person having permanent status in the competitive service.
(f) Such additional positions as may be excepted upon the recommendation of the Council, approved by the Civil Service Board as provided for pursuant to Article VI. (Amended by: Stats. November 1988 and March 2004.)

Section 903. Provisional Appointments. When there is no appropriate eligible list, provisional appointments to positions in the competitive civil service may be made pending the creation of such lists, but such provisional employment may not extend beyond the creation of the list nor in any event may such employment be renewed or extended beyond 120 days. (Amended by: Stats. November 1988.)

Section 904. Personnel Ordinance. The Council shall by ordinance provide a modern system of personnel administration for the competitive civil service. (Amended by: Stats. November 1988.)

Section 905. Continuation. Pending adoption of the ordinance required in Section 904, the provisions of Article IX, as the same appeared in the Charter immediately prior to the adoption of this section, shall continue in full force and effect except as the same may hereafter be changed by amendment thereof in the manner provided by law for the amendment of charter provisions. Said provisions of Article IX shall cease to have any force or effect immediately upon the adoption of the ordinance required in Section 904. The rules of the Civil Service Board shall remain effective until modified as authorized by ordinance pursuant to Article VI. (Amended by: Stats. November 1988.)

Section 906. (Repealed by: Stats. November 2000.)

Section 907. Nepotism. The Mayor or City Council shall not appoint as an employee or officer, to receive any compensation from the City, any person who is a relative by blood or marriage within the third degree of the Mayor or anyone or more of the members of the Council, nor shall the City Administrator or any other appointing authority appoint to any such position any relative of his or of the Mayor or any member of the Council within such degree of kinship. (Amended by: Stats. November 1988 and March 2004.)

Section 908. Social Security. Provisions for an employee retirement system shall not be construed to prevent the City and its employees from participating in any state or national social security system to the extent permitted by law for public employees. (Amended by: Stats. November 1988.)

Section 909. Authority to Join Pension System. Notwithstanding the provisions of Section 1209 the City, by and through its Council, may join or arrange for reciprocity of membership in, or continue as a contracting agency in, any retirement or pension system or systems existing or hereafter created under state or federal law to or in which municipalities and municipal officers or employees are eligible, either for all such officers and employees, or for less than all on the basis of a reasonable classification, provided that no employee or officer or classification thereof shall be unreasonably omitted from all systems referred to in this section or in Section 908 of this Charter. (Amended by: Stats. November 1988.)

Section 910. Arbitration for Uniformed Members of the Police and Fire Departments.
(a) It is hereby declared to be the policy of the voters of the City to endeavor to establish and maintain, without labor strife and dissension, wages, hours, and other terms and conditions of employment for the uniformed members of the Police and Fire Departments which are fair and comparable to similar private and public employment. To such purpose, the voters of the City hereby recognize the efficiency of and adopt the principle of binding arbitration as an equitable alternative means to arrive at a fair resolution of terms of wages, hours, and other terms and conditions of employment for such employees when the parties have been unable to resolve these questions through negotiations.
(b) Pursuant to the public policy hereinabove declared, the City or the recognized employee organization for the uniformed members of the Police and Fire Departments may, as the result of an impasse after meeting and conferring in good faith on matters within the scope of representation as required by applicable State law, refer any such matters which are unresolved to binding arbitration under the provisions of this Section; except that the Charter provisions concerning the Police and Fire Retirement System and such other provisions of this Charter which specifically govern wages, hours and other terms and conditions of employment of uniformed members of the Police and Fire Departments shall not be subject to change by arbitration. In any such arbitration, the arbitrator is directed to take into consideration the City's purpose and policy to create and maintain wages, hours and other terms and conditions of employment which are fair and comparable to similar private and public employment and which are responsive to changing conditions and changing costs and standards of living. The arbitrator shall also consider: the interest and welfare of the public; the availability and sources of funds to defray the cost of any changes in wages; hours and conditions of employment; and all existing benefits and provisions relating to wages, hours and terms and conditions of employment of the uniformed members of the Police and Fire Departments, whether contained in this Charter or elsewhere.
(c) Any unresolved dispute or controversy arising under the provisions of this Section, or any unresolved dispute or controversy pertaining to the interpretation or application of any negotiated agreement covering uniformed members of the Police and Fire Departments shall be submitted to an impartial arbitrator. Representatives designated by the City and representatives of the recognized employee organization affected by the dispute or controversy shall select the arbitrator. In the event that said parties cannot agree upon the selection of the arbitrator within five days from the date of any impasse, then the California State Conciliation Service shall be requested to nominate five (5) persons, all of whom shall be qualified and experienced as labor arbitrators. If the representatives of the recognized employee organization and the City cannot agree on one of the five to act as arbitrator, they shall strike names from the list of said nominees alternately until the name of one nominee remains who shall thereupon become the arbitrator. The first party to strike a name from the list shall be chosen by lot. Every effort shall be made to secure an award from the impartial arbitrator within thirty (30) calendar days after submission of all issues

to him.

(d) The arbitration proceedings herein provided shall be governed by Sections 1280, et seq., of the California Code of Civil Procedure. The arbitrator's award shall be submitted in writing and shall be final and binding on all parties. The City and the affected employee organization shall take whatever action is necessary to carry out and effectuate the award. The expenses of arbitration, including the fee for the arbitrator's services, shall be borne equally by parties. All other expenses which the parties may incur individually are to be borne by the party incurring such expenses.

(e) Nothing herein shall be construed to prevent the parties from submitting controversies or disputes to mediation, fact-finding or other reasonable method to finally resolve the dispute should the City and the recognized employee organization in the controversy or dispute so agree. An impasse may be declared by either the City or the recognized employee organization in the event the parties fail to reach an agreement on matters within the scope of representation after meeting and conferring in good faith as required by applicable State law, or after other mutually agreed-upon settlement methods fail to result in agreement between the parties. (Added by: Stats. 1973. Amended by: Stats. November 1988.)

## ARTICLE X FRANCHISES, LICENSES, PERMITS, LEASES AND SALES

Section 1000. Franchises, Licenses, Permits. The Council shall have authority to grant or issue franchises, licenses and permits for the transaction of business or the providing of services, or for the use of public streets or other public places, and to provide by ordinance the procedure for the granting or issuing thereof, the taxes, charges, fees or other compensation to be paid therefor and the penalties for the violation thereof. (Amended by: Stats. November 1988.)

Section 1001. Leases, Sales. The Council shall have authority to lease or sell real and personal property owned or controlled by the City in accordance with such uniform procedure as it shall adopt by ordinance, provided, however, that no lease of real property shall be for a term in excess of sixty-six years. (Amended by: Stats. November 1988.)

Section 1002. Right to Acquire. No franchise grant shall be construed to impair or affect the right of the City, acting pursuant to law, to acquire the property of the grantee either by purchase or through the exercise of the right of eminent domain. (Amended by: Stats. November 1988.)

## ARTICLE XI ELECTIONS

Section 1100. Nominating Election. Municipal Nominating Elections for the nomination of officers and for such other purposes as the Council may prescribe shall be held in the City on the first Tuesday after the first Monday in June in each even-numbered year. In order to consolidate Municipal Nominating Elections with Statewide Primary Elections, the Council may by ordinance provide for a date for a Municipal Nominating Election which conforms to the date of a Statewide Primary Election. (Amended by: Stats. November 1994.)

Section 1101. General Municipal Elections. General Municipal Elections for the election of officers and for such other purposes as the Council may prescribe shall be held in the City on the first Tuesday after the first Monday in November in each even-numbered year. In order to consolidate General Municipal Elections with Statewide General Elections, the Council may by ordinance provide for a date for a General Municipal Election which conforms to the date of a Statewide General Election. (Amended by: Stats. November 1994.)

Section 1102. Special Municipal Elections. All other municipal elections that may be held by the authority of this Charter or of any law shall be known as Special Municipal Elections. (Amended by: Stats. November 1988.)

Section 1103. Election Procedure. Except as may be otherwise provided by this charter, the mode, manner, form and procedure for nominations, qualifications, petitions, filing — including fees therefor and amounts thereof — and elections, for elective office, may be provided by ordinance. Except as may be otherwise provided by ordinance

or by this charter, declarations of candidacy, nominations for election, all elections and all procedures relating thereto shall be in accordance with the applicable provisions of state law. (Amended by: Stats. November 1988 and February 2007.)

Section 1104. Initiative, Referendum and Recall. The People of the City reserve to themselves the powers of initiative and referendum and the recall of elected officials, to be exercised in the manner prescribed by general law of the State. (Amended by: Stats. November 1988.)

Section 1105. Ranked Choice Voting. Elections for all city offices, including but not limited to Mayor, Councilmember, City Attorney, City Auditor, and School Director, shall be conducted using ranked choice voting, known sometimes as "instant runoff voting."
(a) Definitions. "Ranked choice voting" shall mean an election system in which voters rank the candidates for office in order of preference, and the ballots are counted in rounds that, in the case of a single-winner election, simulate a series of runoffs until one candidate receives a majority of votes. In each round of counting: (1) "continuing ballot" shall mean a ballot that counts towards some candidate; (2) "continuing candidate" shall mean a candidate that has not been eliminated; and (3) "majority of votes" shall mean more than fifty percent of the votes coming from continuing ballots.
(b) General Provisions. Ranked choice voting elections for single-winner city offices shall be conducted according to the procedures in this section. The City shall conduct a voter education campaign to familiarize voters with ranked choice voting. The use of ranked choice voting shall commence with the 2008 General Municipal Election.
(c) Ballot. The ranked choice voting ballot shall allow voters to rank as many choices as there are candidates. The ballot shall not interfere with a voter's ability to rank a write-in candidate.
(d) Tabulation. The ballots shall be counted in rounds: (1) in the first round, every ballot shall count as a vote towards the first choice candidate. (2) After every round, if any candidate receives a majority of votes from the continuing ballots, that candidate shall be declared the winner, If no candidate receives a majority, the candidate receiving the smallest number of votes shall be eliminated, and every ballot counting towards that candidate shall be advanced to the next-ranked continuing candidate. All the ballots shall be counted again in a new round.
(e) Ties. In the event that two or more candidates tie for the smallest number of votes, the candidate to eliminate shall be chosen by lot.
(f) Elimination of more than one candidate. During the elimination stage of any round, in the event that any candidate has more votes than the combined vote total of all candidates with fewer votes. all the candidates with fewer votes shall be eliminated simultaneously, and those ballots advanced to the next ranked continuing candidate.
(g) Skipped rankings. In the first or any round, in the event that any ballot reaches a ranking with no candidate indicated, that ballot shall immediately be advanced to the next ranking.
(h) Undervotes, Overvotes, and Exhausted Ballots. After each round, any ballot that is not continuing is an undervote, overvote, or exhausted ballot, as follows: Any ballot that has no candidates indicated at any ranking shall be declared an "undervote." In the event that any ballot reaches a ranking with more than one candidate indicated, that ballot shall immediately be declared an "overvote." In the event that any ballot cannot be advanced because no further candidates are ranked on that ballot, that ballot shall immediately be declared "exhausted" Any ballot that has been declared an undervote, overvote. or exhausted shall remain so and shall not count towards any candidate in that round or in subsequent rounds.
(i) Reports. Summary, ballot image, and comprehensive reports shall be made available after each ranked choice voting election, as follows: (1) The "summary report" for a race shall mean a report that lists the candidate vote totals in each round, along with the cumulative numbers of undervotes, overvotes, and exhausted ballots in each round. (2) The "ballot image report" for a race shall mean a report that lists, for each ballot, the candidate or candidates indicated at each ranking, the precinct of the ballot, and whether the ballot was cast absentee. In the report, the ballots shall be listed in an order that does not permit the order in which they were cast in each precinct to be reconstructed. (3) The "comprehensive report" for a race shall mean a report that breaks the numbers in the summary report down by precinct. The report shall list for each round the number of ballots cast in each precinct (a) that count as votes for each candidate in that round, (b) that have been declared undervotes, (c) that have been declared overvotes up to that point, and (d) that have been declared exhausted up to that point. (4) Mode and manner of release. Preliminary versions of the summary report and ballot image report shall be made available as

soon as possible after the ballots have begun to be processed and counted. The summary report, ballot image report, comprehensive report, and preliminary versions of the summary report and ballot image report shall be made available to the public during the canvass via the internet and by other means. The ballot image report and preliminary versions of the ballot image report shall be made available in a plain text electronic format.

(j) Manual Tally. Prior to the selection of precincts for the public one percent manual tally, as provided by State law, a report shall be made available to the public that lists, for the ballots subject to the manual tally, the number of those ballots in each precinct that counted in each round as undervotes, overvotes, exhausted ballots, and as votes for each candidate. The public manual tally shall check those vote totals in each of the randomly selected precincts.

(k) Changes to Procedures. For the purposes of this subsection: "voting equipment" shall mean all ballots and/or voting devices, vote tabulating systems and/or similar or related systems to be used in the conduct of the City's election, including but not limited to paper ballot systems, optical scan systems, and touchscreen systems.

(1) Number of rankings. In the event that the voting equipment cannot feasibly accommodate a number of rankings on the ballot equal to the number of candidates, the City Clerk may limit the number of choices a voter may rank to the maximum number allowed by the equipment. This limit shall never he less than three.

(2) Voting Equipment. If the voting equipment cannot feasibly accommodate all of the procedures in subsections (e)-(j) above, the City Clerk may make changes to those procedures provided that ranked choice voting shall still be used and the smallest feasible number of changes made until such time as the voting equipment can accommodate those procedures in their entirety.

(3) State Guidelines. If the State of California adopts guidelines for the conduct of ranked choice voting elections and the voting equipment used to conduct the City's election can accommodate the State's guidelines, the City Clerk shall have the option of adopting those guidelines, in whole or in part, in lieu of the ranked choice voting procedures in this section.

(4) First Choice Tally. The City Clerk may authorize the following change to make ranked choice voting on voting equipment feasible: before counting the ballots in rounds, the first ranking on every ballot shall be tallied, with the exception of overvotes. If some candidate receives a majority of first rankings from all ballots cast, including undervotes and excluding overvotes, that candidate shall be declared the winner; and the ballots shall not he counted in rounds. Otherwise, the ballots shall be counted in rounds in accordance with this section.

(5) Election integrity. The City Clerk shall further have the authority to make any changes to these procedures necessary to preserve the secrecy of the ballot and ensure the integrity and smooth functioning of the election, provided that ranked choice voting shall still be used and the smallest number of changes made to achieve such purpose.

(l) Exception from Using Ranked Choice Voting. Notwithstanding any other provision of this Charter, the City shall use ranked choice voting once the Alameda County Registrar of Voters is able to conduct the election on behalf of the City in accordance with the requirements and procedures of this section, including any changes to such procedures made pursuant to subsection (k).

(m) Election Procedures if Ranked Choice Voting is Not Used:

(1) In the event that the City is unable to use ranked choice voting, the City shall hold Municipal Nominating Elections for the nomination of officers and for such other purposes as the Council may prescribe, which shall be held in the City on the first Tuesday after the first Monday in June in each even numbered year. In order to consolidate Municipal Nominating Elections with Statewide Primary Elections, the Council may by ordinance provide for a date for a Municipal Nominating Election which conforms to the date of a Statewide Primary Election. Any candidate receiving a majority of the vote cast for all candidates for that office at the Municipal Nominating Election shall be declared elected.

(2) If at any Municipal Nominating Election there is any office to which no person was elected, then the two candidates for such office receiving the highest number of votes for such office shall be the candidates, and the only candidates, for such office whose names shall be printed upon ballots to be issued at the second or General Municipal Election; provided that in, any event, all persons receiving a number of votes equal to the highest number of votes received by any candidate shall also be candidates at such second election. The candidate receiving the highest number of votes cast for all candidates for that office at the second or General Municipal Election shall be declared elected. (Added by: Stats. February 2007.)

## ARTICLE XII GENERAL PROVISIONS

Section 1200. Conflict of Interest. No officer of the City may participate on behalf of the City in any transaction or activity in which he has a conflict of interest, as such conflict is defined by State Law. The penalty for violation of this section shall be as provided by State Law. (Amended by: Stats. November 1988.)

Section 1201. Incompatible Employment. Each officer and employee shall, during his hours of active duty, devote his whole time, attention and efforts to his office or employment, and he may not be required to perform any service except for the benefit of the City. No officer or employee of the City may engage in any employment, activity or enterprise which has been determined to be inconsistent, incompatible or in conflict with his duties or with the duties, functions and responsibilities of the department or other agency in which he is employed.
The City Administrator or the City Attorney, or the Auditor, as to personnel under their respective jurisdictions, shall declare the activities which will be considered inconsistent, incompatible or in conflict with, or inimical to, the duties of such personnel as City employees. In making this determination, consideration shall be given to employment, activity or enterprise which: (a) involves the use for private gain or advantage of City time, facilities, equipment and supplies, or the badge, uniform, prestige or influence of one's City office or employment; or (b) involves receipt by the officer or employee of any money or other consideration for the performance of any act required of him/her as a City officer or employee; or (c) involves the performance of an act in other than his capacity as City officer or employee which act may later be subject directly or indirectly, to control, inspection, review, audit or enforcement by him/her or by the agency in which he is employed. (Amended by: Stats. November 1988 and March 2004.)

Section 1202. Conflict in Office. The Mayor and members of the Council shall not hold any other municipal office or any other office or employment to receive compensation from the City; or be appointed or elected to any office created by the Council while he is a member thereof, until at least one year shall have expired after the expiration of the term for which he was elected. (Amended by: Stats. November 1988.)

Section 1203. Gifts and Trusts. The Council shall have the power to accept gifts and trusts in behalf of the City and to control, manage, dispose of and otherwise administer the same in accordance with their terms. (Amended by: Stats. November 1988.)

Section 1204. Title to Property. All real property acquired by the City shall be held in the name of "The City of Oakland." (Amended by: Stats. November 1988.)

Section 1205. Public Notice. Except as otherwise provided in this Charter or by general law, the Council shall, by ordinance applying to all agencies of the City, designate the time and conditions under which adequate public notice should be given, through publication or otherwise, of the pending consideration of ordinances, invitations to bid, and awards of contracts or leases, notices of intention to grant franchise, election proceedings and other matters requiring public notice in accordance with this Charter, any ordinance enacted pursuant thereto or general state law. Publication, if required, shall be in an official newspaper designated annually by the Council, which shall be a newspaper printed and published in the City of Oakland and which shall have a daily circulation within the City of at least 25,000. (Amended by: Stats. November 1988.)

Section 1206. Oath of Office. Every officer of the City, before entering upon his duties, shall take the following oath and file the same with the City Clerk: "I solemnly swear or affirm that I will support the constitution of the United States, the constitution of the State of California, and the Charter of the City of Oakland, and will truly and to the best of my abilities perform the duties of the office of ." (Amended by: Stats. November 1988.)

Section 1207. Oaths and Subpoenas. Every officer and every member of any Board provided for in this Charter shall, in all matters relevant to his office, have the power to administer oaths and affirmations and to issue subpoenas to compel the production of books, papers and documents and to take testimony on any matter pending

Case 3:07-cv-06411-CRB   Document 28-2   Filed 05/29/2008   Page 32 of 32

before him. If any person subpoenaed fails or refuses to appear or to produce required documents or to testify, said officer or the majority of the members of the board or commission may find him in contempt, and shall have power to take the proceedings in that behalf provided by the general law of the State. (Amended by: Stats. November 1988.)

Section 1208. Violation. The violation of any provision of the Charter shall be deemed a misdemeanor and be punishable upon conviction in the manner provided by State Law, unless otherwise expressly provided for in this Charter. (Amended by: Stats. November 1988 and Stats. November 2000.)

Section 1209. Previous Charter Provisions Continued. Section 91(e) added by Stats. Feb. 1959, Sections 97(f), 33(1) through 33(10), 92-1/2 through 96-3/4%, 100-1/2 through 104(c), 199(d), all the sections of Article XXVI and all the sections of Article XXVII, as the same appeared in the Charter immediately prior to the adoption of this section, are by this reference hereby continued in full force and effect, and ratified, by the adoption of this section as if the same were herein printed and set forth in full. Said sections shall be printed in the appendix to this revised Charter and shall be renumbered therein as sections of said appendix. All sections and articles of the said Charter, as the same existed immediately prior to the adoption of this section, other than the hereinabove specified sections and articles thereof which are ratified and continued in full force and effect by the adoption of this section, are hereby repealed by the adoption of this section. (Amended by: Stats. November 1988.)

Section 1210. Construction and Separability. If any provision of this Charter or the application thereof to any person or circumstance is held invalid, the remainder of this Charter and the application of such provisions to other persons or circumstances shall not be affected thereby. (Amended by: Stats. November 1988.)

Section 1211. Effective Date. This charter shall take effect upon the filing with the Secretary of State of the concurrent resolution of its approval by the State Legislature. (Amended by: Stats. November 1988.)

Section 1212. Gender References. All gender references in this Charter shall be considered neutral in form and context. (Amended by: Stats. November 1988.)

Section 1213. (Repealed by: Stats. March 2004)

<< previous | next >>