ANGELA L. PADILLA (CA STATE BAR NO. 154863)
SARAH C. MARRIOTT (CA STATE BAR NO. 241301)
ERIN H. REDING (CA STATE BAR NO. 252691)
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Telephone:   415-773-5700
Facsimile:   415-773-5759

JOHN A. RUSSO (CA STATE BAR NO. 129729)
VICKI LADEN (CA STATE BAR NO. 130147)
CITY OF OAKLAND
1 Frank Ogawa Plaza, 6th Floor
Oakland, CA 94612
Telephone:   510-238-4941
Facsimile:   510-238-6500

Attorneys for Defendant
CITY OF OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER B. HOYE, II,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CITY OF OAKLAND<br><br>　　　　Defendant. | CASE NO. C07-06411 CRB<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION** |

## I. INTRODUCTION

Plaintiff Walter Hoye ("Plaintiff") was arrested on May 13, 2008 outside the Family Planning Specialists Medical Group, for his April 29th violations of Oakland Municipal Code Chapter 8.50 (the "Ordinance"). The Ordinance safeguards citizens' safe and unimpeded access to reproductive health care services. Plaintiff now seeks a temporary restraining order and preliminary injunction prohibiting the City of Oakland from enforcing the Ordinance.

Plaintiff's motion should be denied because:

1. Procedurally, no operative complaint exists on which relief can be granted. To settle plaintiff's original lawsuit, Oakland amended the Ordinance on February 5, 2008. This amendment mooted plaintiff's facial challenge. Oakland also paid $5,000 in attorneys' fees and costs to plaintiff in exchange for a release related to the facial challenged raised in the original complaint. Plaintiff represented to the Court that, if any claims remained to be litigated, he would file an amended complaint. This he never did.

2. Even if plaintiff obtains leave of Court to file an amended complaint to challenge the Ordinance <u>as applied</u> to him, this challenge would fail under the United States Supreme Court's decision in *Hill v. Colorado*, 530 U.S. 703 (2000). Oakland modeled its Ordinance on the Colorado statute which the Supreme Court upheld as constitutional on multiple grounds in *Hill*. Under *Hill*, there can be no debate about the facial constitutionality of Oakland's Ordinance. Because plaintiff was arrested for violating an ordinance that is constitutional on its face, and it is undisputed that his arrest itself complied with the terms of that ordinance, plaintiff's motion should be denied outright.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On December 18, 2007, the Oakland City Council passed Ordinance No. 81022, "Access to Reproductive Health Care Facilities," a "Bubble Ordinance" that protects patients seeking reproductive health services and reproductive health clinic personnel from harassment, intimidation, or interference with their ability to access reproductive health care facilities. Laden Decl., ¶ 2.

On December 19, 2007, plaintiff filed a complaint alleging that the Ordinance was facially unconstitutional. *Id.*, ¶ 3. After a telephone conference with the Court, the City agreed to amend the Ordinance to obviate plaintiff's concerns. *Id.* On January 16, 2008, plaintiff conceded in a letter to the Court that should the Oakland City Council pass the proposed amended ordinance, his complaint "should be deemed moot" and any challenge to the amended ordinance would "necessitate an amended complaint." *Id.*, Ex. 1. Plaintiff also acknowledged in an e-mail to the Oakland City Attorney's office that "it's looking like we can wrap this up rather quickly." *Id.*, Ex. 2.

In a later e-mail to the Oakland City Attorney's office, plaintiff's counsel wrote: "Regardless of what the City does [re passage of the revised ordinance] my sense is that the plan we have discussed (letter to the judge re: mootness, dismissal by judge due to mootness, and payment of the fees previously mentioned) is still on track for the original challenge." *Id.*, Ex. 3. In a February 7, 2008, letter, plaintiff's counsel stated that he would be filing an amended complaint within the next 30 days rather than dismissing his suit. *Id.*, Ex. 4. No such amended complaint was filed. *Id.*, ¶ 5.

On February 5, 2008, the City passed the amended ordinance (Ordinance No. 12860). *Id.*, ¶ 6. In an agreement fully executed by plaintiff and his attorneys on March 17, 2008, plaintiff agreed to accept $5,000 as full payment for attorneys' fees through February 5, 2008. *Id.*, Ex. 5. The City paid plaintiff's attorneys $5,000. *Id.*, ¶ 6.

On May 6, 2008, Supervising Deputy City Attorney Vicki Laden spoke with plaintiff's counsel regarding the Joint Status Conference Statement that was due at the end of that week. *Id.*, ¶ 7. Plaintiff's counsel indicated that he intended to file an amended complaint and a motion for preliminary injunction in the near future. *Id.* Plaintiff's counsel asked that the City stipulate to continue the Case Management Conference to allow time for him to do so. *Id.* The City agreed to give plaintiff thirty days to file his amended complaint. *Id.* The Court continued the Initial Case Management Conference to August 22, 2008. *Id.*

On May 22, 2008, plaintiff filed the instant Application for Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction but did not amend his original complaint. *Id.*, ¶ 8.

### III. PLAINTIFF'S CLAIMS WERE MOOTED BY THE CITY'S AMENDMENT OF THE ORDINANCE

The complaint on which plaintiff predicates his application and order to show cause is moot, as plaintiff's communications have repeatedly acknowledged. Laden Decl., ¶¶ 3-5; *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900-02 (9th Cir. 2007) (no case or controversy that can support relief exists after a statutory change). Just as in *Outdoor Media Group*, the amended ordinance "cures the constitutional deficiencies that [plaintiff] alleged in connection with the original...ordinance," mooting the action. For this reason alone, plaintiff's application should be denied.

### IV. EVEN IF A JUSTICIABLE CONTROVERSY EXISTS HERE, PLAINTIFF CANNOT MEET THE STANDARD FOR A PRELIMINARY INJUNCTION

Plaintiff is entitled to a preliminary injunction only if he can "show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in [his] favor." *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991). The balance of hardships tips in favor of the City of Oakland and the patients who urgently need access to reproductive health care. While plaintiff does indeed have First Amendment interests, it is a traditional exercise of a city's "police powers to protect the health and safety of [its] citizens." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996). "That interest may serve to justify a special focus on unimpeded access to health care facilities and the avoidance of potential trauma to patients associated with confrontational protests." *Hill v. Colorado*, 530 U.S. 703, 715 (2000).

Assuming *arguendo* that a justiciable controversy still exists despite Oakland's amendment of the Ordinance and plaintiff's release in exchange for payment of $5,000, plaintiff cannot meet either prong of this test. First, the Ordinance is constitutional on its face under the standards set forth by the Supreme Court in *Hill v. Colorado*, 530 U.S. 703 (2000). Second,

plaintiff's "as applied" challenge to the Ordinance fails because his arrest complied with the terms of the constitutionally valid Ordinance.

### A. The Ordinance, on Its Face, Does Not Violate the Free Speech Protections of the United States and California Constitutions.

Plaintiff's application is premised on the uncontroversial point that the government may regulate the time, place, and manner of speech in public places – such as sidewalks outside reproductive health care facilities – only if the regulations are content-neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. Plaintiff's Memorandum of Points and Authorities In Support of Application for Preliminary Injunction ("P. Memo.") at 5-6. Plaintiff is correct, but his motion for a preliminary injunction must still be denied. The challenged ordinance meets these standards: it is a content-neutral regulation on <u>all</u> speech in the vicinity of reproductive health care facilities and it is narrowly tailored to serve the significant government interest of protecting safe access to such facilities.

The Supreme Court recently upheld a Colorado statute nearly identical to the Oakland ordinance in *Hill v. Colorado*, 530 U.S. 703 (2000). Like the Oakland ordinance, the Colorado statute regulated speech within 100 feet of any health care facility, and made it unlawful for anyone within the 100-foot regulated area to "'knowingly approach' within eight feet of another person, without that person's consent, 'for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person . . . .'" *Id.* at 707. The Supreme Court held that the Colorado statute was content-neutral because it regulated "the places where some speech may occur" rather than speech itself, *id.* at 719, its restrictions applied "equally to all demonstrators, regardless of viewpoint," *id.*, and the state's interests in protecting access to health care facilities and patients' privacy were unrelated to the content of the demonstrators' speech, *id.* at 719-20. These rationales apply equally to the Oakland ordinance, which regulates speech of any viewpoint within 100 feet of a reproductive health facility in the interest of safeguarding access to health care. Millen Decl.,

1  Ex. A (the Ordinance).

2  After determining that the Colorado statute was content neutral, the *Hill* Court went on to hold that the statute was narrowly tailored and left open ample alternative channels for communication. *Hill*, 530 U.S. at 725-26. The Court reasoned that the statute placed no limitations on the "number, size, text, or images" on demonstrators' signs and that it did not limit the number of speakers permitted in the area or their noise level. *Id.* at 726. The statute's eight-foot "buffer zone" was small enough to allow speakers to communicate at a "normal conversational distance." Most significantly, its prohibition on speech only where speakers "knowingly approach" within eight feet of individuals allowed speakers to remain in place even if individuals passed within eight feet of them and "protect[ed] speakers who thought they were keeping pace with the targeted individual at the proscribed distance from inadvertently violating the statute." *Id.* at 726-27. As in *Hill*, the Oakland ordinance creates a mere eight-foot separation between speakers and individuals trying to enter health facilities, and makes speech unlawful only where the speaker "willfully and knowingly approach[es]." Millen Decl., Ex. A, at 4. Thus, like the statute challenged in *Hill*, Oakland's ordinance is narrowly tailored. The *Hill* court also firmly established that access to reproductive care is an important government interest. *Id.* at 715. All of plaintiff's arguments to the contrary are unavailing. *Id.*

Finally, plaintiff argues that the Ordinance is unconstitutionally vague because he could have no idea, by reading the plain language of the ordinance, what conduct it prohibited. P. Memo. at 9. This contention too should be rejected for the reasons expressed by the Supreme Court in *Hill*, in concluding that the Colorado statute was not unconstitutionally vague: "it is clear what the ordinance as a whole prohibits." *Hill*, 530 U.S. at 733. The Oakland ordinance clearly prohibits the following specific actions:

- within 100 feet of the entrance of a reproductive health care facility;
- willingly and knowingly approaching within 8 feet of any person;
- for the purpose of counseling, harassing, or interfering with such person -- terms that are explicitly defined in Section 2 of the Ordinance. Millen Decl., Ex. A, at 3-4.

B.  **The Ordinance "As Applied" to Plaintiff is Constitutional.**

Plaintiff also makes an "as applied" challenge to the ordinance, asserting that the Ordinance was applied to him in an unconstitutional manner. The application of the Ordinance, however, was lawful and by-the-book. On April 29, 2008, plaintiff stood in front of the Family Planning Specialists Medical Group with a "picket sign and a bundle of pamphlets." Supp. Laden Decl., Ex. A, Crime Report, at 4. Five separate witnesses attested under oath to the fact that the plaintiff approached within eight feet of at least eight different patients and their families or significant others, to hand out fliers and "harass" them.[1] Supp. Laden Decl., Exs. C-G. Plaintiff approached patients attempting to enter the facility as well as patients in motor vehicles parked in the loading zone in front of the facility. *Id.* At one point, the director of the medical group used a measuring tape to show plaintiff that he was violating the ordinance. Supp. Laden Decl., Ex. A at 4. The director measured the distance between plaintiff and the clinic's patients to show plaintiff that he was within eight feet of them. *Id.* Despite being repeatedly warned by employees of the facility, plaintiff knowingly and willingly continued to violate the ordinance. *Id.* at 4-5. In many cases, plaintiff was within just two or three feet of the patients, making his violation of the ordinance indisputable. *Id.* Most witnesses also confirmed that plaintiff came to the clinic on the same day of almost every week and that he often approached within eight feet of patients while "harassing" them. *Id.*

Importantly, plaintiff does not dispute that he "approached" women entering the clinic; that he came less than eight feet from them in order to convey his message; and that he approached the clinic director. Hoye Decl., ¶¶ 3, 6-8. Instead, plaintiff's as-applied challenge is based on stray comments supposedly made to him by a police officer as well as an officer's supposed response to a hypothetical question plaintiff posed. P. Memo. at 6-7. None of this is relevant to the as-applied challenge because: (1) plaintiff was arrested for violating the ordinance

---

[1] Plaintiff was "clearly within 8 feet of [the patients]." Supp. Laden Decl., Ex. C. Plaintiff would "come within 4' of [the patients]." *Id.*, Ex. D. Plaintiff was "clearly within 8 feet of [an escort]." *Id.*, Ex. E. Plaintiff "came within 2-3' each time to display his anti-abortion sign." *Id.*, Ex. F. Witness "observed [plaintiff] come within 2' of the patients." *Id.*, Ex. G.

as written, not as hypothetically construed, and (2) comments by police officers about scenarios not actually presented on the day of the arrest are irrelevant as a matter of law. *See Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978) (holding that a municipality can only be held liable for a constitutional injury where the acts in question are pursuant to the official policy or custom of the municipal government, whether made by its lawmakers or by those whose acts may be said to fairly represent official policy).

### C. The Training Bulletin Comports with the Ordinance and with Constitutional Mandates.

Plaintiff's "Supplemental" briefing filed today raises three issues with respect to Oakland's police training bulletin about the Ordinance (the "Bulletin"). None of plaintiff's arguments changes the outcome – both the Ordinance and plaintiff's arrest are lawful.

Plaintiff first claims that the Bulletin unlawfully "expands" the scope of the Ordinance in violation of *Hill v. Colorado*. He complains that the Bulletin makes it unlawful for him to approach within eight feet of someone <u>escorting</u> a patient into a reproductive health care facility. P. Supp. Memo. at 1-2. This fact does not undermine the constitutionality of the Ordinance. The Ordinance, like the Colorado statute in *Hill*, prohibits certain speech within eight feet of "any person" – including escorts. The Supreme Court upheld such language in *Hill* by explicitly recognizing that "it was a common practice to provide escorts for persons entering and leaving the clinics both to ensure their access and to provide protection . . . ." *Hill*, 530 U.S. at 709-710.

Plaintiff also complains that the Bulletin prohibits speech directed not only at individuals entering a clinic, but also at individuals "exiting" a clinic. This is a distinction without a difference. The Ordinance measures the eight-foot "bubble" from the body of any person "seeking access to [or] <u>passage from</u>" a reproductive health care facility. Millen Decl., Ex. A, at 3 (emphasis added). Similarly, the Colorado statute upheld in *Hill* protected individuals anywhere within 100 feet of the entrance to a clinic. *Hill*, 530 U.S. at 708. This language logically includes individuals both entering and exiting a facility.

Finally, plaintiff takes issue with what the Bulletin does not say – claiming it does not clearly state that plaintiff does not violate the Ordinance by remaining stationary while others approach within eight feet of him. P. Supp. Memo. at 3. This is also a non-issue. The Ordinance expressly applies only when speakers such as plaintiff affirmatively and knowingly approach individuals near the clinic – not when they merely remain stationary. Millen Decl., Ex. A, at 3 (emphasis added). Plaintiff was arrested because he violated this provision. Importantly, he does not dispute that he approached several women who were exiting the clinic, as well as the clinic director, in an attempt to communicate his message to them. The Bulletin therefore raises no constitutional issues with respect to the Ordinance or plaintiff's arrest.

## V. CONCLUSION

Oakland's Ordinance passes constitutional muster under the Supreme Court's decision in *Hill*. Just like the statute at issue in *Hill*, Oakland's Ordinance strikes the appropriate balance between plaintiff's first amendment rights and the equally fundamental (and urgent) right of Oakland residents to access reproductive health care. Nothing in the United States or California Constitution bestows on plaintiff a fundamental right to harass patients, employees or anyone else within 100 feet of a reproductive health clinic.

The Ordinance could not be clearer: plaintiff is free to convey his message by standing stationary or by moving peacefully so long as he does not willfully move to any closer than eight feet of anyone entering the clinic. A more perfect balance between his right to speak and the public's right to health care cannot be achieved.

In sum, there is no constitutional right to give unwanted advice to women and men entering health clinics. As the Supreme Court concluded in *Hill*, "Private citizens have always retained the power to decide for themselves what they wish to read, and within limits, what oral messages they wish to hear. This statute simply empowers private citizens entering a health care facility to prevent a speaker, who is within eight feet and advancing, from communicating a message they do not want to hear." *Hill*, 530 U.S. at 734.

Dated: May 29, 2008

ANGELA L. PADILLA
ORRICK, HERRINGTON & SUTCLIFFE LLP

*Angela Padilla*
Angela L. Padilla
Attorneys for Defendant
City of Oakland