United States District Court

Northern District of California

Before The Honorable Charles R. Breyer

| | |
|---|---|
| Walter B. Hoye, II, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   No. C07-6411 CRB |
| | ) |
| City of Oakland, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

San Francisco, California
Friday, May 30, 2008

**Reporter's Transcript Of Proceedings**

**Appearances**:


For Plaintiff:          Law Offices of Michael Millen
                        119 Calle Marguerita, #100
                        Los Gatos, California  95032
                  **By:  Michael Millen, Esquire**



For Defendant:          Orrick, Herrington & Sutcliffe
                        405 Howard Street
                        San Francisco, California  94105
                  **By:  Angela Lucia Padilla, Esquire**



*Reported By:        Sahar McVickar, RPR, CSR No. 12963*
*Official Reporter, U.S. District Court*
*For the Northern District of California*


(Computerized Transcription By Eclipse)

```
 1   Friday, May 30, 2008                              9:30 a.m.

 2                        P R O C E E D I N G S

 3            THE CLERK:  Calling case C07-6411, Hoye versus City

 4   of Oakland.

 5            Appearances, Counsel.

 6            MR. MILLEN:  Good morning, Your Honor.

 7            Michael Millen for plaintiff.

 8            MS. LADEN:  Vicki Laden.

 9            MS. PADILLA:  Good morning.

10            Angela Padilla, Orrick, Herrington & Sutcliffe.

11            We have just come into the case in the last 48

12   hours.

13            THE COURT:  Do you have a client?

14            MS. PADILLA:  Yes, for the City of Oakland.

15            THE COURT:  Okay.  Thank you.

16            So, we have a court reporter.  And this matter is on

17   for an application for a temporary restraining order.  The

18   Court has reviewed the pleadings, in particular, the training

19   bulletin, and, of course, the ordinance.  And, my reaction is

20   that the ordinance at issue in this case is nearly identical to

21   the one in Hill.  I mean, one difference being that the Hill

22   ordinance applied to persons who are both entering and exiting

23   the clinic, and this ordinance, I think, only applies those who

24   are entering.  However I don't think that is an issue in this

25   particular case, that difference.
```

1          So, I just don't really see a basis here for a

2  temporary restraining order.

3          **MR. MILLEN:**  If I may be heard on that, Your Honor?

4          **THE COURT:**  Sure.

5          **MR. MILLEN:**  Michael Millen.

6          To be clear, this is on an as-applied basis based

7  upon the text of the police bulletin combined with the fact

8  from -- the facts on the ground.  The facts on the ground are

9  that the escorts are basically making it impossible for

10  Mr. Hoye to get anywhere near the patients entering the clinics

11  because under the interpretation that the City has now

12  confirmed, that walking towards an escort, if an escort is

13  within eight feet, is a violation of the ordinance.

14          So, in order -- that means that if, in a typical

15  scenario, on a sidewalk, Mr. Hoye cannot walk even near, let

16  alone past, an escort, to go another ten feet to get to someone

17  who is walking a patient, walking into the clinic.

18          This is not a facial challenge like _**Hill**_.  I'm not

19  suggesting the Court read the ordinance and somehow strike it

20  down, but, when you actually are out there in the street, this

21  is what is happening.  And, this is all in the declaration.

22          To make things worse, the City has nowhere stated

23  that the police are going to enforce this differently than what

24  they have previously said.  And, there is a huge gap between

25  Counsel's representations of what Counsel understands the

1  ordinance to say and how it will be enforced.  Because I'm sure

2  Counsel completely believes what is being said, and the police,

3  who have indicated they are going to enforce it very

4  differently.

5            So, if this Court does not grant a TRO, then I don't

6  understand how -- I mean, there is no way to communicate

7  because there is an escort in the way.  And we can't walk

8  towards the escort.  That is the basis --

9            **THE COURT:**  So you are saying that what happens is

10  that the protester, what, can't get within how many feet of the

11  -- of the individual that they want to communicate --

12            **MR. MILLEN:**  It all depends on --

13            **THE COURT:**  Well, let's say it all occurs within

14  100 feet of the clinic, and 100 feet of the clinic simply says,

15  as I understand the ordinance, simply says that a person who is

16  protesting can't come within eight feet of anyone, can't --

17  doesn't say can't approach eight feet of a prospective patient

18  or an escort or anybody, he can't, has to stay eight feet away

19  if what that person is doing is communicating a particular

20  position protesting --

21            **THE CLERK:**  Couple of things.  First, the ordinance

22  only says that it applies to persons entering the clinic.  And

23  that is in 3(b).  But, they are now saying that an escort who

24  is not trying to enter the clinic, that to approach within

25  eight feet of the escort is a violation.  So that has to do

1    with kind of the ad hoc and the vagueness that what the police

2    are enforcing on the ground is not about a victim who is trying

3    to enter the clinic.

4        The second thing is that even if the ordinance was

5    expanded and said don't get within anybody, whether they are

6    exiting, entering or hanging around, there is now a practical

7    problem which never arose in *Hill*, it was -- because it was a

8    facial challenge.

9        The escort dogged my client, so my client can never

10   move towards the clinic because the escort dogged him.  So

11   50 feet away from the clinic, an escort stands on the sidewalk,

12   my client can only be 50 plus 8-and-a-half feet away,

13   58-and-a-half feet away from the clinic, if they walk --

14       **THE COURT:**  Well, the ordinance does say eight feet

15   within somebody seeking to enter the clinic.

16       **MR. MILLEN:**  Exactly.  The ordinance is not bad in

17   that respect, Your Honor, it's the enforcement on the ground

18   that is the problem, as my client has testified.

19       **MS. PADILLA:**  Your Honor, Angela Padilla.

20       When appropriate, I would like to be heard on this

21   point.

22       **THE COURT:**  Well, let me just ask a follow-on

23   question.

24       In other words, you are saying that your client was

25   arrested or cited for coming within eight feet of an escort,

6

```
 1   and that the escort is not a person who would be covered by the

 2   ordinance, and therefore it was improper --

 3              MR. MILLEN:  Let me put it this way, Your Honor:

 4   The reason my client was arrested, there is a lot of testimony

 5   that is confusing on different things.  I am not here to talk

 6   about an -- I'm here to talk about, in the future, the police

 7   have said here is how we are going to enforce this.  I'm not

 8   here to talk about the specifics of all this, you know,

 9   second-level hearsay witness stuff of what people -- about what

10   my client got arrested for.

11              The point is, the police have said they are going to

12   arrest him on Tuesday if he does what you just said.  That is

13   what I'm looking for.  I'm not trying to have the Court go over

14   past history.

15              THE COURT:  Okay.  Let me hear the opposition.

16              MS. PADILLA:  Vicki, you go ahead, please.

17              MS. LADEN:  He wasn't arrested for, you know, for

18   any of the things that Counsel claims he is going to be

19   arrested for, he was arrested for violating the ordinance,

20   which the escorts are there to assist women in entering the

21   clinic.

22              When he approaches the escort, he approaches in this

23   case not to escort, you know, per se but -- the escorts are the

24   women who are seeking to enter the clinic, and he was arrested

25   for, you know, what was an unequivocally clear violation.
```

1          And, you know, the officers assisted in, you know,

2     by actually reading him the bulletin.  That is not what is at

3     issue, what is at issue here is the arrest, and the arrest was

4     completely permissible and supported by the ordinance training

5     bulletin.

6          I mean, he wasn't arrested based on, you know, you

7     know, any facts or remarks.  I mean, he was arrested for a

8     clear violation.  And, you know, he is now quite aware of the

9     City's position.  He has the training bulletin.  He has the

10    ordinance.  He knows what it prohibits.  There is nothing

11    unclear about it, or certainly nothing more unclear than **_Hill_**.

12    There can be no requirement that the City do anything else in

13    this situation apart from all the, you know, procedural

14    problems.

15              **_THE COURT:_**  Right.

16              **_MS. LADEN:_**  Bringing this based on a complaint

17    that --

18              **_THE COURT:_**  Well, I would ask plaintiff, plaintiff's

19    counsel, what evidence is there in the record, that if your

20    client approaches an escort rather than an individual intending

21    to enter the clinic, what evidence is there that he would be

22    arrested for approaching an escort?

23              **_MR. MILLEN:_**  Oh, Your Honor, numerous places.  It's

24    in the brief on page 1 and 2.  I detail it.

25              First, if you look in the bulletin, page 3, the

1    second bullet point, it says that a prohibited conduct is the

2    nonconsensual approach within eight feet of an escort of an

3    individual patient by displaying a sign.

4            It goes on in bullet point, bulletin, page 2.  It

5    says that harassing -- it prohibits harassing behavior toward

6    the patient employee or volunteer.  That -- the definition of

7    harassing is displaying a sign.  And so all of this, Your

8    Honor, with all due respect to opposing counsel, the police

9    report the very last paragraph of the police report says, in

10   summary, it is evident that Hoye was within eight feet of

11   family planning specialists, medical group patients, and their

12   escort, who are all directly in front of the facility.

13           *THE COURT:*  Fine.  So your point, if I understand

14   it, is that if you look at this ordinance, this ordinance

15   doesn't -- is not -- this ordinance is limited to a --

16   approaching individuals who are entering the clinic, right?

17           *MR. MILLEN:*  Yes.

18           *THE COURT:*  Okay, now, we go back to *Hill*, for a

19   minute.

20           *Hill*, the ordinance which was upheld in *Hill*, didn't

21   have that restriction, did it?

22           *MR. MILLEN:*  No.

23           *THE COURT:*  It simply said all persons.

24           *MR. MILLEN:*  Sure.

25           *THE COURT:*  Okay.  And that was Constitutionally

 1  permitted.  So that is your Constitutional argument?

 2          **MR. MILLEN:**  The Constitutional --

 3          **THE COURT:**  Wait.  Let me just finish.

 4          **MR. MILLEN:**  As the Court said in **_Hill_**, in the

 5  abstract, just went on to say we are going to talk about what

 6  might happen or could happen; that is a facial --

 7          **THE COURT:**  No, no, no, no, no.  You missed my

 8  point.  Let me just state it.

 9          My point is, while you may have correctly read the

10  Oakland ordinance, the question you have to address is, whether

11  or not, if conduct occurs outside the Oakland ordinance, such

12  as approaching an escort, whether that conduct would be

13  prohibited by the Constitution.

14          And, when you look at **_Hill_**, which ordinance was

15  upheld by the Supreme Court, it did apply, theoretically, to

16  escorts.  Maybe this one doesn't, but the **_Hill_** did.  It applied

17  to all persons.

18          So my question to you is where is the constitutional

19  violation that I ought to seek to enjoin against?  That's my

20  question.

21          **MR. MILLEN:**  There is no longer an alternative

22  channel of communication because, unlike **_Hill_**, which did not

23  make any mention of a person being any further than eight feet

24  away, in this case, the ordinance is being interpreted in a way

25  that put them much further than the **_Hill_** court ever talked

 1    about.

 2         **THE COURT:**  Isn't that speculative?  In other words,

 3    don't we have to see whether or not when -- when your client

 4    goes out to protest, which is his Constitutional right, when he

 5    does so and if he is arrested, if he is arrested, then the

 6    question will be, well, what were the circumstances of that

 7    particular arrest, and were they Constitutional --

 8    Constitutionally violative?

 9         **MR. MILLEN:**  So, Your Honor, if I understand what

10    you are saying, you're saying that even though the police have

11    said they are going to arrest him for this, the bulletin says

12    they are going to arrest him for this because we don't have, I

13    guess, haven't had, a full trial on exactly what he got

14    arrested for.  You are saying let him go out and get arrested

15    first?

16         **THE COURT:**  No, I'm saying that, if he is arrested

17    for conduct that is constitutionally permitted, then, of

18    course, there is a problem.  And I would enjoin that.  But, I

19    don't know that I would issue an injunction saying that the

20    Constitution doesn't permit the approaching of an escort,

21    because in **_Hill_** the ordinance that was applicable in **_Hill_** did

22    permit, Constitutionally, the approaching of an escort because

23    it says -- said -- all persons, and an escort is a person.

24         So, for me, to reach out and to say that the

25    Constitution would prohibit the approaching of an escort

1    because this ordinance doesn't permit it, arguably, and -- you

2    might be right, by the way, in the interpretation, or wrong, I

3    don't know -- but you are asking me to take a look under the

4    Constitution. and under the Constitution, I don't know that --

5    that I would reach out and start defining terms other than the

6    terms that *Hill* used because I don't know where I'd look.  The

7    only thing I have to look at is *Hill*.

8              **MR. MILLEN:**  Yes, Your Honor.

9              In paragraph 5 of the declaration, Mr. Hoye says,

10    "The escort standing in front of me makes it impossible, as a

11    practical matter, for me to engage in conversation or offer a

12    piece of literature."  So, he indicates this is what happens on

13    the street.

14              There is not ample alternative communication.  This

15    is no longer narrowly tailored in practice, because the City is

16    saying you will always be eight feet away from an escort, and,

17    he is stating he can never get to his targeted audience.

18              **THE COURT:**  Okay, now my question to you,

19    Mr. Millen, is there a case which says that Constitutionally

20    that would not be permitted?  Because the *Hill* case says

21    Constitutionally it's permitted to keep people eight feet away

22    from all persons.  So, is there another case out there that

23    says well, by "all persons" we mean just those people who are

24    seeking medical assistance, and, we do not include within that

25    individuals who are either volunteers or employees of the

1    clinic who are escorting these people in there?

2             **MR. MILLEN:**  No, Your Honor, that would never be our

3    intention, that a **_Hill_** ordinance is inappropriate.

4             What we are saying is that if you take a **_Hill_**

5    ordinance and, in effect, it prohibits somebody from

6    approaching their audience, then, as it's being applied in that

7    instance, it violates Constitutional norms.

8             **THE COURT:**  Then I think the answer to the question

9    -- fine, I don't know whether you are right or wrong, I

10   understand your argument.  The answer to that question, then,

11   is I need the facts, specific, of what happened, who your

12   client was.

13            I mean, he goes out he says "I was at point "X," the

14   people were at point "Y"; I couldn't communicate because I was

15   at point "X," and, therefore, as applied, this ordinance was

16   unconstitutional because I couldn't communicate."

17            And, I need a fact-specific case.  As you state to

18   me, the case in front of me isn't that case.  And you want me

19   to issue some injunction talking about, theoretically, where

20   people are going to be, and so forth, and I'm not going to do

21   that.  From a TRO point of view, you are going to have to give

22   me some fact-specific case.

23            **MR. MILLEN:**  Are you suggesting like perhaps a map

24   with points that kind of say that is that sort of evidence?

25   Because we do have some testimony in the declaration, but --

1    **THE COURT:**  No, but I need to know -- in any given

2    situation, I need to know what exactly what the facts were and

3    how your client's constitutional rights were impaired by the

4    police inappropriately applying the ordinance, the Oakland

5    ordinance; in other words, you are not saying the Oakland

6    ordinance is unconstitutional.  I mean, we have had that

7    discussion.

8    **MR. MILLEN:**  Yeah, true.

9    **THE COURT:**  So it's Constitutional.  And as is the

10    ordinance in _Hill_.

11    **MR. MILLEN:**  We reserve the right for facial, but I

12    am not arguing that today.

13    **THE COURT:**  Okay.  So it's arguably Constitutional.

14    And then, the question is, as applied, was it?  I mean, as

15    applied is, as I understand it, is there is always a past

16    tense, basically, as applied, unless there is a threat that

17    shows that it's actually, you know, sort of a real threat that

18    it's about to be applied in an unconstitutional way.

19    I'm not at all comfortable, based upon the history

20    here, that it is going to be applied in an unconstitutional

21    way.  First of all, I would note for the record that the City

22    Attorney has been very cooperative, in amending the ordinance

23    so that it seems to be consistent with _Hill_ and with

24    Constitutional concerns.

25    Secondly, a training bulletin has been issued;

1    whether it's accurate, in all respects, I don't think I need to

2    go into that, but there is a bulletin out there.

3              And third, the arrest that took place, in reviewing

4    the police reports, doesn't seem to be the arrest that you are

5    complaining about in an as-applied challenge.  So given those

6    three things and using my equitable powers, I wouldn't enjoin

7    it.

8              Now, you know, the City Attorney is cognizant of

9    everything we have discussed.  And, I would assume that when we

10   hang up, there will be some discussion with the Police

11   Department as to how to, if, in fact, conduct occurs on

12   Tuesday, how to respond to it, what to be careful of and what

13   not to be careful -- and what to be careful of and what not to

14   be concerned about, you know?  I mean, but I don't think I'm

15   going to start issuing an injunction on what could happen

16   because I'm not convinced that this is a real threat, that it

17   will happen.

18              **MR. MILLEN:**  I understand.

19              **THE COURT:**  Okay.

20              **MR. MILLEN:**  Your Honor, on a separate housekeeping

21   matter, if I could?

22              **THE COURT:**  Sure.

23              **MR. MILLEN:**  A document was filed that has some of

24   my client's personal identifying information.  It was a couple

25   of exhibits that were filed.

1          **THE COURT:**  If you want to substitute those exhibits

2    or redact them?  Or, I could file them or have them filed under

3    seal.

4          They have been filed already; is that it?

5          **MR. MILLEN:**  Opposing counsel did.  Is that just a

6    nunc pro tunc -- only you can de-file something -- unfile it.

7          How does that work?

8          **THE CLERK:**  We can lock it.

9          **THE COURT:**  We can file it under seal.

10         **MS. PADILLA:**  We took great care to redact out the

11   identifying -- the Social Security numbers.  What was, indeed,

12   filed are two pieces of information that we think are a matter

13   of public record, which is a date of birth, which is contained

14   on the driver's license number, which is something you show

15   every time you go to Safeway and use your credit card.

16         But, as a courtesy, and out of further concern that

17   is being expressed by the plaintiff, we would be more than

18   happy and cooperate to redact even those matters which we think

19   are a matter of public record.

20         We didn't mean --

21         **THE COURT:**  I know, I know.

22         **MS. PADILLA:**  To interfere with the plaintiff's

23   privacy rights.

24         **THE COURT:**  Let's do that.

25         You want to eliminate his date of birth; is that it?

1          **MR. MILLEN:**  Date of birth and driver's license

2    number.

3          **THE COURT:**  We'll go through and -- we are going to

4    seal the entire document, okay?

5          **MR. MILLEN:**  Okay, that would be -- the document we

6    are speaking of, Your Honor, just to be clear, in the

7    supplemental declaration of Vicki Laden --

8          **THE COURT:**  Okay.

9          **MR. MILLEN:**  There is an Exhibit A and an Exhibit B.

10         **THE COURT:**  Okay, those documents will be sealed.

11         **MR. MILLEN:**  Thank you, Your Honor.

12         **THE COURT:**  Sure.

13         **MS. PADILLA:**  Thank you, Your Honor.

14         **THE COURT:**  Okay, thanks so much.

15         **MR. MILLEN:**  I guess what we will probably do is

16    we'll refile this as a preliminary injunction motion unless we

17    have additional information to bring another TRO request.

18         **THE COURT:**  Yeah, but I'm not going to -- I mean,

19    your motion for a TRO is denied.

20         **MR. MILLEN:**  As of today.

21         **THE COURT:**  Right.

22         **MR. MILLEN:**  But, on Tuesday, there may well be new

23    facts.

24         **THE COURT:**  Well, there will always be new facts on

25    Tuesday.

1          **(Laughter.)**

2          *MR. MILLEN:*  That is substantially different than

3   what the Court is making its decision on today is what I'm

4   suggesting.

5          *THE COURT:*  We'll see.

6          *MR. MILLEN:*  Very well, thank you.

7          *THE COURT:*  Okay.  Thank you.

8          *MS. PADILLA:*  Thank you, Your Honor.

9          *THE COURT:*  Right.

10         Bye-bye.

11              **(Proceedings adjourned at 9:55 a.m.)**

12

13                    **---o0o---**

14

15

16

17

18

19

20

21

22

23

24

25

### CERTIFICATE OF REPORTER

I, Sahar McVickar, Official Court Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.  The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

**Sahar McVickar, RPR, CSR No. 12963**

**June 2, 2008**