Michael Millen
Attorney at Law  (#151731)
119 Calle Marguerita  Ste. 100
Los Gatos, CA  95032
Telephone:  (408) 871-0777
Fax:  (408) 516-9861
mikemillen@aol.com

Catherine Short, Esq.
Life Legal Defense Foundation
PO Box 1313
Ojai, CA 93024
(805) 640-1940

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER B. HOYE, II,<br><br>       Plaintiff,<br><br>       v.<br><br>CITY OF OAKLAND,<br><br>       Defendant. | NO.:  C07-06411 CRB<br><br>**PLAINTIFF' OPPOSITION TO MOTION TO DISMISS [F.R.CIV.P. 12(b)(6)]**<br><br>**Date:   August 22, 2008**<br>**Time:  10:00 AM**<br>**Judge: Hon. Charles Breyer**<br>**Crtm:  8** |

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES.........................................................................ii

INTRODUCTION ........................................................................................1

PROCEDURAL HISTORY ..........................................................................1

ARGUMENT ...............................................................................................1

    I. LEGAL STANDARD .............................................................................1

    II. PLAINTIFF MAY CHALLENGE THE AMENDED ORDINANCE ON ITS FACE ...2

    III. THE ORDINANCE IS UNCONSTITUTIONAL ON ITS FACE ..............................3

        **A. Chapter 8.50 Is Not Content-Neutral....................................4**

        **B. The Ordinance, On Its Face, Is Not Narrowly Tailored To Serve The Asserted Governmental Interest...................................................7**

    IV. THE ORDINANCE IS UNCONSTITUTIONAL AS APPLIED ...............................10

        **A. Section 3(b), As Applied, Is Viewpoint-based..............................10**

        **B. Section 3(b), As Applied, Is Not Narrowly Tailored To Serve A Legitimate Governmental Interest ...................................................12**

            1. The Ordinance Is Not Narrowly Tailored To Restrict *Unwanted* Approaches ...........................................................................12

            2. The Ordinance Is Not Narrowly Tailored Because It Restricts Leafletting But Permits Solicitation .........................................14

    V. THE ORDINANCE IS UNCONSITUTIONALLY VAGUE. ....................................15

    VI. THE ORDINANCE DENIES EQUAL PROTECTION ............................................16

**CONCLUSION...........................................................................................19**

1

**TABLE OF AUTHORITIES**

2

**<u>Cases</u>**

3

*ACLU of Nevada v. Las Vegas*, 466 F.3d 784 (9th Cir. 2006) ................................................ 4, 5

4

*American-Arab Anti-Discrimination League v. Reno*, 119 F.3d 1367 (9th Cir. 1997) ............... 10

5

*Bay Area Peace Navy v. U.S,* 914 F.2d 1224 (9th Cir. 1990) ............................................... 7

6

*Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003) ............................................................. 2

7

*Carey v. Brown*, 447 U.S. 454 (1980) ....................................................................... 5

8

*Chaloux v. Killeen*, 886 F.3d 247 (9th Cir. 1989) ......................................................... 15

9

*City of Cincinnati v. Discovery Network, Inc.* 507 U.S. 410 (1993) ..................................... 8

10

*Desert Outdoor Advertising, Inc. v. City of Moreno Valley*, 103 F.3d 814 (9th Cir. 1996) .......... 9

11

*Desert Outdoor Advertising, Inc. v. Moreno Valley*, 103 F.3d 814 (9th Cir. 1996) ................... 7

12

*Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123 (1992) ..................................... 7

13

*Foti v. Menlo Park*, 146 F.3d 629 ......................................................................... 7

14

*Frisby v. Schultz*, 487 U.S. 474 (1988) ................................................................... 3

15

*Gilligan v. Jamco Development Corp.* 108 F.3d 246 (9th Cir. 1997) ...................................... 1

16

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ....................................................... 16

17

*Harper v. Virginia Bd. of Elections*, 383 U.S. 663 (1966) .............................................. 18

18

*Hill v. Colorado*, 530 U.S. 703 (2000) ............................................................. passim

19

*Hydrick. v. Hunter*, 466 F.3d 676 (9th Cir. 2006) ...................................................... 18

20

*Jacobson v. Hughes Aircraft Co.*, 105 F.3d 1288 (9th Cir, 1997) ........................................ 2

21

*Kasler v. Lockyer*, 23 Cal.4th 472 (2000) .............................................................. 18

22

*Kneivel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) ......................................................... 1

23

*Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850 (9th Cir. 2004) ................................................... 8

24

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) .......................................... 15

25

*Nat'l Advertising Co. v. City of Orange*, 861 F.2d 246 (9th Cir. 1988) ................................. 7

26

*National Advertising Co. v. Town of Babylon*, 900 F.2d 551 (2d Cir. 1990) ............................. 9

27

*Olmstead v. United States*, 277 U.S. 438 (1928) ....................................................... 12

28

1    *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37(1983)...............................3

2    *Police Department of Chicago v. Mosley,* 408 U.S. 92 (1972) ....................................................5

3    *Project 80's Inc. v. City of Pocatello*, 942 F.2d 635 (9th Cir. 1991) ..........................................8

4    *S. v. Kokinda*, 497 U.S. 720 (1990)........................................................................................ 14

5    *S.O.C. Inc. v. County of Clark*, 152 F.3d 1136 (9th Cir 1998) ....................................................4

6    *S.O.C. v. County of Clark*, 152 F.3d 1136 (9th. Cir. 1998) ........................................................7

7    *Shapiro v. Thompson*, 394 U.S. 618 (1969) ............................................................................ 18

8    *Skinner v. Oklahoma*, 3176 U.S. 535 (1942) .......................................................................... 18

9    *Smith v. Silvey*, 149 Cal.App.3d 400 (1983) .......................................................................... 13

10    *Stoner v. Santa Clara County Office of Education*, 502 F.3d. 1116 (9th Cir. 2007)...................2

11    *Truth v. Kent School Dist.*, 524 F.3d 957 (9th Cir. 2008) ......................................................... 15

12    *U.S. Steel. v. P.U.C.*, 29 Cal.3d 603 (1981)............................................................................. 17

13    *Van Nuys Pub. Co. v City of Thousand Oaks*, 5 Cal.3d 817 (1971) ..........................................13

14    *Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489 (1982) ..................... 16

15    *Ward v. Rock Against Racism*,  491 U.S. 781 (1989) .................................................................4

16    *Williams v. Rhodes*, 393 U.S. 23 (1968)................................................................................. 18

17

18

19

20

21

22

23

24

25

26

27

28

1

**INTRODUCTION**

2      Defendant's Motion to Dismiss is based on the erroneous suppositions that 1) Chapter 8.50

3  (the "Ordinance") is "nearly identical" to the statute upheld in *Hill v. Colorado*, 530 U.S. 703

4  (2000); 2) there are no remaining grounds for a facial challenge to the Ordinance, and 3) a Rule

5  12(b)(6) motion may be granted on the basis of factual denials raised in witnessed statements

6  attached to a defense attorney's declaration. Defendant's motion includes a lengthy "Statement of

7  Facts" generally drawn from sources other than the complaint, and this in and of itself signals the

8  weakness of the motion.

9

**PROCEDURAL HISTORY**

10      On or about December 18, 2007, the City of Oakland (herein the "City") enacted City of

11  Oakland Municipal Code Chapter 8.50 (consisting of §§8.50.010 et seq.), hereinafter the "original

12  ordinance."  The original ordinance imposed various restrictions on First Amendment activity near

13  abortion clinics.  One of the restrictions was a facially viewpoint-based restriction prohibiting speech

14  for the purpose of persuading the listener not to access certain reproductive health care services.

15      On December 19, 2007, Plaintiffs filed this action. Following a hearing on Plaintiff's

16  application for Temporary Restraining Order, the City, through its attorneys, agreed not to enforce

17  the original ordinance and to amend that ordinance. On February 5, 2008, the City amended the

18  ordinance. The amended ordinance ("Ordinance") as applied violates both the federal and state

19  constitutions.

20

**ARGUMENT**

21  I. LEGAL STANDARD

22      A Rule 12(b)(6) motion is viewed with disfavor and rarely granted. *Gilligan v. Jamco*

23  *Development Corp*. 108 F.3d 246, 249 (9th Cir. 1997). In considering the motion, the Court must

24  disregard facts that are not alleged on the face of the complaint or contained in documents

25  attached to the complaint. *Kneivel v. ESPN*, 393 F.3d 1068, 1076  (9th Cir. 2005).  For this

26  reason plaintiff asks the court to disregard all of defendant's purported "facts" which are merely

27  hearsay witness statements attached to a defense attorney's declaration.

28

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

**OPPOSITION TO MOTION TO DISMISS**                    C07-06411 CRB      Page 1

1    The material allegations in the complaint and all reasonable inferences from them must be

2    construed in the light most favorable to the plaintiff. *Stoner v. Santa Clara County Office of*

3    *Education*, 502 F.3d. 1116, 1120 (9th Cir. 2007); *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir.

4    2003). The Court's role at this stage is "not to decide winners and losers or evaluate the strength

5    or weaknesses of claims" but only to decide whether "plaintiff has advanced potentially viable

6    claims." *Jacobson v. Hughes Aircraft Co.*, 105 F.3d 1288, 1292 (9th Cir, 1997).

7    Finally, leave to amend "shall be freely given when justice so requires."  F.R.Civ. P.

8    15(a).

9    II. PLAINTIFF MAY CHALLENGE THE AMENDED ORDINANCE ON ITS FACE

10    Defendant argues that because the Amended Ordinance was "modeled" on the statute

11    upheld in *Hill v. Colorado*, 530 U.S. 703 (2000), it is impervious to a facial challenge.

12    (Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss ("Motion to

13    Dismiss") at 1:5-6. This is incorrect.

14    First, the Amended Ordinance is far from being "nearly identical"  (*id*. at 3:13) to the

15    Colorado statute at issue in *Hill*. For example, the Amended Ordinance applies only to abortion

16    facilities, not all health care facilities as did the statute in *Hill*.  In so limiting the scope of the

17    ordinance, the City has abandoned one of the chief indicia of neutrality and lack of discriminatory

18    intent the Court found in *Hill*, 530 U.S. at 731 ("the comprehensiveness of the statute is a virtue,

19    not a vice, because it is evidence against there being a discriminatory governmental motive.").

20    Further, rather than being straightforward about its intent to restrict speech activity, the City chose

21    to cloak its intent behind the word "harassing." This leads to a morass of confusing and overlapping

22    definitions and prohibitions not present in the Colorado statute. A side-by-side comparison of

23    Chapter 8.50 (1077 words) and Colorado Rev. Stat. §18-9-122 (357 words) quickly shows that

24    they are far from identical.

25    Second, even if the Amended Ordinance were identical in wording to the Colorado statute

26    upheld in *Hill*, Plaintiff would not be precluded from bringing a facial challenge on arguments or

27    grounds not raised in *Hill*. The Supreme Court did not purport to reject arguments not heard or

28

1  decide issues not before it. Plaintiffs are free to raise arguments unconsidered by the Supreme Court

2  and unresolved issues in a facial challenge to the Amended Ordinance.

3      Third, the Ordinance purports to further a governmental interest different from that relied

4  upon by the Supreme Court in *Hill*, but the City offers no analysis or argument that the Ordinance is

5  narrowly tailored to serve that interest.

6      Defendant implies that, at the hearing on May 30 on Plaintiff's Application for Temporary

7  Restraining Order, Plaintiff conceded and this Court conclusively determined that there were no

8  grounds for a facial challenge to the Amended Ordinance. This is incorrect. Plaintiff's counsel made

9  clear that Plaintiff's Application was not based on a challenge to the Amended Ordinance on its face

10 but as applied.  Docket No. 34, Transcript of Proceedings. Plaintiff never waived his right to bring a

11 facial challenge to the Amended Ordinance.[1]

12      III. THE ORDINANCE IS UNCONSTITUTIONAL ON ITS FACE

13      Public sidewalks are traditional public fora, which for "'time out of mind' . . . have been

14 used for public assembly and debate." *Frisby v. Schultz*, 487 U.S. 474, 480 (1988). The

15 identification of public sidewalks with public fora is not merely the "accidental invocation of a

16 'cliche.'" *Id*. Rather, the Supreme Court has explicitly held that all sidewalks are public fora:

17 "No particularized inquiry into the precise nature of a specific street is necessary; all public

18 streets are held in the public trust and are properly considered traditional public fora." *Id*. at

19 481.

20      Governmental bodies may regulate the time, place and manner of speech in traditional

21 public fora, but only if such regulations "are content-neutral, are narrowly tailored to serve a

22 significant government interest, and leave open ample alternative channels of communication."

23 *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). A content-

24 based exclusion may only be enforced if it serves a compelling government interest and is

25

26  [1] Plaintiff was not obliged to raise every grounds for a facial challenge in his original
27  complaint and Application for Temporary Restraining Order and Order to Show Cause.
    Plaintiff knew that Defendant would have to either amend or abandon the original ordinance,
28  so there was no reason for him to belabor the point of its unconstitutionality.

1    narrowly drawn to achieve that end. *Id*. Content-based restrictions are "presumptively

2    unconstitutional." *S.O.C. Inc. v. County of Clark*, 152 F.3d 1136, 1145 (9th Cir 1998).

3                    **A. Chapter 8.50 Is Not Content-Neutral**

4        "The principal inquiry in determining content-neutrality, in speech cases generally and in

5    time, place, or manner cases in particular, is whether the government had adopted a regulation of

6    speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*,

7    491 U.S. 781, 791 (1989). A restriction on speech "is content-based if *either* the main purpose in

8    enacting it was to suppress or exalt speech of a certain content, *or* it differentiates based on the

9    content of the speech on its face." *ACLU of Nevada v. Las Vegas*, 466 F.3d 784, 793 (9th Cir.

10   2006) (emphasis added). Chapter 8.50  is content-based under both of these criteria.

11       1. Chapter 8.50 Is Content-Based Because The City's Purpose in Enacting the Ordinance

12   was to Restrict Certain Speech Based on its Content.

13       The main purpose in enacting Chapter 8.50 was indisputably to suppress speech of a

14   certain content. This is manifest in the language of the original ordinance, which by its very terms

15   penalized speech that seeks to "persuade [an] individual not to access [abortion] services".

16   Counseling which encourages and promotes "accessing" abortion services was allowed without

17   restriction. Although the City, because of this lawsuit, amended this language, the fact remains

18   that the government adopted this ordinance in order to "suppress speech of a certain content."

19       The desire to suppress "speech of a certain content" is also manifest in the fact that the

20   ordinance, even as amended, applies only to speech activity directed at persons entering abortion

21   clinics.  This is quite different from the statute in *Hill* which applied to "any entity that is

22   licensed, certified, or otherwise authorized or permitted by law to administer medical treatment

23   in this state."  *Hill*, 530 U.S. at 707, fn. 1 (see subection (4) of Colorado statute). That the

24   restricted speech might, in theory, be either for or against abortion does not cure the defect that

25   it is speech "of a certain content" that is the target of the ordinance. "It is, of course, no answer

26   to assert that the Illinois statute does not discriminate on the basis of the speaker's viewpoint,

27   but only on the basis of the subject matter of his message. 'The First Amendment's hostility to

28

1  content-based regulation extends not only to restrictions on particular viewpoints, but also to

2  prohibition of public discussion of an entire topic.'" *Carey v. Brown*, 447 U.S. 454, 463 n.6

3  (1980) (quoting *Consol. Ed. Co. of N.Y. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 530, 537

4  (1980).

5        The fact that the City might be willing to suppress some pro-abortion speech along with

6  anti-abortion speech may render the ordinance viewpoint-neutral, but not content-neutral.[2]  The

7  clear intent of the ordinance is to suppress speech about abortion. See, e.g., *Police Department*

8  *of Chicago v. Mosley,* 408 U.S. 92, 93, 95 (1972) (holding that statute prohibiting picketing of

9  schools but exempting picketing of "any school involved in a labor dispute" was invalid because

10  "it describes permissible picketing in terms of its subject matter").

11        In this aspect, Chapter 8.50 materially differs from the Colorado statute at issue in *Hill v.*

12  *Colorado*.  That statute applied to speech directed at any person within 100 feet of the entrance

13  to any health care facility. The plaintiffs argued that the statute was overbroad in that it applied

14  to "too many people at too many places, rather than just the patients at the facilities where

15  confrontation speech had occurred." *Id*. at 730. The Court responded, "Here, the

16  comprehensiveness of the statute is a virtue, not a vice, because it is evidence against there being

17  a discriminatory governmental motive." *Id*. at 731.

18        By contrast, in the instant case the evidence of a discriminatory governmental motive is

19  overwhelming. To claim that a restriction on picketing, leafleting, and speaking solely on public

20  sidewalks in front of abortion clinics, solely directed at persons entering such clinics, is content-

21  neutral because speakers are likewise prohibited from conducting an anti-war protest is simply

22  farcical. This ridiculous feint at content-neutrality cannot obscure the indisputable fact that "the

23  main purpose in enacting [the Ordinance] was to suppress …  speech of a certain content."

24  *ACLU of Nevada, 466 F.3d* at 793.

25

26

27

[2] As discussed in Section ___, *infra*, the City in fact is not willing to suppress pro-abortion speech.

28

1    <u>2. Chapter 8.50 Differentiates Based on the Content of Speech on its Face</u>.

2        The Ordinance is also content-based in that "it differentiates based on the content of the

3    speech on its face." *Id.*.  The Ordinance prohibits uninvited approaches for the purpose of

4    "harassing", which is defined as "passing a leaflet or handbill, to display [sic] a sign to, or engage

5    in oral protest, education, or counseling."

6        While the Court in *Hill* found that a provision restricting "protest, education, or

7    counseling" was not content-based, that finding was based on a consideration of only two types

8    of speech: 1)  "protest, education, or counseling," and 2) "pure social or random conversation."

9    *Id.* at 720. The Court repeatedly cited only "casual conversation" and "social, random, or other

10   everyday communications" as the alternative to prohibited "protest, education, or counseling."

11   *Id.* at 721, 722.

12       In so limiting its view, the Court did not address whether Colorado's statute was

13   unconstitutional because it allowed several other categories of speech that fall outside the

14   prohibition of the ordinance but which pose the same hypothetical "nuisance, the persistent

15   importuning, the following, the dogging, and the implied threat of physical touching that can

16   accompany" an unwanted approach by an abortion opponent. *Id.* at 724. These other types of

17   speech include panhandling, solicitation, and vending. The <u>*Hill Court*</u> was not given the

18   opportunity to decide whether exempting these forms of speech from the reach of the Ordinance

19   crossed a constitutional line.  None of these are restricted by Oakland's Ordinance but all have

20   been recognized as forms of annoying, disturbing speech that municipalities can restrict. Thus,

21   the Ordinance "lends itself to invidious use [because] there is a significant number of

22   communications, raising the same problem that the statute was enacted to solve, that fall outside

23   the statute's scope, while others fall inside." *Id.*

24       A panhandler can aggressively approach a woman entering the clinic and demand money,

25   but a sidewalk counselor cannot approach her with an offer of assistance. Someone can run up to

26   a car approaching a clinic and start washing the windows and ask for payment, but a sidewalk

27   counselor cannot approach the car to offer the driver a free pamphlet.

28

1    In each case of an uninvited approach, "[i]n order to enforce the regulation, an officer

2    must necessarily examine the content of the message conveyed." *Forsyth County, Ga. v.*

3    *Nationalist Movement*, 505 U.S. 123 (1992). The fact that an officer must listen to the message

4    and determine whether it is a permitted solicitation of funds or attempt to sell a product or

5    service, as opposed to impermissible "protest, education, or counseling," renders the Ordinance

6    impermissibly content-based. *Id.* at 135 ("regulations which permit the government to

7    discriminate on the basis of the content o the message cannot be tolerated under the First

8    Amendment"); *Foti v. Menlo Park*, 146 F.3d 629, 636 (ordinance is content-based because

9    "officer must read a sign's message to determine if the sign is exempted from the ordinance");

10    *S.O.C. v. County of Clark*, 152 F.3d 1136, 1145 (9th Cir. 1998) (same, for handbill).

11    The content-based nature of the Ordinance is exacerbated by the fact that, while "protest,

12    education, and counseling" are restricted, vending is not. The statute thus not only is content-

13    based, but imposes greater restrictions on noncommercial speech than on commercial speech.

14    This in and of itself is violative of the First Amendment. *Desert Outdoor Advertising, Inc. v.*

15    *Moreno Valley*, 103 F.3d 814, 819-20 (9th Cir. 1996) (ordinance is invalid if it favors

16    commercial speech over noncommercial speech); *Nat'l Advertising Co. v. City of Orange*, 861

17    F.2d 246, 248 (9th Cir. 1988) (same).

18    Again, the *Hill* court never entertained the argument that the Colorado statute was

19    unconstitutional because it allowed wide swaths of speech which caused the same essential social

20    ills.  This court is asked to find that Oakland's Ordinance is an unconstitutional content-based

21    regulation of speech.

### B. The Ordinance, On Its Face, Is Not Narrowly Tailored To Serve The Asserted Governmental Interest

22    A content-neutral regulation of speech is constitutional only if it is narrowly tailored to

23    serve a significant government interest and leaves open ample alternative channels of

24    communication. *The government has the burden of establishing each of these elements. Bay*

25    *Area Peace Navy v. U.S,*  914 F.2d 1224, 1227 (9th Cir. 1990). A public entity must offer

26    evidence to support its justification for a restriction on speech. *Kuba v. 1-A Agr. Ass'n*, 387 F.3d

27

28

1   850, 859, 862 (9th Cir. 2004). Restrictions that disregard far less restrictive and more precise

2   means to advance the asserted government interest are not narrowly tailored. *City of Cincinnati*

3   *v. Discovery Network, Inc.* 507 U.S. 410, 417 n.13 (1993); *Project 80's Inc. v. City of*

4   *Pocatello*, 942 F.2d 635, 638 (9th Cir. 1991).

5        The interest the City seeks to serve through this Ordinance is "the interest of

6   safeguarding access to health care." Motion to Dismiss at 3:25. This interest is asserted in the

7   Ordinance itself, the Title of which is "Access to Reproductive Health Care Facilities

8   Ordinance," and the Purpose of which repeatedly invokes the right to access. Chapter 8.50,

9   Section 1. Again, as the City stated in its brief, "The City Council found that access to

10  reproductive health care services 'is a matter of critical importance not only to the individual, but

11  also to the health and welfare of all residents of the City of Oakland.'" Motion to Dismiss at 9:1-

12  3.

13       The City suggests that "[t]he *Hill* Court also firmly established that access to

14  reproductive care is an important governmental interest." Motion to Dismiss at 4:13-14, citing

15  *Hill*, 530 U.S. at 715. To be precise, however, the Court only stated that the state's interest in

16  protecting the health and safety of its citizens "may" (not does) justify a special focus on access

17  to health care in general (not singling out "reproductive health care"). After acknowledging

18  various possible governmental interests, the Court stated, "*Whether or not those interests justify*

19  *the particular regulation at issue*, they are unquestionably legitimate." *Hill*, 530 U.S. at 715

20  (emphasis added). In other words, *Hill* never decided that access to health care justified

21  Colorado's regulation but simply acknowledged that the interest was "legitimate".

22       Instead, the Court actually based its holding on a *different* interest that the Colorado

23  statute was narrowly tailored to serve, namely, the state's interest in protecting the right to be

24  free from unwanted communication. *Hill*, 530 U.S. at 716. The Court never found that

25  safeguarding access to health care actually justified the restriction at issue.

26       Thus, *Hill* provides no support for the City here. The City has the burden of proving, as a

27  matter of first impression, that the Ordinance is narrowly tailored to serve its asserted interest of

28

1  protecting access to reproductive health care facilities as opposed to *Hill's* interest of protecting

2  the right to be free from unwanted communication.

3         Moreover, the Ordinance is not narrowly tailored to protect access to reproductive health

4  services.  Numerous statutes are already in place protecting the women seeking access to

5  abortion facilities, both generally and specifically. See. e.g. 18 U.S.C. §241 (Freedom of Access

6  to Clinic Entrances Act); California Pen. C. §§ 422,  602.1, 602.11. Indeed, Chapter 8.50 itself

7  contains provisions that redundantly prohibit the same conduct prohibited under these other

8  statutes, and more. Specifically, section 3(a) prohibits the use of force, threat of force, or

9  physical obstruction to injure, harass, intimidate, or interfere with persons using or providing

10  abortion services. Section 3(c) prohibits coming within 8 feet of a person seeking to enter an

11  abortion clinic for the purpose of injuring or intimidating such person. These laws amply protect

12  the interest in access. The City has never suggested that existing law, with or without the

13  portions of Chapter 8.50 unrelated to speech, are inadequate to protect access.

14         Nor can the City suddenly discover that it has a new interest justifying the Ordinance

15  which it has never advanced to date. "We have been unable to find any case where a court has

16  taken judicial notice of an unstated and unexplained legislative purpose for an ordinance that

17  restricts speech." *National Advertising Co. v. Town of Babylon*, 900 F.2d 551, 55-56 (2d Cir.

18  1990).  *See also*, *Desert Outdoor Advertising, Inc. v. City of Moreno Valley*, 103 F.3d 814, 819

19  (9th Cir. 1996) ("Although aesthetics and safety represent substantial governmental interests . . .

20  the City has not shown that it enacted its ordinance to further any interest in aesthetics and

21  safety").

22         The City has not  shown, nor has it even attempted to show, that the Ordinance is

23  narrowly tailored to serve its asserted governmental interest of protecting access to reproductive

24  health care.  Thus, unlike *Hill*, which involved a comprehensive statute ("health care facility")

25  serving the speech restriction-justifying state interest of avoiding unwanted communication,

26  Oakland's Ordinance is a more discriminating statute ("reproductive health care facility") which

27

28

1    merely serves an interest which the Supreme Court never found to justify this type of restriction

2    on speech.

3        Simply put, this case is not *Hill* and the Ordinance is facially unconstitutionally because

4    the asserted government interest does not justify these restrictions.

5        IV. THE ORDINANCE IS UNCONSTITUTIONAL AS APPLIED

6        **A. Section 3(b), As Applied, Is Viewpoint-based.**

7        The First Amended Complaint alleges that on June 3, 2008, witnesses reported to the police

8    that certain escorts were approaching patients and speaking to them without first obtaining their

9    consent. The responding officer did not arrest the persons, and he and his sergeant did not refer the

10   matter to the District Attorney for prosecution because the escorts were "professional people" and

11   "protected individuals" who would not be charged with violating the Ordinance by approaching and

12   speaking to patients without permission.

13       The City responds by first throwing up specious procedural objections and then implicitly

14   conceding the truth of the factual allegation. The City claims that Mr. Hoye lacks standing to assert

15   a First Amendment claim because the "non-arrest of the escorts was neither an injury-in-fact nor

16   conduct personal to the plaintiff." Motion to Dismiss at 7:9-16. However, the crux of a claim of

17   unconstitutional selective enforcement of laws in derogation of First Amendment rights is a showing

18   that "others similarly situated were not prosecuted." *American-Arab Anti-Discrimination League v.*

19   *Reno*, 119 F.3d 1367, 1374 (9th Cir. 1997).

20       The City then goes on to argue that the City's policy of non-enforcement of the Ordinance

21   against escorts is in fact constitutional. The extremely slender reed upon which it rests this argument

22   is that the Supreme Court in *Hill* acknowledged in passing the presence of escorts at abortion clinics

23   in Colorado prior to enactment of the statute. Motion to Dismiss at 7:22 – 25. Such is the totality of

24   the City's analysis.

25       Nothing in the language of the Colorado statute or in the *Hill* decision remotely suggests

26   that escorts or other clinic personnel were exempted from its provisions. Indeed, in dismissing the

27   dissenters' arguments that the statute gave an unfair advantage to abortion advocates, the Court

28

emphasized that the statute "applies to all 'protest,' to all 'counseling,' and to all demonstrators . . . whether they oppose or support the woman who has made the abortion decision. That is the level of neutrality that the Constitution demands." *Hill,* 530 U.S. at 725.

The City's "protected person" argument is flawed for other reasons. First, the mere fact that a law is passed to protect certain classes or categories of people does not automatically, or perhaps ever, exempt persons in the protected class from the strictures of the law. For example, in *In re T.A.J.,* 62 Cal.App.4th 1350 (1998), the court rejected the "novel proposition" of a 16-year-old that he could not be prosecuted for unlawful sexual intercourse with a minor (Penal Code §261.5) because, as a minor, he was a "victim" under the statute and therefore could not be a perpetrator. Citing numerous cases rejecting similar arguments in the context of other statutes protecting minors, the court ruled that the statute applied to "any person" and therefore "any person," including a minor, could be prosecuted. *Id.* at 1363-65.

Under the City's theory of "protected" persons, those over 65 could not be guilty of elder abuse (Penal Code §368); a minor, senior, or disabled person would not be subject to enhanced sentencing under Penal Code sections 667.9 and 667.10; a student or teacher could not be guilty of obstructing a student or teacher from attending classes (Penal Code §602.10). Nothing in the wording of the statutes or the case law suggests such a conclusion. Likewise, nothing in the Ordinance suggests that any class of persons is immune from prosecution.

Second, even if the City's argument that escorts are "protected persons" under the Ordinance had any validity, it would fail because they are not "protected" under the subsection for which the City claims immunity for these persons. Section 2(g) creates this definition:

> "Providing reproductive health services" shall include doctors, nurses, any employee of a reproductive health care facility and volunteers who, with the consent of the reproductive health care facility, assist in conducting patients of such facility into the facility.

Section 3(a) "protects" persons "providing or obtaining reproductive health care services" which does include the 2(g) definition. However, section 3(b), the section dealing with unconsented approaches, does not contain any reference to persons "providing reproductive health care services" as found in 2(g). In fact, the City *intentionally deleted* such language in amending the statute.

1  Docket No. 26. (Letter from Asst. City Attorney Vicki Laden: "In an abundance of caution, the City

2  Council amended the definition of 'Prohibited Harassment' in Section 3, deleting language at the

3  very end that read 'in connection with seeking reproductive health care services, or for the purpose

4  of interfering with that person's or vehicle occupants obtaining or providing reproductive health

5  care services.'" )

6       Thus, the escorts are not "protected persons" for purposes of section 3(b).

7       Plaintiff initially brought this action because of the blatant viewpoint discrimination on the

8  face of the Ordinance. At first, the City defended the wording, but then conceded, in the face of

9  Plaintiff's Application for Temporary Restraining Order, that the Ordinance should be amended and

10  should not be enforced pending amendment. However, while making cosmetic changes to the

11  Ordinance to render it facially viewpoint-neutral, the City has committed itself to a policy of

12  selective enforcement designed to bring about the same result as the original viewpoint-based

13  ordinance.

14       Plaintiff has adequately alleged that Section 3(b) is viewpoint-based as applied.

15  **B.  Section 3(b), As Applied, Is Not Narrowly Tailored To Serve A**
    **Legitimate Governmental Interest**

16

17       <u>1. The Ordinance Is Not Narrowly Tailored To Restrict *Unwanted*
       Approaches</u>

18       It is anticipated that the City will belatedly assert another interest section 3(b) might

19  serve, namely, protecting the right of women seeking abortion services to be free from unwanted

20  communication. *Id.* at 716. However, that right, or "interest," identified by the majority in *Hill* as

21  sufficient to uphold the Colorado ordinance on its face, should not extend in practice to

22  preventing a speaker from approaching a woman before the woman has indicated that the

23  communication is unwanted and that she does not wish to be approached.

24       The majority in *Hill* referred repeatedly to the right of "unwilling listeners" to be free of

25  "unwanted communication." *Hill,* 530 at 708, 714, 716, 718, 721, 723, and 727. In support of

26  these references, the Court quoted the dissent of Justice Brandeis in  *Olmstead v. United States*,

27  277 U.S. 438, 478 (1928):

28

**OPPOSITION TO MOTION TO DISMISS**                    C07-06411 CRB      Page 12

1

2   We are a social people, and the accosting by one of another in an inoffensive
3   way and an offer by one to communicate and discuss information with a view to
    influencing the other's action, *are not regarded as aggression or a violation of*
    *that other's rights. If, however, the offer is declined,* as it may rightfully be,
4   then persistence, importunity, following and dogging become unjustifiable
    annoyance and obstruction which is likely soon to savor of intimidation."
5   *Hill, supra*, at 717 (emphasis added).

6       The *Hill* Court continued, "None of our decisions has minimized the enduring

7   importance of 'the right to be free' from persistent 'importunity, following and dogging' *after an*

8   *offer to communicate has been declined.*" Id. at 718 (emphasis added).

9       Thus, the Court understood the right at issue to be the right to be free of an unwanted

10  approach and communication *after an offer to communicate has been declined*. The mere

11  "accosting by one of another in an inoffensive way and on offer to communicate and discuss

12  information with a view to influencing the other's action, are not regarded as . . . *a violation of*

13  *that other's rights.*" Id. at 717 (emphasis added).

14      California courts have also been solicitous of the right to "win the attention" and

15  ultimately "reach the minds" of persons who have not rejected a proffered communication, i.e.,

16  those who are uncommitted. "Instead of merely protecting the 'unwilling listener,' as the city

17  contends, the present ordinance thus impairs a distributor's opportunity 'to win the attention' of

18  all uncommitted listeners." *Van Nuys Pub. Co. v City of Thousand Oaks*, 5 Cal.3d 817, 825-26

19  (1971) (striking down ban on distributing printed materials door-to-door).[3] In California, the

20  presumption is that unsolicited speech is welcome unless explicitly rejected. *Id*; *Smith v. Silvey*,

21  149 Cal.App.3d 400, 407 (1983) (right to contact residents personally or with literature "is a

22  constitutionally protected right of expression in the absence of protest by the recipients"; burden

23  of restricting distribution of ideas falls on recipient and no governmental restriction should occur

24  until after speaker has been warned by recipient").

25

26

27  [3] See also *Golden Gateway v. Tenants Assoc*. 26 Cal. 4th 1013, 1049 (2001) ("We must also take into account the ban's impact on the right of Californians, generally, to receive unsolicited communications." (Werdegar, J. diss.)).

28

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

**OPPOSITION TO MOTION TO DISMISS**                    C07-06411 CRB      Page 13

As applied and enforced by the City, section 3(b) curtails speech before an offer has been declined. Indeed, it operates to prevent an understandable offer from even being made. Thus section 3(b), as applied, is not narrowly tailored to protect women seeking abortion services from "conduct which violates their rights." Chapter 8.50, section 1.  An uninvited (as opposed to unwanted) approach is not "a violation of that other's rights."

The proper balancing of interests between speakers and audience, as the Court recognized, was to allow speakers to proffer their communication and restrict offensive speech activity only if such offer is declined. The City's application of section 3(b) to all uninvited approaches is not narrowly tailored to serve any legitimate governmental interest.

### 2. The Ordinance Is Not Narrowly Tailored Because It Restricts Leafletting But Permits Solicitation

Section 3(b) is also not narrowly tailored because it restricts peaceful literature distribution while allowing the more intrusive activity of solicitation. The Supreme Court has deemed it "common sense" that solicitation is a more intrusive and disruptive activity than mere distribution of literature:

> As residents of metropolitan areas know from daily experiences, confrontation by a person asking for money disrupts passage *and is more intrusive and intimidating* than an encounter with a person giving out information. One need not ponder the contents of a leaflet or pamphlet in order mechanically to take it out of someone's hand, but one must listen, comprehend, decide, and act in order to respond to a solicitation.

*U.S. v. Kokinda*, 497 U.S. 720, 734 (1990) (emphasis added). Because it allows intrusive solicitation while restricting literature distribution, the Ordinance is not narrowly tailored to serve any legitimate governmental interest.

### 3. The Ordinance, As Applied, Prohibits "Being Within" Eight Feet of Patients, Escorts, or Clinic Staff.

As alleged in the First Amended Complaint, Plaintiff has been informed by Oakland police officers that it is a violation of the Ordinance for him to fail to move eight feet away of persons entering the clinic, even if he is stationary the person is approaching him, within 100 feet of the

1  clinic. FAC ¶ 9(A).  He has been informed by police that it is a violation for him *to be within* eight

2  feet of escorts, clinic personnel, or patients, while within 100-feet of the clinic.  *Id*. at ¶ 9(B).

3  　　　　Defendant counters that a city "can only be held liable for a constitutional injury where the

4  acts in question are pursuant to the official policy of custom of the municipal government," citing

5  *Monell v. Department of Social Services*, 436 U.S. 658 (1978). However, "*Monell*'s requirements

6  do not apply where the plaintiffs seek only prospective relief, which is the case here." *Truth v. Kent*

7  *School Dist.*, 524 F.3d 957, 967 (9th Cir. 2008), citing *Chaloux v. Killeen*, 886 F.3d 247, 250-51

8  (9th Cir. 1989). Plaintiff here seeks injunctive relief against the threatened unconstitutional

9  enforcement of the Ordinance by precisely those agents of the City who can and have arrested him:

10  the police.

11  　　　　Further, although the First Amended Complaint alleges that the City has offered no

12  assurance that the police have changed their policy of enforcement, in fact, the City's brief in

13  support of its Motion to Dismiss *confirms* that unconstitutional policy. The City states, "[T]he

14  Ordinance specifically prohibits certain speech within eight feet of 'any person' – including escorts."

15  Motion to Dismiss at 7:19-20. The City has thus endorsed the enforcement policy reading the

16  "approach" requirement out of the Ordinance and requiring Mr. Hoye to back off and/or remain

17  silent (including not displaying a sign) when someone approaches him, or if he finds himself within

18  eight feet of a patient or escort.[4]

19  　　　　A prohibition on simply "being within" eight feet of persons entering an abortion clinic,

20  whether one is speaking or not speaking at the time, is not narrowly tailored to serve any significant

21  governmental interest.

22  　　　　V. THE ORDINANCE IS UNCONSITUTIONALLY VAGUE.

23

24

25  [4] The City has also read out of the Ordinance the requirement that the person be "seeking to
enter" a clinic before the Ordinance applies, and that the person not consent to being
26  approached. The City claims Mr. Hoye was validly arrested because he, *inter alia*,
"approached the clinic director," even though the clinic director's own statement says that she
27  went out of the clinic to speak to him. Motion to Dismiss at 6:6-8; Docket No. 32, Supp.
Laden Decl. Ex. G.
28

1      The City itself, in its motion to dismiss, has made Plaintiff's case that the Ordinance is

2  unconstitutionally vague. Does it prohibit only "approach[ing]" to speak as per Section 3(b), or

3  does it "prohibit[] certain speech within eight feet" of persons? Motion to Dismiss at 7:19-20. Does

4  this restriction apply only as to those "seeking to enter such a facility" as per Section 3(b), or does it

5  apply as to "all persons entering and leaving such facilities"? Motion to Dismiss at 5:1-2. Indeed, the

6  City is not clear as to whether it protects any person within 100 feet of the entrance of an abortion

7  clinic or whether it depends upon whether or not such person is entering or leaving.  Motion to

8  Dismiss at 5:11; 7:19-20.

9      This is not pettifoggery. It makes a substantial difference to Mr. Hoye, as he stands for

10  hours on the sidewalk outside an abortion clinic, what the precise rules of engagement are for

11  patients entering, patients leaving, patient companions who may come outside for a smoke, persons

12  walking down the sidewalk. The uncertainty created by the disparity between what the law says on

13  its face and how it is interpreted and applied by the City violates Mr. Hoye's due process and free

14  speech rights.

15      "[W]here a vague statute abuts upon sensitive areas of basic First Amendment freedoms,

16  it operates to inhibit the exercise of those freedoms," because "[u]ncertain meanings inevitably

17  lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas

18  were clearly marked." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (internal

19  quotation marks, citations and ellipsis omitted). Therefore, laws which regulate or restrict speech

20  much satisfy "a more stringent vagueness test."  *Village of Hoffman Estates v. Flipside,*

21  *Hoffman Estates*, 455 U.S. 489, 499 (1982) (footnote omitted).

22      The Amended Ordinance, as interpreted, applied, and enforced by the City, is

23  unconstitutionally vague.

24    VI. THE ORDINANCE DENIES EQUAL PROTECTION

25      In its discussion of Plaintiffs' equal protection claims, Defendant City focuses on only

26  one type of equal protection violation, namely, that which relies on a showing that a law

27  discriminates against a protected or "suspect" class of persons. However, there is a second type

28

1  of equal protection claim, and the Amended Complaint makes clear that it is this type of claim

2  that is alleged: "These classifications have a direct bearing on the fundamental interest in free

3  speech." FAC, ¶ 33, 34.

4        Equal protection of the law is guaranteed under the Fourteenth Amendment to the U.S.

5  Constitution and Article I, section 7, of the California Constitution. The guarantee of "equal

6  protection" means not just that all individuals will equally enjoy the benefits of laws, but that no

7  individuals or groups of individuals may be arbitrarily singled out for particularly harsh treatment

8  under the law:

> The constitutional bedrock upon which all equal protection rests is
> composed of the insistence upon a rational relationship between selected
> legislative ends and the means chosen to further or achieve them. This
> precept, and the reasons for its existence, have never found clearer
> expression than the words of Justice Robert Jackson, uttered 30 years ago.
> `I regard it as a salutary doctrine,' Justice Jackson stated, `that cities, states
> and the Federal Government must exercise their powers so as not to
> discriminate between their inhabitants except upon some reasonable
> differentiation fairly related to the object of regulation. This equality is not
> merely abstract justice. The framers of the Constitution knew, and we
> should not forget today, that *there is no more effective practical guaranty
> against arbitrary and unreasonable government than to require that the
> principles of law which officials would impose upon a minority must be
> imposed generally. Conversely, nothing opens the door to arbitrary action
> so effectively as to allow those officials to pick and choose only a few to
> whom they will apply legislation and thus to escape the political
> retribution that might be visited upon them if larger numbers were
> affected.* Courts can take no better measure to assure that laws will be just
> than to require that laws beequal in operation.' (*Railway Express v. New
> York* (1949) 336 U.S. 106, 112-113 [93 L.Ed. 533, 540, 69 S.Ct. 463]
> (Jackson, J., conc.), (*See also Werner v. Southern Cal. etc. Newspapers*
> (1950) 35 Cal.2d 121, 131-132.)

*U.S. Steel. v. P.U.C.*, 29 Cal.3d 603, 611-12 (1981) (emphasis added).

      Defendant's motion completely ignores the second type of equal protection violation,

i.e., that involving laws which unequally impinge on the exercise of fundamental rights. "We

have long been mindful that where fundamental rights and liberties are asserted under the

Equal Protection Clause, classifications which might invade or restrain them must be closely

scrutinized and carefully confined." *Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 670

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

1   (1966) (striking down poll tax). "Even though Plaintiffs do not constitute a suspect class,

2   heightened scrutiny my be required where fundamental interests are at issue." *Hydrick. v.*

3   *Hunter,* 466 F.3d 676, 700 (9th Cir. 2006). *Skinner v. Oklahoma*, 3176 U.S. 535, 541 (1942);

4   see also *Shapiro v. Thompson*, 394 U.S. 618, 634 (1969) (original emphasis) ("any

5   classification which serves to penalize the exercise of that [constitutional] right, unless shown

6   to be necessary to promote a *compelling* governmental interest, is unconstitutional").

7       The "compelling governmental interest" test also applies to laws bearing on First

8   Amendment rights. In *Williams v. Rhodes*, 393 U.S. 23 (1968), the Supreme court struck

9   down an Ohio law that required new political parties to gather signatures amounting to 15%

10  of the past gubernatorial vote in order to secure a place on the ballot. Established parties

11  could maintain their position by garnering 10% of the vote. The Court held that the law

12  burden "two different, although overlapping, kinds of rights -- the right of individuals to

13  associate for the advancement of their political beliefs, and the right of qualified voters,

14  regardless of the political persuasion, to cast their votes effectively." *Id*. at 30. The Court

15  held that only a showing of a compelling state interest could justify the law. *Id*. at 31.

16      Similarly, under California law, where a law makes distinctions "involving 'suspect

17  classifications' *or touching on 'fundamental interests'*", the "rational relationship" test gives

18  way to a "more stringent test," in which courts adopt "an attitude of active and critical

19  scrutiny." *Kasler v. Lockyer*, 23 Cal.4[th] 472, 480 (2000) (emphasis added). In such cases, "the

20  state bears the burden of establishing not only that it has a compelling interest which justifies

21  the law but that the distinctions drawn by the law are necessary to further its purpose." *Id*.

22      In the instant case, the Ordinance draws two distinctions that have a direct bearing on

23  the fundamental interest of free speech. The Ordinance singles out persons approaching

24  abortion clinics as a class to be specially isolated from speech, and correspondingly burdens

25  the speech activity of those who wish to communicate with them. This clearly violates the

26  teachings of *Kasler* unless the City can show a compelling state interest.

27

28

**OPPOSITION TO MOTION TO DISMISS**                    C07-06411 CRB     Page 18

1    The City has not asserted a *compelling* interest to justify these classifications, and has not

2  and cannot show that these classifications are necessary to serve any asserted interest.

3

4                                 **CONCLUSION**

5      Plaintiff has adequately pled federal and state constitutional claims under the First and

6  Fourteenth Amendment to the federal Constitution and under Article I, §§2 and 7 of the state

7  constitution. The court should deny the Defendant's Motion to Dismiss.

8

9

10  Dated: July 31, 2008

11                                              _____

12                                              MICHAEL MILLEN, ESQ.
                                                ATTORNEY FOR PLAINTIFF

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28