1  ANGELA L. PADILLA (CA STATE BAR NO. 154863)
2  SARAH C. MARRIOTT (CA STATE BAR NO. 241301)
   ERIN H. REDING (CA STATE BAR NO. 252691)
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   405 Howard Street
4  San Francisco, CA 94105
   Telephone:    415-773-5700
5  Facsimile:    415-773-5759

6
   JOHN A. RUSSO (CA STATE BAR NO. 129729)
7  VICKI LADEN (CA STATE BAR NO. 130147)
   CITY OF OAKLAND
8  1 Frank Ogawa Plaza, 6th Floor
   Oakland, CA 94612
9  Telephone:    510-238-4941
   Facsimile:    510-238-6500
10

11 Attorneys for Defendant
   CITY OF OAKLAND
12

13                  UNITED STATES DISTRICT COURT

14                 NORTHERN DISTRICT OF CALIFORNIA

15

16 WALTER B. HOYE, II,                  CASE NO.  C07-06411 CRB

17              Plaintiff,              **REPLY IN SUPPORT OF
                                        DEFENDANT'S MOTION TO
18      v.                              DISMISS PLAINTIFF'S FIRST
                                        AMENDED COMPLAINT**
19 CITY OF OAKLAND,
                                        Date:       August 29, 2008
20              Defendant.              Time:       10:00 A.M.
                                        Judge:      Honorable Charles Breyer
21                                      Courtroom:  8, 19th Floor

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ....................................................................................................... 1

II.   THE ORDINANCE IS A FACIALLY CONSTITUTIONAL TIME, PLACE,
      AND MANNER RESTRICTION........................................................................... 1

      A.    Plaintiff Has Not Alleged Facts Sufficient To Show That The Ordinance Is
            Content-Discriminatory........................................................................... 2

            1.    The Amendment of the Ordinance Does Not Make It Content-
                  Discriminatory................................................................................. 2

            2.    The Ordinance's Application to Reproductive Health Care Facilities
                  Does Not Make it Content-Discriminatory ............................... 3

            3.    The Ordinance Is Not Content Based Simply Because It Fails To
                  Regulate Panhandling.................................................................. 3

            4.    The Ordinance Meets The Standard For "Content Neutrality" Set
                  Forth in Hill................................................................................. 4

      B.    The Ordinance Is Narrowly Tailored Under The Standards Of Hill, And
            Plaintiff Has Not Alleged Any Facts Demonstrating Otherwise ........... 5

III.  THE ORDINANCE IS CONSTITUTIONAL AS APPLIED.................................. 6

      A.    Plaintiff Has Not Alleged Facts Demonstrating Selective Prosecution ........ 6

            1.    Plaintiff Relies On Case Law Vacated By The United States
                  Supreme Court ............................................................................. 7

            2.    Plaintiff Has Not Alleged Facts Demonstrating Either Element Of
                  A Successful Selective Prosecution Claim ............................... 7

      B.    The Ordinance is Narrowly Tailored As Applied ................................. 8

IV.   THE ORDINANCE IS NOT UNCONSTITUTIONALLY VAGUE.................... 9

V.    THE ORDINANCE DOES NOT VIOLATE THE EQUAL PROTECTION
      CLAUSE OF THE UNITED STATES CONSTITUTION ................................. 10

      A.    The Ordinance Is Not Subject to Equal Protection Review.................. 10

      B.    The Ordinance Would Survive Equal Protection Scrutiny Even If It Were
            Applicable ..................................................................................... 11

VI.   THE ORDINANCE DOES NOT VIOLATE THE EQUAL PROTECTION
      CLAUSE OF THE CALIFORNIA CONSTITUTION.................................... 11

VI.   CONCLUSION..................................................................................... 12

1

# TABLE OF AUTHORITIES
## FEDERAL CASES

2

3

*American-Arab Anti-Discrimination Committee* v. *Reno*,
   119 F.3d 1367 (9th Cir. 1997) ...............................................................7

4

*Bordenkircher* v. *Hayes*,
   434 U.S. 357 (1978)...............................................................................8

5

6

*City of Cleburne* v. *Cleburne Living Center*,
   473 U.S. 432 (1985).............................................................................11

7

8

*Frisby* v. *Schultz*,
   487 U.S. 474 (1988)...............................................................................1

9

*Harper* v. *Va. Bd. Of Elections*,
   383 U.S. 663 (1966).............................................................................10

10

11

*Hill* v. *Colorado*,
   530 U.S. 703 (2000)...................................................................... *passim*

12

13

*Hydrick* v. *Hunter*,
   466 F.3d 676 (9th Cir. 2006) ...............................................................10

14

*Hydrick* v. *Hunter*,
   500 F.3d 978 (9th Cir. 2007) ...............................................................10

15

16

*Madsen* v. *Women's Health Center, Inc.*,
   512 U.S. 753 (1994)...............................................................................6

17

18

*Perry Education Ass'n* v. *Perry Local Educators Ass'n*,
   460 U.S. 37 (1983).................................................................................1

19

20

*Personnel Adm'r of Mass. V. Feeney*,
   442 U.S. 256 (1979)...............................................................................8

21

22

*Police Dep't of Chicago* v. *Mosley*,
   408 U.S. 92 (1972).............................................................................3, 11

23

24

*Reno* v. *American-Arab Anti-Discrimination Committee*,
   525 U.S. 471 (1999)...............................................................................7

25

26

*Schenck* v. *Pro-Choice Network of Western New York*,
   519 U.S. 357 (1997)...............................................................................3

27

28

1

# TABLE OF AUTHORITIES
## FEDERAL CASES
### (continued)

*Shapiro* v. *Thompson*,
        394 U.S. 618 (1969) ...................................................................................10

*Skinner* v. *Okla.*,
        316 U.S. 535 (1942) ...................................................................................10

*United States* v. *Bourgeois*,
        964 F.2d 935 (9th Cir. 1992) .........................................................................7

*Ward* v. *Rock Against Racism*,
        491 U.S. 781 (1989) .....................................................................................1

*Wayte* v. *United States*,
        470 U.S. 598 (1985) .....................................................................................8

*Williams* v. *Rhodes*,
        393 U.S. 23 (1968) .....................................................................................10

## STATE CASES

*In re Marriage Cases*,
        43 Cal. 4th 757 (2008) ...............................................................................11

*Mejia* v. *City of Los Angeles*,
        156 Cal. App. 4th 151 (2007) ......................................................................12

*Planned Parenthood Shasta-Diablo* v. *Williams*,
        20 Cal. 4th 1009 (1995) ................................................................................6

I.     **INTRODUCTION**

Plaintiff has alleged no facts showing that Oakland's Ordinance is unconstitutional either on its face or as applied. Indeed, the Supreme Court's decision in *Hill v. Colorado*, 530 U.S. 703 (2000), upholding a nearly identical Colorado statute, makes it clear that he could allege no such facts. The Ordinance as written is a valid content-neutral time, place and manner restriction, and plaintiff's arrest complied with its terms. The City of Oakland respectfully requests that the Court dismiss plaintiff's entire complaint with prejudice.

II.    **THE ORDINANCE IS A FACIALLY CONSTITUTIONAL TIME, PLACE, AND MANNER RESTRICTION**

The government may regulate the time, place and manner of speech in public places – such as sidewalks outside reproductive health care facilities – if the regulations are content-neutral, narrowly tailored to serve a significant or legitimate government interest, and leave open ample alternative channels of communication. *Perry Education Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37, 45 (1983); *see also Ward v. Rock Against Racism*, 491 U.S. 781, 798-99 (1989) ("we reaffirm today that a regulation of the time, place or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but that it need not be the least restrictive or lease intrusive means of doing so").[1] The Supreme Court's decision in *Hill v. Colorado*, 530 U.S. 703 (2000), interpreting a statute nearly identical to the Oakland Ordinance, conclusively shows that the Ordinance is a valid time, place, and manner restriction. Plaintiff has not alleged any facts – and indeed, could allege no set of facts – demonstrating otherwise. Dismissal of plaintiff's facial challenge to the Ordinance for failure to state a claim is warranted.

---

[1] The City notes that the Supreme Court has variously referred to the type of government interest required for valid time, place and manner restrictions as "legitimate," "important," "significant," and "substantial." As discussed infra at Section II(B), however, it is clear that the City's interests here pass muster no matter which terminology is used.

**A.**  **Plaintiff Has Not Alleged Facts Sufficient To Show That The Ordinance Is Content-Discriminatory.**

**1.**  **The Amendment of the Ordinance Does Not Make It Content-Discriminatory.**

Plaintiff claims that the City's amendment of the original ordinance in response to his lawsuit shows that the Ordinance is content-discriminatory, suggesting that the City's adoption of the Ordinance was motivated by the behavior of anti-abortion protesters in the vicinity of health care clinics. P. Br. at 4. But even were this Court to accept plaintiff's suggestion, it would not prove that the Ordinance discriminates based on content. As the Supreme Court stated in *Hill*:

> . . . [T]he contention that a statute is "viewpoint based" simply because its enactment was motivated by the conduct of the partisans on one side of the debate is without support. . . . The antipicketing ordinance upheld in *Frisby v. Schultz*, 487 U.S. 474 (1988), a decision in which both of today's dissenters joined, was obviously enacted in response to the activities of antiabortion protesters who wanted to protest at the home of a particular doctor to persuade him and others that they viewed his practice of performing abortions to be murder. We nonetheless summarily concluded that the statute was content neutral.

*Hill*, 530 U.S. at 724-25. The *Hill* Court upheld the Colorado statute, despite the fact that "the legislative history makes it clear that its enactment was primarily motivated by activities in the vicinity of abortion clinics." *Hill*, 530 U.S. at 715.

The text of the Ordinance itself belies the inference plaintiff tries to draw from the City's amendment of the original ordinance. The Ordinance expressly refers to the City's reasons for enactment – which include protecting citizens' access to reproductive health care and privacy in doing so – and makes no content-based differentiation on the regulated speech. *See* Docket No. 23-2. Furthermore, plaintiff's suggestion that a statute or ordinance is constitutionally infirm simply by virtue of the fact that the government amended it to remove a perceived constitutional infirmity makes no logical sense. Plaintiff's interpretation would eliminate any incentive for governmental entities to amend a statute in a good-faith effort to abide by constitutional rules.

2.    **The Ordinance's Application to Reproductive Health Care Facilities Does Not Make it Content-Discriminatory.**

Plaintiff also argues that the Ordinance is content-discriminatory because it applies only to speech in the vicinity of reproductive health care facilities, as opposed to health care facilities more generally, *see* P. Br. at 4. This argument is unavailing. Justice Kennedy argued this point in dissent in *Hill*, stating: "We would close our eyes to reality were we to deny that 'oral protest, education, or counseling' outside the entrances to medical facilities concern a narrow range of topics – indeed, one topic in particular. By confining the law's application to the specific locations where the prohibited discourse occurs, the State has made a content-based determination." *Hill*, 530 U.S. at 767 (Kennedy, J., dissenting). The Court majority, however, specifically rejected that contention, stating that a "statute prohibiting solicitation in airports that was motivated by the aggressive approaches of Hari-Krishnas does not become content based solely because its application is confined to airports – the specific location where that discourse occurs." *Id.*, 530 U.S. at 724 (internal quotation marks omitted).

3.    **The Ordinance Is Not Content Based Simply Because It Fails To Regulate Panhandling.**

Plaintiff argues that the Ordinance is content-based because it regulates one category of speech – "protest, education, and counseling" – while leaving unregulated another category of speech – panhandling – that plaintiff considers equally objectionable. P. Br. at 6. He asserts that the *Hill* Court did not consider this argument when it upheld the Colorado statute. *Id.* The *Hill* Court's failure to consider whether the "protest, education, and counseling category" of speech can be regulated when panhandling is not is irrelevant, given the established Supreme Court jurisprudence upholding such regulations. All of the Supreme Court precedents establish that regulations targeted at only one category of speech, including categories analogous to protest, education, and counseling, are valid as long as they meets the standards for permissible time, place, and manner regulations. *See Schenck v. Pro-Choice Network of Western New York*, 519 U.S. 357, 380 (1997) (upholding injunction prohibiting "demonstrations" outside abortion clinics); *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 98 (1972) ("We have continually

1  recognized that reasonable time, place and manner regulations of picketing may be necessary to

2  further significant governmental interests." (internal quotation marks omitted)).  It is settled that

3  content-neutral, appropriately tailored regulations of only one category of speech – whether it is

4  "demonstrating," "picketing," or "protest, education and counseling" – are permissible.[2]

5  Plaintiff's invitation to ignore this precedent should not be accepted.

6  **4.    The Ordinance Meets The Standard For "Content Neutrality" Set Forth in _Hill_.**

7         The Supreme Court in _Hill_ found that the Colorado statute met the "content

8  neutrality" test for three reasons:

9         First, it is not a regulation of speech.  Rather, it is a regulation of
   the places where some speech may occur.  Second, it was not
10        adopted because of disagreement with the message it conveys.
   This conclusion is supported . . . by the State Supreme Court's
11        unequivocal holding that the statute's restrictions apply equally to
   all demonstrators, regardless of viewpoint, and the statutory
12        language makes no reference to the content of the speech.  Third,
   the State's interests in protecting access and privacy, and providing
13        the police with clear guidelines, are unrelated to the content of the
   demonstrators' speech.  As we have repeatedly explained,
14        government regulation of expressive activity is content neutral if it
   is justified without reference to the content of regulated speech.
15

16  _Hill_, 530 U.S. at 719-20 (internal quotation marks omitted).

17        These three rationales apply equally to Oakland's ordinance.  Like the Colorado

18  statute, which applied to speech only in the vicinity of health care facilities, the Oakland

19  ordinance applies to speech only in the vicinity of reproductive health care facilities.  _See_ Docket

20  No. 23-2, at 4 (regulating speech within 100 feet of the entrance of a reproductive health care

21  facility); _Hill_, 530 U.S. at 707 (the "Colorado statute . . . regulates speech-related conduct within

22  100 feet of the entrance to any heath care facility").  Like the Colorado statute, the Oakland

23  Ordinance applies equally to demonstrators of all viewpoints and the statutory language makes

24

25  [2] The _Hill_ Court was undeniably aware that the Colorado statute criminalized only one category
   of speech – protest - while permitting other categories of speech. As Justice Scalia noted in
26  dissent, a "speaker wishing to approach another for the purpose of communicating _any_ message
   except one of protest, education, or counseling may do so without first securing the other's
27  consent." _Hill_, 530 U.S. at 742 (Scalia, J., dissenting).

28

1    no reference to the content of the speech. *See* Docket No. 23-2 (generally). Like the Colorado

2    statute, the Oakland Ordinance was motivated by the City's interest in protecting access and

3    privacy, interests unrelated to the content of anyone's speech. *See* Docket No. 23-2, at 2 ("The

4    City Council finds that every person in the City of Oakland has a basic and fundamental right to

5    privacy protected by the United States Constitution and explicitly guaranteed in California's

6    Constitution . . . including the right to seek and obtain all health care services, permitted under

7    the laws of this State. Central to this right is the need to secure access to all reproductive health

8    care services. Access to these services is a matter of critical importance not only to the

9    individual, but also to the health and welfare of all residents of the City of Oakland and the

10    region.").

11         **B.**      **The Ordinance Is Narrowly Tailored Under The Standards Of *Hill*, And**

12                **Plaintiff Has Not Alleged Any Facts Demonstrating Otherwise.**

13         Plaintiff asserts that the Ordinance is not narrowly-tailored because *Hill*

14    recognized access to health care as a legitimate, but not necessarily important, government

15    interest and because existing laws adequately protect this right. P. Br. at 8-9. These arguments

16    do not suffice to state a claim that the Ordinance is not narrowly tailored.

17         As articulated by the Supreme Court in *Hill*, the narrow tailoring requirement is

18    met if (1) the regulation serves legitimate content-neutral interests, *see Hill*, 726 n. 32, and (2)

19    "does not entirely foreclose any means of communication," *see id.* at 726. Plaintiff admits that

20    the City's interest in protecting access to health is legitimate, although he contends that the

21    Supreme Court has not held this interest to be "important" or "significant." P. Br. at 8. But even

22    assuming plaintiff is correct that a regulation cannot meet the narrow tailoring requirement

23    unless it serves a "significant" rather than a merely "legitimate" government interest, the City's

24    interests here clearly meet either standard. The *Hill* Court "noted that the [Colorado] statute

25    serves governmental interests that are significant and legitimate." *Hill*, 530 U.S. at 725. The

26    Court gave no indication that both of these adjectives did not apply to the state's interest in

27    safeguarding access to health care. The Court later reasoned that "[p]ersons who are attempting

28    to enter heath care facilities – <u>for any purpose</u> – are often in particularly vulnerable physical and

1    emotional conditions. The State of Colorado has responded to its substantial and legitimate

2    interest in protecting these persons from unwanted encounters, confrontations, and even assaults

3    by enacting an exceedingly modest restriction on the speakers' ability to approach." *Hill*, 530

4    U.S. at 729 (emphasis added). *See also Madsen v. Women's Health Center, Inc.*, 512 U.S. 753,

5    767-68 (1994) (agreeing with Florida Supreme Court that state interests including "protecting a

6    woman's freedom to seek lawful medical or counseling services in connection with her

7    pregnancy" and "medical privacy" justified an injunction against abortion protesters outside

8    clinics); *Planned Parenthood Shasta-Diablo v. Williams*, 20 Cal.4th 1009, 1014 (1995) (holding

9    that a buffer zone outside a family planning clinic "was amply justified by the significant state

10   interest in preserving the health and safety of patients entering and receiving a medical facility"

11   and that the state had a "legitimate interest in seeing to it that an abortion . . .is performed under

12   circumstances that *insure maximum safety for the patient*") (emphasis in original)).

13            If a content-neutral regulation furthers interests that are legitimate or significant,

14   the state's <u>method</u> for regulating speech passes muster under the narrow tailoring requirement as

15   long as it "does not entirely foreclose any means of communication" – even though "it is not the

16   least restrictive or lease intrusive means of serving the statutory goal." *Hill*, 530 U.S. at 726.

17   Given that the methods used by the Oakland Ordinance (regulation of speech within 100 feet of a

18   facility, barring approach within 8 feet for the purposes of protest, education, or counseling) are

19   virtually identical to those approved by the Supreme Court in *Hill*, it is clear that the Ordinance

20   is narrowly tailored.[3]

21   **III.    THE ORDINANCE IS CONSTITUTIONAL AS APPLIED**

22        **A.    Plaintiff Has Not Alleged Facts Demonstrating Selective Prosecution.**

23            Plaintiff argues that the Ordinance is unconstitutional as applied because the City

24

25   [3] Plaintiff's contention that existing laws already adequately protect access to reproductive health
     services is simply irrelevant. The City notes that the federal Freedom of Access to Clinic
26   Entrances Act, which plaintiff cites in support of this contention, was passed in 1994, just after
     the Colorado statute at issue in *Hill* was enacted and long before the Supreme Court held that the
27   statute was narrowly tailored.

28

engaged in selective prosecution. P. Br. at 10-11. By arguing that Hoye was arrested while the clinic escorts were not, plaintiff attempts to demonstrate inconsistent application of the Ordinance. Plaintiff, however, fails to make a *prima facie* case of selective prosecution.

### 1.    Plaintiff Relies On Case Law Vacated By The United States Supreme Court.

Plaintiff's argument relies on *American-Arab Anti-Discrimination Committee v. Reno*. 119 F.3d 1367 (9th Cir. 1997). Plaintiff, however, fails to note that the case was overruled by the United States Supreme Court and the Ninth Circuit opinion was vacated. *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999). Furthermore, Justice Scalia's majority opinion in *Reno* reasoned that "a selective prosecution claim is a *rara avis*. Because such claims invade a special province of the Executive – its prosecutorial discretion – we have emphasized that the standard for proving them is particularly demanding." *Id.* at 489 (emphasis in original). Scalia went on to note that "the decision to prosecute is particularly ill-suited to judicial review." *Id.* at 489-490.

### 2.    Plaintiff Has Not Alleged Facts Demonstrating Either Element Of A Successful Selective Prosecution Claim.

To succeed on a selective prosecution claim, plaintiff must demonstrate <u>both</u> that (1) others similarly situated have not been prosecuted; and (2) that the prosecution is based on an impermissible motive. *United States v. Bourgeois*, 964 F.2d 935, 938 (9th Cir. 1992).

#### a.    Plaintiff And The Clinic Escorts Are Not Similarly Situated.

Plaintiff is not similarly situated to the clinic escorts. The escorts are essentially employees of the clinic and, as such, plaintiff urges an interpretation of the Ordinance that defies common sense. Plaintiff refers to the statute in *Hill* to argue that nothing "nothing remotely suggests that escorts or other clinic personnel were exempted from its provisions." P. Br. at 10. As a result, plaintiff advocates that the statute in *Hill* and the Oakland Ordinance apply to escorts and other clinic personnel. This interpretation would require police to arrest the clinic director herself if she approached a patient and told them where to park their car, a clinic staff member

1   who approached a patient and told them the hours of operation for the clinic, or a treating

2   physician who was welcoming a patient as he or she attempted to enter the clinic.  The idea that

3   the police must arrest a clinic escort who is simply helping a client find their way to the front

4   door, is inconceivable.

**b.    Enforcement of the Ordinance is Not Based on an Impermissible Motive.**

7          A decision to prosecute or enforce cannot be "deliberately based upon an

8   unjustifiable standard such as race, religion or other arbitrary classification." *Bordenkircher v.*

9   *Hayes*, 434 U.S. 357, 364 (1978).  Plaintiff can point to no such impermissible motive here.  The

10  nearest plaintiff comes to an allegation of impermissible motive is his suggestion that the City

11  enacted the original Ordinance expressly to address the actions of anti-abortion protestors who

12  were harassing patients as they attempted to access the clinic.  *See* P. Br. at 4.  As discussed

13  above, however, the Ordinance is not constitutionally infirm.  A statute can be content-neutral

14  even if its enactment was motivated by the actions of people on one side of the debate.  *Hill*, 530

15  U.S. at 724-725; *supra* at 2.

16         Furthermore, "discriminatory purpose implies more than intent as volition or

17  intent as awareness of consequences.  It implies that the decisionmaker . . . selected or reaffirmed

18  a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse

19  effects upon an identifiable group." *Personnel Adm'r of Mass. V. Feeney*, 442 U.S. 256 (1979).

20  Plaintiff has not alleged that the City enforced the statute against him <u>because of</u> his protest

21  activities and "absent such a showing, his claim of selective prosecution fails." *Wayte v. United*

22  *States*, 470 U.S. 598, 610 (1985).

**B.    The Ordinance is Narrowly Tailored As Applied.**

24         Plaintiff claims that the Ordinance is not narrowly tailored as applied.  He first

25  argues, relying on *Hill*'s discussion of "unwilling listeners," that the Ordinance improperly

26  restricts speech even where the individual approached might be willing to listen.  P. Br. at 12-14.

27  The Ordinance, however, restricts only speech directed at individuals who have not consented,

28  and plaintiff has not alleged any facts showing that the Ordinance has been applied otherwise.

1    Docket No. 23-2, Request for Judicial Notice, Ex. A, at 4.  In addition, plaintiff's analysis has no

2    application to the narrow tailoring requirement.  *Hill* discussed the rights of unwilling listeners

3    only in its analysis of whether the Colorado statute served legitimate or significant governmental

4    interests.  *See Hill*, 530 U.S. at 715-18.  The *Hill* Court referred to governmental interests in its

5    narrow tailoring analysis only to note that the state's interests served by the Colorado statute

6    were clearly "significant" and "legitimate."  *Id.* at 725.  As discussed above in Section II(B), the

7    City's interests here are both significant and legitimate.  And plaintiff cannot dispute that the

8    methods used by the City to further its interests were narrowly tailored.  These methods are

9    virtually identical to those in the Colorado statute, which was upheld in *Hill*.

10           Plaintiff also argues that the Ordinance is not narrowly tailored because it restricts

11   some leafletting but does not restrict commercial solicitation.  This argument fails for the reasons

12   stated above in Section II(A)(3).

13           Finally, plaintiff argues that the Ordinance is not narrowly tailored because it

14   prohibits him from "being within" eight feet of escorts, clinic personnel, or patients while within

15   100 feet of a health care facility.  P. Br. at 15.  The Ordinance, however, does not bar plaintiff

16   from "being within" eight feet, but rather from "willingly and knowingly approaching" within

17   eight feet.  Docket No. 23-2, at 4.  This is the very conduct for which plaintiff was arrested.

18   Docket No. 32, Supp. Laden Decl., Exs. C-G (plaintiff approached within eight feet of at least

19   eight different patients or their families or significant others).

20           For these reasons and those stated above in Section II(B), plaintiff has failed to

21   state a claim that the Ordinance is not narrowly tailored.

22   **IV.    THE ORDINANCE IS NOT UNCONSTITUTIONALLY VAGUE**

23           Plaintiff's argument that the Ordinance is unconstitutionally vague should be

24   rejected because, like the Colorado statute in *Hill*, "it is clear what the ordinance as a whole

25   prohibits."  *Hill*, 530 U.S. at 733; Defendant's Opening Brief at 5.  It prohibits the non-

26   consensual approach with eight feet of persons seeking to enter or exit the facility for the

27   purposes of counseling, harrassing, or interfering with that person.  Docket No. 23-2, at 4.  This

28   prohibition is not unconstitutionally vague.

1    **V.    THE ORDINANCE DOES NOT VIOLATE THE EQUAL PROTECTION**
2    **CLAUSE OF THE UNITED STATES CONSTITUTION**

3    **A.    The Ordinance Is Not Subject To Equal Protection Review.**

4    Plaintiff correctly notes that fundamental rights are afforded protection under the

5    Equal Protection Clause of the United States Constitution.[4] P. Br. at 17. However, Plaintiff

6    incorrectly suggests that content-neutral regulations of speech are subject to a strict scrutiny

7    equal protection analysis. *Id.* at 17-18. This is simply not the case. To establish this

8    proposition, Plaintiff cites six cases that applied the strict scrutiny standard. *Id.* However, not

9    one of those cases is in the realm of the freedom of speech. Instead, plaintiff's cases confront

10   various irrelevant topics, including the sterilization of criminals and the right to procreate

11   (*Skinner v. Okla.*, 316 U.S. 535, 541 (1942)), poll taxes and the right to vote (*Harper v. Va. Bd.*

12   *Of Elections*, 383 U.S. 663 (1966)), access to the courts and the right to personal security

13   (*Hydrick*, 466 F.3d 676), the right of interstate movement (*Shapiro v. Thompson*, 394 U.S. 618

14   (1969)), and the right to vote and to associate regarding political beliefs (*Williams v. Rhodes*, 393

15   U.S. 23 (1968)).

16   The Equal Protection Clause is violated only where a regulation of speech

17   discriminates on the basis of content. *See Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 96

18   (1972) ("under the Equal Protection Clause . . . government may not grant the use of a forum to

19   people whose views it finds acceptable, but deny use to those wishing to express less favored or

20   more controversial views"). As described above, the Ordinance is a non-discriminatory, content-

21   neutral time, place and manner restriction, and therefore does not implicate the Equal Protection

22   Clause.

23
24
25   [4] In arguing his equal protection claims, Plaintiff again turned to case law that has been vacated
26   and overruled. *Hydrick v. Hunter* was reversed by the Ninth Circuit one year later. 466 F.3d 676
27   (9th Cir. 2006); *Hydrick v. Hunter*, 500 F.3d 978 (9th Cir. 2007).
28

**B.    The Ordinance Would Survive Equal Protection Scrutiny Even If It Were Applicable.**

Even if equal protection analysis applied here, the Ordinance would meet the strictures of the Constitution, which require simply that "discriminations among [speakers] be tailored to serve a substantial government interest." *Mosley*, 408 U.S. at 99. This tailoring requirement parallels the requirement of First Amendment analysis that content-neutral regulations be narrowly tailored to serve legitimate or substantial government interests. *See id.* (invalidating the subject regulation because "[f]ar from being tailored to a substantial government interest, the discrimination among pickets is based on the content of their expression").[5] As discussed in detail above, the Ordinance is content-neutral and narrowly tailored to serve the legitimate and substantial state interest of safeguarding access to reproductive health care. *See Hill*, 530 U.S. at 725 (noting that the nearly identical Colorado statute "serve[d] governmental interests that are significant and legitimate"). The Ordinance therefore would survive any applicable equal protection scrutiny.

**VI.    THE ORDINANCE DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE OF THE CALIFORNIA CONSTITUTION**

Plaintiff alleges that the Ordinance violates the Equal Protection Clause of the California Constitution. P. Br. at 17-19. To engage in an Equal Protection Clause analysis under the California Constitution, the Ordinance at issue must contain a distinction differentiating between classes of people: white versus black, married versus unmarried, etc. As recently articulated by the California Supreme Court in *In re Marriage Cases*, strict scrutiny is only applied "when the distinction drawn by a statute" rests on a protected class or impinges upon a fundamental right. 43 Cal.4th 757, 783 (2008) (emphasis added). The Ordinance at issue in this case contains no distinction. It does not distinguish between those who support and those who oppose abortion.

---

[5] Furthermore, "when social . . . legislation is at issue, the Equal Protection Clause allows the States wide latitude." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440-41 (1985).

1    Instead it simply forbids particular types of behavior outside a reproductive health facility. *See*

2    Docket No. 23-2.

3        Furthermore, the Ordinance is more a conduct-regulating statute that burdens speech only

4    incidentally.  It regulates what people can <u>do</u> outside a reproductive health facility (i.e. approach

5    patients in order to engage in counseling).  All speech, whether "pro-life" or "pro-choice" is

6    allowed so long as the speaker does not engage in threats or violence, and remains a safe eight

7    feet away from the listener.  The *Hill* Court established that "government regulation of

8    expressive activity is content neutral if it is justified and without reference to the content of

9    regulated speech." *Hill, 530 U.S. at 719-20* (internal quotation marks omitted).  Furthermore,

10   California courts have held that "[l]aws that cause some incidental restriction on conduct

11   protected by the First Amendment but do not regulate the content of the expression generally are

12   evaluated under the less stringent standard. . . .an important government interest in regulating the

13   nonspeech element can justify incidental restrictions on the right of free speech." *Mejia v. City*

14   *of Los Angeles*, 156 Cal.App.4th 151, 153 (2007).  As discussed above, the government interest

15   of ensuring the safety of its citizens in accessing reproductive health care is clearly important.

16   *Supra* at 5-6.

17   **VI.    CONCLUSION**

18       In the City Council's own words, "safe and unimpeded access to reproductive

19   health care services is critically and uniquely important to the public health, safety, and welfare."

20   Docket No. 23-2, at 1.  In order to safeguard this interest, the City Council enacted a content-

21   neutral Ordinance regulating speech only as to its time, place and manner.  The Ordinance is

22   clearly constitutional under the Supreme Court's decision in *Hill*, and plaintiff has alleged no

23   facts showing that it was applied to him in an unconstitutional manner.  For these reasons and

24   those stated above, the City respectfully requests that the Court dismiss plaintiff's complaint with

25   prejudice.

26   //

27   //

28   //

1

2  Dated: August 13, 2008

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANGELA L. PADILLA
SARAH C. MARRIOTT
ERIN H. REDING
ORRICK, HERRINGTON & SUTCLIFFE LLP


                    /s/ Angela L. Padilla
                    Angela L. Padilla
                  Attorneys for Defendant
                     City of Oakland

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S COMPLAINT