**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER B. HOYE, II,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF OAKLAND,<br><br>    Defendant.<br>_____/ | No. C 07-06411 CRB<br><br>**ORDER GRANTING FEES** |

Plaintiff Walter Hoye moves for attorneys' fees in this case. See Mot. (dkt. 223). The Court finds that Plaintiff is the prevailing party, but that his success in the case was limited. Accordingly, the Court GRANTS Plaintiff's fee motion, but reduces his fee award, as explained below.

**I.   BACKGROUND**

The City of Oakland's "bubble ordinance" creates an eight-foot buffer around people seeking access to reproductive health care clinics ("clinics"). See Hoye v. Oakland, 653 F.3d 835, 841 (9th Cir. 2011). The Ordinance provides that within 100 feet of a clinic, it is unlawful to "willfully and knowingly approach within eight (8) feet of any person seeking to enter such a facility, or any occupied motor vehicle seeking entry, without the consent of such person or vehicle occupant, for the purpose of counseling, harassing, or interfering with such person or vehicle occupant." See id.

1    Plaintiff, a pro-life "sidewalk counselor" in Oakland, <u>id.</u> at 839, brought suit, claiming
2 that the Ordinance was unconstitutional on its face and as-applied, <u>see generally</u> <u>id.</u>
3 Following extensive litigation, the Court in August 2009 granted Defendant's motion for
4 summary judgment, upholding the constitutionality of the Ordinance. <u>See generally</u> Order re
5 MSJ (dkt. 152). This Court held that the Ordinance was constitutional facially and as-
6 applied; one key to the latter holding was the Court's conclusion it did not violate the
7 Ordinance when volunteer escorts approached women for the purpose of facilitating access
8 to the clinic. <u>Id.</u> at 11.

9    The Ninth Circuit in July 2011 affirmed in part and reversed in part, concluding that,
10 although the Ordinance was constitutional on its face, Oakland's enforcement policy was a
11 constitutionally invalid, content-based regulation of speech. <u>See</u> <u>Hoye</u>, 653 F.3d at 859. The
12 Ninth Circuit noted that a "theme central to [Plaintiff's] challenge is his contention that
13 Oakland does not enforce the Ordinance evenhandedly." <u>Id.</u> at 840. Agreeing with that
14 contention, the court found that "[t]he City's policy of distinguishing between speech that
15 facilitates access to clinics and speech that discourages access is not content-neutral." <u>Id.</u> at
16 851. The Ninth Circuit therefore had to "craft a remedy designed to foreclose" Oakland from
17 enforcing the Ordinance as it was erroneously understood, "while preserving the facially
18 valid Ordinance." <u>Id.</u> at 856. The court remanded the case with instructions that this Court
19 grant Plaintiff's motion for summary judgment in part and grant relief consistent with its
20 opinion. <u>Id.</u> at 859.

21    This Court held a status conference in August, 2011. <u>See</u> Minutes (dkt. 191). The
22 City represented that it was revising its written enforcement policy to comply with the Ninth
23 Circuit's opinion; Plaintiff asserted that his vagueness challenge to the City's policy of
24 equating an outstretched arm to an approach was also up for reconsideration. The Court
25 allowed additional briefing on that subject. <u>See</u> Supplemental Briefs (dkts. 195, 196).
26 Plaintiff requested a permanent injunction, one of several in the case, based on the City's
27 proposed enforcement exemptions. <u>See</u> MPI (dkts. 199, 201). The Court then entered an
28 order directing Defendant to enforce the Ordinance in a manner consistent with the protocols

2

in the revised training materials, and declined to revisit the definition of the word "approach."[1]  See Order re Training Materials (dkt. 208).

The parties agreed that there were no factual or legal disputes for the Court to resolve, and submitted their own proposed judgments.  See Mot. for Entry of Judgment (dkt. 212); Response (dkt. 220).  The Court entered Plaintiff's proposed judgment on August 3, 2012.  See Judgment (dkt. 234).  Plaintiff then moved for attorneys' fees.  See Mot.

## II. LEGAL STANDARD

Under 42 U.S.C. § 1988, prevailing parties in civil rights cases are entitled to reasonable attorneys' fees under certain circumstances.  42 U.S.C. § 1988(b) (2012).  As an initial matter, a court must determine whether the party seeking fees has "prevailed."  See Friend v. Kolodzieczak, 72 F.3d 1386, 1389 (9th Cir. 1995).  Once a court determines that a civil rights plaintiff has prevailed, the court may award reasonable attorneys' fees.  Id.  To determine the amount of the award, a court usually begins by calculating the "lodestar" amount – the number of hours reasonably spent in achieving the results obtained multiplied by a reasonable hourly rate.  Id.  "A court may also consider other factors, including the degree of success obtained, and make adjustments to the lodestar accordingly."  Id. (citing Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir.1975)).

## III. DISCUSSION

Plaintiff seeks a total of $585,060.88 in fees and costs (reflecting his original $552,043.38 request, adjusted to correct for a couple of errors identified by Defendant, plus

---

[1] The Court explained:

> If the Ninth Circuit did not agree with this Court's discussion of "approach" as including a demonstrator who stands still but lifts his arm toward a patient, see dkt. 152 at 20-22, it could have said so.  What it held instead was, "Hoye's allegations of vagueness need not detain us.  Hoye contends that the Ordinance's use of the terms 'approach' and 'consent' are impermissibly vague. But the Ordinance uses these terms in precisely the same manner as the Colorado statute. . . . The Ordinance cannot therefore be vague in these respects for the same reasons that Hill held the Colorado statute not to be vague."  See Hoye, 653 F.3d at 849 n.11 (internal citation omitted).  The Ninth Circuit's partial reversal, based on "[t]he City's policy of distinguishing between speech that facilitates access to clinics and speech that discourages access," id. at 851, is not . . . an opportunity to revisit every other argument Plaintiff has as to the Ordinance's unconstitutionality.

Id. at 2-3.

3

$34,662.50 for work done in support of this Motion). See Reply (dkt. 229) at 15. Defendant opposes the Motion. The issues for the Court to determine are (A) whether Plaintiff is the prevailing party, and (B) if so, what a reasonable fee award would be.

**A.     Prevailing Party**

**1.     Legal Principles**

A plaintiff is a "prevailing party" if resolution of the case "changes the legal relationship between [the plaintiff] and the defendant." See Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989). A material "alteration of the legal relationship between the parties" may be effectuated by a judgment on the merits or a court-ordered consent decree. Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 605 (2001). Plaintiffs may be considered prevailing parties "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "A litigant need not prevail on every issue, or even on the 'central issue' in the case, to be considered the prevailing party. It is enough that he succeed 'on any significant claim affording some of the relief sought, either *pendente lite* or at the conclusion of the litigation.'" Stivers v. Pierce, 71 F.3d 732, 751 (9th Cir. 1995) (citing Tex. State Teachers Ass'n, 489 U.S. at 790-91).

**2.     Application to this Case**

Defendant argues that Plaintiff is not the prevailing party, asserting that "The Ordinance Plaintiff sought to enjoin remains in effect. Indeed, it is more secure than before, having been declared constitutional on its face." Mot. at 5. It further asserts that nothing has changed between the parties because Plaintiff still cannot come within eight feet of a patient seeking to enter a clinic without her consent, or thrust his arm within eight feet of such a person. Id. at 6.

Those arguments fail, because they speak to the extent to which Plaintiff prevailed; that he prevailed cannot reasonably be disputed. Plaintiff argued early on that "The OPD has an unwritten policy exempting from the reach of the Ordinance any person who approaches

4

1 and speaks to clients for the purposes of encouraging them to use clinic services. That same
2 unwritten policy holds that plaintiff is to be arrested if he approaches and speaks to clients
3 for the purposes of encouraging them to choose options other than utilizing clinic services."
4 First Amended Complaint ("FAC") (dkt. 38) ¶ 11. The Ninth Circuit recognized that a
5 "theme central to [Plaintiff's] challenge is his contention that Oakland does not enforce the
6 Ordinance evenhandedly." Hoye, 653 F.3d at 840. The Ninth Circuit agreed with Plaintiff
7 that "Oakland's enforcement policy is a constitutionally invalid, content-based regulation of
8 speech." Id. at 859. At the Ninth Circuit's direction, this Court on remand entered an order
9 directing Defendant to enforce the Ordinance in a manner consistent with the protocols in the
10 revised training materials. See Order re Training Materials. Those revised training materials
11 specify that: "According to the appellate court, [the eight foot bubble] applies equally to
12 protestors and escort volunteers. This is a change from the previous enforcement policy."
13 See Training Materials (dkt. 197-4) at 2. The Court entered judgment, reiterating that
14 Oakland's enforcement policy of exempting speech that facilitated access was
15 unconstitutional, and directing Oakland to enforce the Ordinance in an evenhanded matter.
16 See Judgment.

17 There can be no question, then, that Plaintiff achieved success on a "significant issue
18 in litigation which achieves some of the benefit [he] sought in bringing suit." See Hensley,
19 461 U.S. at 433. Plaintiff's legal relationship with Oakland has also arguably changed
20 because he now has a judgment stating that Oakland cannot enforce the Ordinance against
21 him any differently than it can someone with an opposing viewpoint. That is something he
22 did not have before. He is, therefore, the prevailing party. The Court now turns to the
23 question of a reasonable award.

24     **B.**     **Reasonable Award**

25         **1.**     **Legal Principles**

26 The Supreme Court in Hensley, 461 U.S. at 433, instructed that "[t]he most useful
27 starting point for determining the amount of a reasonable fee is the number of hours
28 reasonably expended on the litigation multiplied by a reasonable hourly rate." Counsel for

5

prevailing parties are to make a concerted effort to exclude excessive, redundant, or otherwise unnecessary hours. Id. at 434. However, "the product of reasonable hours times a reasonable rate does not end the inquiry," in light of other considerations that might lead a court to adjust a fee award up or down, such as the "results obtained." Id. The Court explained that "[t]his factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." Id. When that happens, courts are to ask (1) whether Plaintiff failed to prevail "on claims that were unrelated to the claims on which he succeeded"; and (2) whether Plaintiff "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. Id. Where a plaintiff has achieved only partial success, "the most critical factor is the degree of success obtained." Id. at 436. "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Id. at 440.

District courts must set forth a "concise but clear explanation of [their] reasons for the fee award." Id. at 437. This does not mean, however, that a district court must "set forth an hour-by-hour analysis of the fee request." Gates v. Deukmejian, 987 F.2d 1392, 1399 (9th Cir. 1992). Rather, "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure 'as a practical means of trimming the fat from a fee application.'" Id. (citing N.Y. State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983)); but see Moreno v. City of Sacramento, 534 F.3d 1106, 1116 (9th Cir. 2008) ("if all the district court offers is a conclusory statement that a fee request is too high, then we can't tell if the court is applying its superior knowledge to trim an excessive request or if it is randomly lopping off chunks of the winning lawyer's reasonably billed fees.").

### 2. Application to this Case

As an initial matter, the Court has reviewed Plaintiff's fee request and the billing records he submitted. Nothing about the hours Plaintiff's counsel worked on the litigation as a whole appear to the Court to be redundant or excessive. This was a heavily litigated civil rights case that began five years ago; it understandably consumed many hours of counsel's

6

1 time. Further, Plaintiff requests that his counsel be compensated at the rate of $550 per hour.
2 See Mot. at 10-13. Given the skill and experience of his counsel, and other like awards from
3 this district, that rate is appropriate. Notably, Defendant does not object to the $550 per hour
4 rate. See Opp'n (dkt. 224) at 2. Accordingly, the Court accepts Plaintiff's lodestar.
5 However, this is not the end of the inquiry. Hensley, 461 U.S. at 434 ("the product of
6 reasonable hours times a reasonable rate does not end the inquiry," in light of other
7 considerations that might lead a court to adjust a fee award up or down, such as the "results
8 obtained.").

9 Plaintiff argues that he achieved "excellent results," because his case "had one main
10 objective: to obtain declaratory injunctive relief protecting plaintiff's right to engage in free
11 speech activities on public sidewalks outside abortion clinics on equal terms with clinic
12 escorts and others espousing different viewpoints." Mot. at 2. He cites to Hensley for the
13 proposition that "[w]here a plaintiff has obtained excellent results, his attorney should
14 recover a fully compensatory fee." Id. (citing Hensley, 461 U.S. at 435). Although Plaintiff
15 concedes that he did not prevail on his facial attack on the Ordinance, he argues that "his
16 attorneys still are entitled to recover for the time expended on that claim because they
17 involve related legal theories or arose from a common core of facts." Id. (citing City of
18 Riverside v. Rivera, 477 U.S. 561, 564 (1986) and Webb v. Sloan, 330 F.3d 1158, 1169 (9th
19 Cir. 2003)). The Court disagrees.

### a. Claims Not Related

21 Plaintiff prevailed on his as-applied challenge to the Ordinance, and failed to prevail
22 on his facial challenge to the Ordinance. In such circumstances, the Court is to ask whether
23 Plaintiff failed to prevail "on claims that were unrelated to the claims on which he
24 succeeded." See Hansley, 461 U.S. at 434. The Court concludes that the as-applied
25 challenge and the facial challenge – although both generally about the Ordinance – were
26 unrelated. That is to say, the two challenges did not "involve a common core of facts or . . .
27 related legal theories." See Thomas v. City of Tacoma, 410 F.3d 644, 649 (9th Cir. 2005);
28

7

1  see also Webb v. Sloan, 330 F.3d 1158, 1168 (9th Cir. 2003) (unrelated claims are those that
2  are "entirely distinct and separate from the claims on which the plaintiff prevailed.").

3   The two sets of facts are different. The facts involved in the as-applied challenge
4  were the Plaintiff's "counseling" activities outside of the clinics, the actions of the escorts,
5  and the responses of the Oakland Police Department. The only facts involved in the facial
6  challenge were the words of the Ordinance. The legal theories were also entirely distinct.
7  Plaintiff did not need to bring a facial challenge in order to bring an as-applied challenge,[2]
8  and "the efforts expended on the unsuccessful claims did not contribute to [the plaintiff]
9  prevailing on the successful claim," see Schwarz v. Sec'y of Health & Human Servs., 73
10 F.3d 895, 904 (9th Cir. 1995) (relying on Herrington v. Cnty. of Sonoma, 883 F.2d 739 (9th
11 Cir. 1989)). Plaintiff's failed efforts to show that various phrases in the Ordinance rendered
12 it content-based, or vague, contributed not at all to his successful efforts to show that the
13 City's expressed policy of enforcing the Ordinance against a "sidewalk counselor" who
14 asked "May I talk to you about alternatives to the clinic?" but not against an escort who
15 asked, "May I help you into the clinic?" was content-based. See Hoye, 653 F.3d at 850-51.

16  Because Plaintiff's work on the unsuccessful facial claims "cannot be deemed to have
17 been 'expended in pursuit of the ultimate result achieved'" on his as-applied claims, the
18 Court is to treat the facial claims "as if they had been raised in separate lawsuits," and award
19 no fees for them. See Hensley, 461 U.S. at 435 (citing Davis v. Cty. of Los Angeles. 8
20 E.D.P. ¶ 9444, at 5049 (C.D. Cal. 1974). But the Court finds itself unable to excise from
21 Plaintiff's fee request the hours worked on the unsuccessful claims. "If it is impossible to

---

[2] Plaintiff's contention that Oakland "invited" a facial challenge by arguing that its enforcement policy was no different from the Ordinance as it was written is not well taken. See Mot. at 5. Many defendants will respond to an as-applied challenge by arguing that they are enforcing an ordinance in a manner consistent with its terms. That does not mean that every case involving an as-applied challenge must also involve a facial challenge. Plaintiffs should only bring facial challenges when they can in good faith argue that the language of an ordinance is unconstitutional. Here, because the Ordinance was modeled on the law upheld in Hill v. Colorado, 530 U.S. 703 (2000), a facial challenge was by no means a foregone conclusion. See Hoye, 653 F.3d at 843 ("Because the Ordinance is modeled on the Colorado statute upheld in Hill, that opinion controls much of our analysis in this case and leads us to the conclusion that the Ordinance is a facially valid restriction on the time, place, and manner of speech."); id. at 842 (describing Hill statute as "markedly similar to the Ordinance" here); id. at 844 ("The relevant portions of the Ordinance largely replicate the Colorado statute").

1 isolate the truly unrelated claims from those related claims, the district court should instead
2 reflect that limited success in [the] second step." Thomas, 410 F.3d at 649-50 (internal
3 quotations omitted). The Court will therefore "focus on the significance of the overall relief
4 obtained by the plaintiff in relation to the hours reasonably expended on the litigation."
5 Hensley, 461 at 435.[3]

### b. Limited Success

Plaintiff achieved significant relief when the Ninth Circuit agreed with him that "Oakland's enforcement policy is a constitutionally invalid, content-based regulation of speech" and remanded the case with the instructions that it did. See Hoye, 653 F.3d at 859. Defendant's arguments to the contrary sound like sour grapes. See, e.g., Opp'n at 7 ("All the City had to do was add a few words to those [training] materials"). Still, "a reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Hensley, 461 U.S. at 440.

The litigation as a whole did not, as Plaintiff now argues, have "one main objective: to obtain declaratory injunctive relief protecting plaintiff's right to engage in free speech activities on public sidewalks outside abortion clinics on equal terms with clinic escorts and others espousing different viewpoints." See Mot. at 2. It was about evenhanded enforcement, but it was also very much about Plaintiff's desire to have the Ordinance in its entirety declared unconstitutional and, indeed, unenforceable. See, e.g., P's MSJ (dkt. 92-1) at 25 ("Simply put, this case is not Hill and the Ordinance is facially unconstitutional because the asserted government interest does not justify these restrictions."); id. at 35 ("The Court should grant Plaintiff's Motion for Summary Judgment, declare the ordinance unconstitutional, and permanently enjoin defendant from enforcing it."). Even-handed

---

[3] The Court notes that Hensley explained that a district court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." Id. at 436-37. The City has attempted to identify specific hours that it argues should be eliminated, largely hours attributed to Plaintiff's failed attempts at injunctive relief, and work performed in connection with his criminal case. See Opp'n at 13-14. But Plaintiff has persuaded the Court that the latter contributed to Plaintiff's civil case, and that the former consisted both of facial and as-applied challenges. Accordingly, the Court will not eliminate those hours, and instead will reduce Plaintiff's award to account for his limited success.

9

enforcement of an 8-foot bubble was not what Plaintiff sought; indeed, he had asserted that his style of "sidewalk counseling" required that he be able to approach closely the people entering the clinic. Plaintiff argued to this Court: "In Plaintiff's experience, it is virtually impossible to start up a conversation with someone from eight feet away." Id. at 22. Even Plaintiff's FAC asked for (a) a "judgment against the defendant"; (b) "a declaratory judgment declaring the acts of the defendant to be a violation of plaintiff's constitutional rights . . ."; (c) "a declaratory judgment declaring that [the Ordinance] is unconstitutional on its face"; (d) "a declaratory judgment declaring that [the Ordinance] is unconstitutional as enforced and as applied"; (e) injunctive relief enjoining Defendant "from enforcing [the Ordinance]"; (f) fees and costs; and (g) "such other and further relief as the Court deems just and proper." See FAC at 9.[4] In light of Plaintiff's requests that the Court declare the Ordinance unconstitutional on its face and enjoin it from being enforced altogether, it is disingenuous to characterize the scope of the litigation as only involving equal enforcement.

While a plaintiff need not "receive all relief requested" to receive "a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time," Hensley, 461 U.S. at 435 n.11, here, the relief Plaintiff obtained was significantly narrower than he sought, and does not entitle Plaintiff to the full lodestar. Put another way, the ultimate remedy here, a judgment finding that the Defendant's enforcement policy violated the First Amendment and directing Defendant to enforce the Ordinance in an evenhanded manner, is not worth $585,060.88. That lodestar necessarily includes in it the time Plaintiff spent arguing that the Ordinance was unconstitutional, not only because of how Defendant interpreted it, but because it did not comport with Hill v. Colorado, 530 U.S. 703 (2000) – an issue the Ninth Circuit dispensed with fairly easily.[5]

---

[4] The Second Amended Complaint also prayed that the Court declare the Ordinance unconstitutional on its face and enjoin it from being enforced. See SAC (dkt. 74) at 9.

[5] See Hoye, 653 F.3d at 843 ("Because the Ordinance is modeled on the Colorado statute upheld in Hill, that opinion controls much of our analysis in this case and leads us to the conclusion that the Ordinance is a facially valid restriction on the time, place, and manner of speech.").

10

In sum, Plaintiff ended up prevailing on half of his case (his as-applied challenge), and attaining half of the relief that he sought (evenhanded enforcement of the Ordinance). To reflect this limited success, the Court will award Plaintiff: (1) half of his fees for his time billed through the oral argument in the Ninth Circuit, a time period in which Plaintiff pursued both his facial and as-applied challenges; and (2) all of his fees for his time billed after the oral argument in the Ninth Circuit, a time period in which the parties and the Court worked to implement the Ninth Circuit's remedy as to Plaintiff's successful as-applied challenge.

At the Court's request, Plaintiff submitted, following the motion hearing, a declaration breaking down his fees so that the Court could understand how much time he billed through the date of the oral argument, and how much time he billed after that date. See Millen Decl. (dkt. 237). Plaintiff represents to the Court that he billed $447,582.90 through the date of oral argument, id. at 2, which means that he billed $137,477.98 after that date. Accordingly, the Court will award Plaintiff $223,791.45 for his work through the date of the oral argument, and $137,477.98 for the work he billed after that date, for a total of $361,269.43. The total award reflects a reduction that is "more than a haircut," see Moreno, 534 F.3d at 1116, in light of the Court's view that Plaintiff's success was significant, but limited in relation to the scope of his case as a whole.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion, and awards Plaintiff fees of $361,269.43.

**IT IS SO ORDERED.**

Dated: October 1, 2012

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE